Samuel L. Linnet (ISB No. 9788)
sam@alturaslawgroup.com
ALTURAS LAW GROUP, PLLC
101 E Bullion St., Unit 2H
Hailey, ID 83333
(208) 788-6688

Peter C. Renn*
prenn@lambdalegal.org
Kell L. Olson*†
kolson@lambdalegal.org
Tara L. Borelli*†
tborelli@lambdalegal.org
Christina S. Paek*
cpaek@lambdalegal.org
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
†*mailing address only*
(213) 382-7600 (T) | (213) 402-2537 (F)

**pro hac vice* forthcoming

Katherine M. Forster*
katherine.forster@mto.com
Robyn K. Bacon*
robyn.bacon@mto.com
Nicholas R. Sidney*
nick.sidney@mto.com
Paul Martin*
paul.martin@mto.com
Avery P. Hitchcock*
avery.hitchcock@mto.com
Jimmy P. Biblarz*
jimmy.biblarz@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Ave., 50th Fl.
Los Angeles, CA 90071-3426
(213) 683-9100 (T) | (213) 687-3702 (F)

J. Max Rosen*
max.rosen@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
(415) 512-4000 (T) | (415) 512-4077 (F)

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

REBECCA ROE, et al.,

*Plaintiffs*,

v.

DEBBIE CRITCHFIELD, et al.,

*Defendants*.

Case No. 1:23-cv-315

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PROCEED ANONYMOUSLY**

The Complaint in this case uses a pseudonym for Plaintiff Rebecca Roe, a transgender minor girl, as well as her parents Ryan Roe and Rachel Roe. In Plaintiff's Motion to Proceed Anonymously, simultaneously filed with that Complaint, Plaintiff Rebecca Roe respectfully moves for this Court to permit her to proceed anonymously in this litigation (with the important caveat that she will provide her name to the Defendants subject to a protective order preserving its confidentiality). Plaintiff Rebecca Roe hereby submits this Memorandum of Law in support of her Motion to Proceed Anonymously in order to protect her and her parents' identities from public disclosure.

## I.  INTRODUCTION

Plaintiff Rebecca Roe is a 12-year-old transgender girl born and living in Idaho with her parents Ryan Roe and Rachel Roe. In this litigation, Plaintiff brings a challenge to the constitutionality of Idaho Senate Bill 1100, newly enacted legislation that bars transgender persons from using public school restrooms and other facilities that align with their gender identity (hereinafter, S.B. 1100). Rebecca Roe seeks leave to proceed anonymously in this action in order to protect her privacy and safety. Courts routinely grant that permission to transgender plaintiffs seeking to challenge restrictions on their rights; as well as to minor plaintiffs bringing various forms of litigation. Here, plaintiff is a transgender minor, and such relief should be granted.

Transgender persons have long been subject to stigma, discrimination, harassment, and even violence on account of their transgender status—in Idaho and elsewhere. Moreover, a person's transgender status and medical information constitute sensitive and highly personal information, which a transgender person has the right to disclose only to certain individuals, rather than to the public as a whole. Indeed, one of Plaintiff's claims in this litigation is that S.B. 1100 violates her constitutional right to privacy by causing her to disclose her transgender status

2

when she uses restroom facilities at her school. Requiring transgender people, such as Rebecca Roe, to disclose their identities in public court records as a condition of seeking to vindicate their constitutional rights through the courts—even when their very right to privacy is at issue— exposes them to some of the harms they seek to remedy and prevent: stigmatization, discrimination, harassment, and even violence. And it would jeopardize their right of access to the courts to seek redress for constitutional and statutory violations.

Accordingly, Rebecca Roe respectfully asks this Court for permission to bring this action using an assumed name for the purpose of protecting her identity from public disclosure. For the same reason, Rebecca Roe respectfully asks this Court for permission to identify her parents as Ryan Roe and Rachel Roe. Rebecca Roe will provide her actual name to the Defendants and the Court, subject to entry of the proposed order, which would bar unnecessary dissemination of her identity and require any document revealing her identity to be filed under seal. Finally, in moving to proceed under pseudonym, Rebecca Roe does not intend to prevent the public from observing the proceedings or rulings of this Court but only to prevent disclosure of her identity. Because this case may generate public interest, it is all the more vital that Ms. Roe's identity— and that of her parents by extension—be anonymous.

## II. ARGUMENT

Although Federal Rule of Civil Procedure 10(a) generally requires that the complaint "name all the parties," the Ninth Circuit has allowed anonymous filing if "special circumstances justify secrecy." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). Specifically, in *Advanced Textile*, the Ninth Circuit recognized that parties may use pseudonyms "when nondisclosure of the party's identity 'is necessary . . . to protect a person

from harassment, injury, ridicule or personal embarrassment.'" *Id*. at 1067-68 (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).[1]

To determine whether anonymity is appropriate, courts engage in a balancing test: "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. Applying this balancing test, courts have permitted plaintiffs to use pseudonyms in situations where "identification creates a risk of retaliatory physical or mental harm," along with situations "when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature." *Id*. (internal quotation marks omitted). In many cases, courts have allowed plaintiffs to proceed anonymously vis-a-vis the defendants—a request Plaintiff here is not making. *See id*. at 1072. Thus, courts have allowed anonymity in circumstances far more likely to cause prejudice to defendants than Roe's request here.

When anonymity is used to shield the plaintiff from retaliation, the district court should evaluate: "(1) the severity of the threatened harm, . . . (2) the reasonableness of the anonymous party's fears, . . . and (3) the anonymous party's vulnerability to such retaliation." *Id*. at 1068. Child plaintiffs and their families possess a "special vulnerability" to retaliation, further encouraging a court to grant a motion to remain anonymous. *See Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). The Ninth Circuit has previously recognized that a parent suing a school or

---

[1] Additionally, Federal Rule of Civil Procedure 5.2(a)(3) contemplates that a minor's name will in all cases be redacted from public filings absent an order of the court to the contrary. Although [Rebecca Roe] seeks additional protection from that required by Rule 5.2(a) (which permits initials and does not apply to parents' names), that rule already endorses the important privacy interest any minor —transgender or not—has in choosing not to disclose her identity on the public record in litigation.

4

school district on behalf of their minor child can expose both the parent and child to potential retaliation and thereby justify preserving their identities. *See Doe v. Madison School Dist. No. 321*, 147 F.3d 832, 833-34 n.1 (9th Cir. 1998), *vacated on other grounds*, 177 F.3d 789 (9th Cir. 1999) (en banc) (allowing a parent to remain anonymous when challenging a graduation policy that allowed students to deliver prayers and religious songs as a violation of the Establishment Clause). In addition, courts within the Ninth Circuit have allowed plaintiffs to proceed anonymously when "plaintiffs express a legitimate concern for their privacy and, more compelling for the anonymity analysis, an understandable fear of social stigmatization." *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 993 (N.D. Cal. 2015).

The court must also determine whether the public's interest "would be best served by requiring that the litigants reveal their identities." *See Advanced Textile Corp.*, 214 F.3d at 1068. The public can still have a full understanding of a case even without requiring plaintiffs to identify themselves because "[p]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." *Id.* at 1068-69 (quoting *Doe v. Stegall*, 653 F.2d at 185). Indeed, recently in *MH v. Jeppesen*, plaintiffs, two transgender women, sought to anonymously challenge regulations on receiving gender-affirming care. *MH v. Jeppesen*, 2023 WL 4080542, at *2-3 (D. Idaho June 20, 2023). "Owing to the sensitive nature of this action and its related privacy implications, on November 29, 2022, the Court permitted Plaintiffs to appear using pseudonyms." *Id.* at *2 n.2.

### A.     Rebecca Roe should not be forced to disclose private, highly personal, and sensitive information as a condition to pursuing this litigation.

Plaintiffs' challenge to S.B. 1100 warrants anonymous filing under *Advanced Textile*. Plaintiff Rebecca Roe has substantial privacy and security interests in protecting her confidentiality. The disclosure of Rebecca Roe's identity would necessarily mean the disclosure

of her transgender status and diagnosis of gender dysphoria. Courts have recognized that a person's transgender status is of an "excrutiatingly [sic] private and intimate nature" that "is really beyond debate" "for persons who wish to preserve privacy in the matter." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). *See also Doe v. Independence Blue Cross*, 2022 WL 2905252, at *2 (E.D. Pa. July 22, 2022) (noting that for individuals outed as transgender, the "dangers are real" including "abuse, mocking, harmful media comments, estrangement, suicide, and murder"); *Love v. Johnson*, 146 F. Supp. 3d 848, 856 (E.D. Mich. 2015) (recognizing that policy "requiring Plaintiffs to disclose their transgender status . . . directly implicate[d] their fundamental right of privacy").

Courts regularly allow transgender litigants to proceed under a pseudonym due to the highly personal and sensitive nature of a person's transgender status. *See, e.g.*, *MH*, 2023 WL 4080542 at *2 n.2; *Doe v. Austin*, 2023 WL 3568188 (D. Me. May 19, 2023); *Doe v. Independence Blue Cross*, 2022 WL 2905252 (E.D. Pa. July 22, 2022); *Foster v. Anderson*, 2019 WL 329548 (D. Kan. Jan. 25, 2019); *Karnoski v. Trump*, 2017 WL 11431253 (W.D. Wash. Oct. 10, 2017); *Doe v. United Consumer Fin. Servs.*, 2001 WL 34350174 (N.D. Ohio Nov. 9, 2001), *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 74 (D.R.I. 1992). Additionally, forcing Rebecca Roe to disclose her identity may also make her gender dysphoria known to the public, and there is no question that a medical condition such as gender dysphoria is highly private information that should not be disclosed against a party's will as a condition to bringing suit. *See Powell*, 175 F.3d at 112 (transgender people "are among those who possess a constitutional right to maintain medical confidentiality."). Indeed, although the court certainly need not pre-judge Plaintiff's privacy claim to grant her anonymity motion, it is significant here that she is asserting that S.B. 1100 is, in part, unconstitutional because it forces her to out herself

as transgender to people at school. Forcing her to out herself as a transgender plaintiff in a challenge to S.B. 1100, which would result in her name being disclosed to countless individuals, is not warranted.

### B. Disclosure of Rebecca Roe's and her parents' identities would expose them to stigmatization, harassment, and retaliation.

"The hostility and discrimination that transgender individuals face in our society today is well documented." *Brocksmith v. United States*, 99 A.3d 690, 698 n.8 (D.C. 2014); *see also Love*, 146 F. Supp. 3d at 856 (noting that "there is a great deal of animosity towards the transgender community"); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015) (noting that "transgender people have suffered a history of persecution and discrimination" and that "this history of persecution and discrimination is not yet history"). Almost half (48%) of transgender people have been attacked, harassed, or suffered other harm due to being transgender. *See* S.E. James, et. al. The Report of the 2015 U.S. Transgender Survey at 199 and Table 15.1, National Center for Transgender Equality, (December 2016), http://www.transequality.org/sites/default/files/docs/usts/USTS%20Full%20Report%20-%20FINAL%201.6.17.pdf. Courts across the country routinely recognize this unfortunate truth. *See, e.g.*, *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) ("There is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity."); *F.V. v. Barron*, 286 F. Supp. 3d 1131, 1137 (D. Idaho 2018) ("Transgender people . . . are verbally harassed, physically assaulted, denied service or benefits, or asked to leave the premises."); *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018) (recognizing that forced disclosure of a transgender person's status "exposes transgender individuals to a substantial risk of stigma, discrimination, intimidation, violence, and danger"). Indeed, the Ninth Circuit has

7

recognized transgender individuals are a quasi-suspect class entitled to protection because of these pervasive harms. *See Karnoski v. Trump*, 926 F.3d 1180, 1200-01 (9th Cir. 2019).

Rebecca Roe is a minor and a student attending public schools in Idaho. If it became known that she, or her parents on her behalf, were involved in bringing this lawsuit, it could subject her and her family to retaliation from students, parents, and other community members. The consequences of being identified for being involved in this case could be quite severe for Rebecca Roe and her family. Anti-transgender violence and rhetoric is far too common. *See* Madeleine Carlisle, *Anti-Trans Violence and Rhetoric Reached Record Highs Across America in 2021,* Time (Dec. 30, 2021) https://time.com/6131444/2021-anti-trans-violence/. Even just being out as transgender puts youth at risk for isolation, bullying, and physical and verbal abuse. Being at the forefront of litigation challenging anti-transgender legislation would reasonably only heighten the chance that Rebecca Roe and/or her family may become victims of retaliation.

### C. Anonymity would not prejudice the Defendants or impede the public understanding of this litigation.

Rebecca Roe does not seek to withhold her and her family's identities from Defendants or the Court, but only to proceed anonymously, under pseudonym, and to prevent disclosure of her identity in public documents. Because Defendants will know Rebecca Roe's identity, subject to appropriate privacy safeguards, Defendants will not be prejudiced. *See Advanced Textile Corp.*, 214 F.3d at 1069 n.11 ("[W]hatever knowledge defendants have of plaintiffs' identities . . . lessens their claims to be prejudiced by the use of pseudonyms.").

The public not knowing Rebecca Roe's identity would not prejudice Defendants in any meaningful way from defending this case. Rebecca Roe does not seek to restrict the public's right to access the materials, proceedings, and court rulings in this case—instead, it is narrowly tailored to prevent the disclosure of her identity. "Anonymity . . . does not . . . threaten the

8

principle of open courts," particularly where, "[t]he great bulk of [a] case will be on the public record," including "[t]he basic facts of . . . the defendants' challenged conduct, the court's reasoning, and the resulting interplay of those things." *See Jane Roes 1-2*, 77 F. Supp. 3d at 996. The public will therefore have a full and fair understanding of the litigation without knowing the identity of one plaintiff challenging the policy's constitutionality.

### III. CONCLUSION

The risks associated with the public disclosure of Rebecca Roe's and her parents' identities are real and substantial, and should not be deemed necessary to enforce her rights. The need to protect Plaintiff Rebecca Roe's privacy and safety during this lawsuit outweighs the nonexistent prejudice to the Defendants and any need by the public to know Plaintiff's identity. *See id.* As such, Plaintiff Rebecca Roe should be allowed to proceed anonymously.

| | |
|---|---|
| Dated: July 6, 2023 | Respectfully Submitted |
| | /s/ Samuel L. Linnet |
| Katherine M. Forster | Samuel L. Linnet |
| Robyn K. Bacon | ALTURAS LAW GROUP, PLLC |
| J. Max Rosen | |
| Nicholas R. Sidney | Peter C. Renn |
| Paul Martin | Kell L. Olson |
| Avery P. Hitchcock | Tara L. Borelli |
| Jimmy P. Biblarz | Christina S. Paek |
| MUNGER TOLLES & OLSON LLP | LAMBDA LEGAL DEFENSE & EDUCATION FUND |

10