Samuel L. Linnet (ISB No. 9788)
sam@alturaslawgroup.com
ALTURAS LAW GROUP, PLLC
101 E Bullion St., Unit 2H
Hailey, ID 83333
(208) 788-6688

Peter C. Renn*
prenn@lambdalegal.org
Kell L. Olson*[†]
kolson@lambdalegal.org
Tara L. Borelli*[†]
tborelli@lambdalegal.org
Christina S. Paek*
cpaek@lambdalegal.org
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
[†]*mailing address only*
(213) 382-7600 (T) | (213) 402-2537 (F)

Katherine M. Forster*
katherine.forster@mto.com
Robyn K. Bacon*
robyn.bacon@mto.com
Nicholas R. Sidney*
nick.sidney@mto.com
Paul Martin*
paul.martin@mto.com
Avery P. Hitchcock*
avery.hitchcock@mto.com
Jimmy P. Biblarz*
jimmy.biblarz@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Ave., 50th Fl.
Los Angeles, CA 90071-3426
(213) 683-9100 (T) | (213) 687-3702 (F)

J. Max Rosen*
max.rosen@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
(415) 512-4000 (T) | (415) 512-4077 (F)

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| REBECCA ROE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DEBBIE CRITCHFIELD, et al., <br><br> *Defendants*. | Case No. 1:23-cv-00315-DCN <br><br> **Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order** |

1

## **INTRODUCTION**

As Plaintiffs detailed in their motion for a preliminary injunction and complaint, Plaintiffs—minor transgender students in Idaho—challenge Idaho Senate Bill 1100 ("S.B. 1100"), a sweeping law that imposes a statewide ban excluding transgender people from school restrooms and other sex-designated facilities consistent with their gender identity. Plaintiffs' school year will begin on August 16, 2023. Plaintiffs thus respectfully ask that the Court grant temporary, emergency relief in the form of a temporary restraining order ("TRO") under Fed. R. Civ. Proc. 65(b), prohibiting S.B. 1100's application to transgender people in Idaho pending this Court's resolution of the pending preliminary injunction motion.

Plaintiffs acknowledge and respect that the Court's calendar limitations prevent it from issuing a decision on Plaintiffs' motion for a preliminary injunction ("PI Motion") before August 16, 2023. Plaintiffs do not wish to rush the Court's decision of the serious issues in this case— and are not seeking reconsideration of its careful order setting a hearing on that preliminary injunction motion for September 13, 2023 and providing Defendants further time to respond to that motion. Dkt. 31 ("Extension Order"). In light of the serious issues at stake, however, and the harm Plaintiffs face if S.B. 1100 is applied to them at the start of the school year, Plaintiffs ask that the Court enter a short TRO preserving the status quo pending that hearing. Such an order would ensure that, when the school year begins on August 16, Plaintiffs and other transgender students do not face irreparable harm to their constitutional rights. It would ensure that Idaho schools that have had transgender-inclusive facilities policies for years, including as far back as 2015, do not have to upend those policies on which students have relied by August 16, 2023. By contrast, such an order would do little prejudice to Defendants: should this Court ultimately deny the preliminary injunction motion, a TRO would result only in delaying

implementation of S.B. 1100 by a matter of weeks.  Given that the policies S.B. 1100 targets have been in place for almost a decade, it is hard to see how those weeks would make much of a difference to Defendants, even as they matter a great deal to Plaintiffs, for whom the harms S.B. 1100 will effectuate are "very real and personal."  Dkt. 31 at 4.

      A TRO would also preserve this Court's ability to fully prevent any irreparable harm to Plaintiffs should it ultimately agree that S.B. 1100 should be preliminarily enjoined after the September 13, 2023 hearing.  That is, indeed, the archetypal use of a TRO.  The "purpose of a [TRO] is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction."  *Oby v. Clear Recon Corp*, No. 216CV01008MCECKD, 2016 WL 3019455, at *1 (E.D. Cal. May 26, 2016).  Although the basic test for showing entitlement to a TRO is the same as for a preliminary injunction, *see Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015), the remedies are completely different: a TRO is a far more limited injunction that lasts a matter of weeks, whereas a preliminary injunction "extend[s] until the end of the lawsuit."  *See NAVEX Glob., Inc. v. Stockwell*, No. 1:19-CV-00382-DCN, 2019 WL 5654988, at *1 (D. Idaho Oct. 31, 2019).  Such an order extends no "longer than absolutely necessary—that is, until the soonest time a hearing can be set."  *Mares-Orozco v. Guzman*, No. 1:23-CV-00026-DCN, 2023 WL 1102424, at *1 (D. Idaho Jan. 27, 2023).  Given that requests for TROs are briefed and decided quickly, and can be decided without response by Defendants when necessary, such an order need not prejudge the merits of this case or the merits of the preliminary injunction motion itself.  *See Bouillon v. Garcia*, No. 2:22-CV-00123-DCN, 2022 WL 888707, at *1 (D. Idaho Mar. 25, 2022).

Here, Plaintiffs' preliminary injunction motion and supporting documentation, Dkt. 15, 15-1, which they incorporate fully by reference, clearly shows "that immediate and irreparable injury, loss, or damage will result to the [Plaintiffs and transgender people in Idaho] before" the hearing date on the preliminary injunction and, under the current schedule, before "the adverse party . . . can be heard in opposition . . . ." *Stimson Lumber Co. v. Coeur d'Alene Tribe*, No. 2:22-CV-00089-DCN, 2022 WL 623267, at *1 (D. Idaho Mar. 3, 2022) (quoting Fed. R. Civ. P. 65(b)). And it demonstrates that the "status quo" for purposes of this case is before the implementation and passage of S.B. 1100—a proposition that in any event is well established by persuasive and binding authority. *See Hecox v. Little*, 479 F. Supp. 3d 930, 972 (D. Idaho 2020) (explaining that the relevant "status quo" is "the legally relevant relationship between the parties before the controversy arose"); *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) ("[L]ike other injunctions that prohibit enforcement of a new law or policy, Plaintiffs' requested injunction is prohibitory.").

Plaintiffs respect that determining whether they are entitled to a preliminary injunction, which could enjoin S.B. 1100 for more than a year, requires more time from this Court. They submit that entering a TRO pending that determination will protect Plaintiffs and other transgender students from irreparable harm in the interim, while ensuring the Court and Defendants have more time to address the more significant relief a preliminary injunction entails.

## PROCEDURAL BACKGROUND

Plaintiffs filed this action on July 6, 2023, five days after S.B. 1100 took effect, alleging that enforcement of S.B. 1100 would violate their constitutional and statutory rights and cause significant and irreparable harm to transgender people in Idaho like themselves. Dkt. 1. Transgender individuals like Plaintiff Rebecca Roe will experience these irreparable harms—

including stigmatic harm, psychological harm, impediments to medical care including social transition, damage to their physical health, and the risk of forced outing to peers—if this new law is enforced when the school year starts on August 16, 2023.  Dkt. 15-5, Declaration of Stephanie L. Budge, Dkt. 15-5, ¶¶ 25, 52-53

To preserve the status quo pending a judgment on the merits of their claims, Plaintiffs concurrently filed a Motion for Preliminary Injunction on July 6, 2023 ("PI Motion," Dkt. 15). Under the standard briefing schedule, Defendants' opposition was due 21 days later, and Plaintiffs had control over when to file any optional reply up to 14 days thereafter.  *See* Local Rule 7.1.  When Defendants' counsel sought an extension of time to file their response, Plaintiffs offered, instead, to extend the briefing schedule if Defendants would stipulate to not enforce S.B. 1100 pending a decision on the PI Motion.  Defendants never responded to that proposal. Responding to Defendants' Motion for Extension of Time, Plaintiffs also noted that the Court could enter a temporary restraining order to restrain enforcement of S.B. 1100 until the PI Motion could be heard.  Dkt. 25 at 2-3.  Defendants did not address that suggestion in their reply or supplemental brief.  Dkt. 27; Dkt. 28.

On July 20, 2023, the Court granted Defendants' requested extension in part (Dkt. 31, "Extension Order") and explained that allowing additional time would better ensure it could "resolve the PI Motion justly and equitably."  Extension Order at 4.  The Court set the hearing on the PI Motion for September 13, 2023, at 9 a.m.  *Id.*

The Court indicated in its order that it would not take additional action "sua sponte." Extension Order at 4.  Accordingly, and in light of the ordered schedule for the PI Motion, Plaintiffs respectfully move for a TRO under Fed. R. Civ. Proc. 65(b) pending resolution of the PI.

## **STANDARD**

A TRO is generally warranted where a party demonstrates that "(1) it is likely to succeed on the merits of its claim, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of hardships tips in its favor, and (4) [the requested relief] is in the public interest." *Int'l Franchise Ass'n, Inc.*, 803 F.3d at 399. "When the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Alternately, relief is also appropriate when "serious questions going to the merits [are] raised and the balance of hardships tips sharply in the plaintiff's favor," combined with a likelihood of irreparable injury and a showing that the order would serve the public interest. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011); *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 805 (N.D. Cal. 2020) (applying this standard in TRO context).

Although the TRO test involves consideration of the same factors as a preliminary injunction, the remedies are fundamentally distinct. A TRO is inherently less intrusive than a preliminary injunction. "A key difference between a TRO and a preliminary injunction is its respective duration," *Dudley v. Boise State Univ.*, No. 1:22-CV-00495-DCN, 2022 WL 17551104, at *3 (D. Idaho Dec. 9, 2022), which is typically not more than 28 days. And given its highly provisional nature, and the speediness it involves, a TRO does not prejudge the merits of a preliminary injunction: to the contrary, its "purpose . . . is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction." *Oby*, 2016 WL 3019455, at *1; *see also Bouillon*, 2022 WL 888707, at *1 ("In issuing the following Order, the Court makes no determination as to the merits of the Petition."). Thus, although the four-factor test may be the same, issuing a TRO is not designed

6

to replace the "thorough consideration" a preliminary injunction requires, and that this Court's scheduling order contemplates. *Oby*, 2016 WL 3019455, at *1.

## ARGUMENT

Although the legal standards for issuing a temporary restraining order are ultimately the same as for a preliminary injunction, the procedural standards—and the practical effects—are very different. For example, a TRO can issue without any notice to the adverse party; the necessary showing for temporary relief can thus be made on the moving party's papers alone. Fed. R. Civ. Proc. 65(b)(1).[1] Plaintiffs incorporate by reference their PI Motion with supporting memoranda and declarations (Dkt. 15, 15-1), which demonstrates that the legal standard for a TRO is met. They only briefly address those issues here.

First, Plaintiffs' memorandum in support of their preliminary injunction makes clear that they are likely to succeed on the merits, and at the very least that serious questions go to the merits of this case. The weight of existing authority on exclusionary restroom policies supports Plaintiffs' claims. *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 608-14 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021); *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017); *contra Adams v. School Board of St. John's County,* 57 F.4th 791 (11th Cir. 2022). Plaintiffs' position also accords with all the relevant appellate and district court authority in the Ninth Circuit. The Ninth Circuit has held that transgender people constitute a quasi-suspect class under the Equal Protection Clause, *see Karnoski v. Trump*, 926 F.3d 1180, 1192 (9th Cir. 2019), and that cisgender students have no constitutional right of privacy to avoid sharing sex-specific facilities with a transgender student,

---

[1] That does not mean that it must issue without a response from Defendants—but such a response need not be the fulsome response Defendants would file to a preliminary injunction motion. *Cf. Oby*, 2016 WL 3019455, at *1.

7

*Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020).  Courts in this district have, in turn, enjoined a ban on transgender girls participating in sports in accordance with their gender identity, *Hecox*, 479 F. Supp. 3d at 988, and struck down or enjoined other laws that discriminate against transgender people.  *See F.V. v Barron*, 286 F. Supp. 3d 1131 (D. Idaho 2018) (discriminatory birth certificate policy unconstitutional); *M.H. v. Jeppesen*, No. 1:22-cv-00409-REP, 2023 WL 4080542, at *11-13 (D. Idaho Jun. 20, 2023) (plaintiffs stated an equal protection claim against medical care policy).  Plaintiffs raise more than "serious questions going to the merits," *see Cottrell*, 632 F.3d at 1135; they demonstrate a strong likelihood of success.  There is a very real possibility that, should this Court enjoin S.B. 1100 on or after September 13, 2023, Plaintiffs' constitutional rights will have been violated for a month beforehand.

Second, Plaintiffs are likely to experience irreparable harm between the start of the school year and the time when the Court resolves the preliminary injunction motion—the requisite question for purposes of the TRO.  Plaintiffs face immediate and irreparable harm if, despite their ultimately meritorious claims, they are denied access to facilities during the first several weeks of the school year.  Plaintiffs will have to choose between not using the restroom at all, causing physical pain and potential health issues, and using facilities that subject them to stigmatization, impose practical burdens where located in less accessible areas away from classes, or even forcibly out them as transgender.  *See* Dkt. 15-5, Declaration of Stephanie L. Budge, ¶¶ 52, 61-63; Dkt. 1, Compl. ¶¶ 54, 59.[2]  These are daily accruing harms.  This exclusion

---

[2] *See also Parents for Priv.*, 949 F.3d at 1219 (9th Cir. 2020) (recognizing that "an available single-user bathroom was often inconvenient or was considered inferior because it lacked a shower"); *Grimm* , 972 F.3d at 617–18 (4th Cir. 2020), as amended (Aug. 28, 2020) (the "stigma of being forced to use a separate restroom is likewise sufficient to constitute harm under Title IX, as it invite[s] more scrutiny and attention from other students, very publicly brand[ing] all transgender students with a scarlet 'T'" (internal citations and quotations omitted); *Roberts v. Clark Cnty. Sch. Dist.*, 215 F. Supp. 3d 1001 (D. Nev. 2016) (holding that defendant school

would also occur during a pivotal time in the school year when students—including Rebecca Roe, who is entering junior high, and members of Sexuality and Gender Alliance at Boise High School—are first meeting and forming impressions of one another. While Plaintiffs recognize that the Court's calendar might not be able to accommodate a ruling on even this TRO before August 16, entry of a TRO at any time before disposition of the PI Motion would make a difference to Plaintiffs' abilities to meet their basic daily needs. Just as the irreparable harms to Plaintiffs support a preliminary injunction pending a final merits adjudication, Dkt. 15-1 at 19-20, they support a brief TRO here.[3]

      Third, the balance of hardships and public interest weigh strongly in favor of short-term relief. Again, the analysis here makes clear the significant difference between a TRO and a preliminary injunction: the question is not whether to enjoin S.B. 1100 for a year or more (relief Plaintiffs do believe is warranted), but for a few weeks. And to put those weeks in context, for at least eight years, numerous Idaho schools have had in place transgender-inclusive policies. The government cannot credibly show any hardship from a four-week TRO preserving that status quo. *See* Dkt. 1, Ex. 5; *see also Hecox*, 479 F. Supp. 3d at 972 (relevant "status quo" is "the legally relevant relationship between the parties before the controversy arose"). But it will make a huge difference to transgender youth like Plaintiffs.

---

district had failed to articulate a legitimate nondiscriminatory reason for requiring employee to use gender neutral bathroom); *Whitaker By Whitaker*, 858 F.3d at 1045 (7th Cir. 2017) (recognizing that requiring transgender students to use single-user restrooms "actually invited more scrutiny and attention from [] peers, who inquired why he had access to these restrooms and asked intrusive questions about his transition"); *Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 530 (3d Cir. 2018) (adopting logic from *Whitaker*).

[3] Of course, these harms are not all-or-nothing. Even should this Court determine it lacks the time to fully consider a request for a TRO before the preliminary injunction hearing, an order on or after September 13, 2023 enjoining S.B. 1100 will prevent extensive additional irreparable harm.

Plaintiffs raised this point multiple times, in offers to stipulate and in court submissions, but Defendants have never responded. The balance of hardships tips sharply and decisively in favor of a short-term TRO.

## CONCLUSION

Plaintiffs respectfully move that the Court enter a TRO pending adjudication of Plaintiffs' PI Motion and grant such limited relief in order to preserve the status quo and prevent the irreparable harm Plaintiffs face during the first few weeks of the school year.

Dated: July 28, 2023

/s/ Jimmy P. Biblarz
Katherine M. Forster
Robyn K. Bacon
J. Max Rosen
Nicholas R. Sidney
Paul Martin
Avery P. Hitchcock
Jimmy P. Biblarz
MUNGER TOLLES & OLSON LLP

Respectfully Submitted,

Samuel L. Linnet
ALTURAS LAW GROUP, PLLC

Peter C. Renn
Kell L. Olson
Tara L. Borelli
Christina S. Paek
LAMBDA LEGAL DEFENSE & EDUCATION FUND