Samuel L. Linnet (ISB No. 9788)
sam@alturaslawgroup.com
ALTURAS LAW GROUP, PLLC
101 E Bullion St., Unit 2H
Hailey, ID 83333
(208) 788-6688

Peter C. Renn*
prenn@lambdalegal.org
Kell L. Olson*[†]
kolson@lambdalegal.org
Tara L. Borelli*[†]
tborelli@lambdalegal.org
Christina S. Paek*
cpaek@lambdalegal.org
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
[†]*mailing address only*
(213) 382-7600 (T) | (213) 402-2537 (F)

Katherine M. Forster*
katherine.forster@mto.com
Robyn K. Bacon*
robyn.bacon@mto.com
Nicholas R. Sidney*
nick.sidney@mto.com
Paul Martin*
paul.martin@mto.com
Avery P. Hitchcock*
avery.hitchcock@mto.com
Jimmy P. Biblarz*
jimmy.biblarz@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Ave., 50th Fl.
Los Angeles, CA 90071-3426
(213) 683-9100 (T) | (213) 687-3702 (F)

J. Max Rosen*
max.rosen@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
(415) 512-4000 (T) | (415) 512-4077 (F)

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| REBECCA ROE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DEBBIE CRITCHFIELD, et al., <br><br> *Defendants*. | Case No. 1:23-cv-00315-DCN <br><br> **Reply in Support of Plaintiffs' Motion for Temporary Restraining Order [Dkt. 34]** |

## INTRODUCTION

As Defendants do not deny, numerous Idaho schools, including Plaintiffs', have had transgender-inclusive facilities policies for as many as eight years.  If not enjoined, S.B. 1100 will force those schools to upend those policies and, indeed, force all schools to bar transgender students from facilities matching their gender identity, causing widespread and immediate irreparable harm, including to Plaintiffs.  Defendants, by contrast, cannot identify any harms from a few-week delay of S.B. 1100.  The law and the equities point to a clear remedy: a short TRO.

In response, Defendants misconstrue Plaintiffs' request.  They observe that, prior to S.B. 1100, some Idaho schools did not have policies expressly permitting transgender students to use facilities matching their gender identity.  Defendants argue that the requested injunctive relief is thus mandatory.  But, through this lawsuit, Plaintiffs only challenge S.B. 1100, a statewide law that *requires* all Idaho schools to discriminate and will thus assuredly *change* the status quo in that respect.  Plaintiffs ask only that the Court temporarily enjoin implementation of S.B. 1100, not provisionally require any Idaho school to adopt a new policy.

Defendants' other arguments merely demonstrate Plaintiffs' entitlement to relief.  While disputing Plaintiffs' likelihood of success, Defendants ignore the majority of federal decisions that have held that excluding transgender people from facilities matching their gender identity violates the Constitution and Title IX.  They also assert that they will challenge well-established medical standards for treating gender dysphoria; but these are the same standards that the Ninth Circuit has previously relied upon and that all major medical organizations in America have recognized. Furthermore, Defendants' desire to transform a case about restrooms and facilities into a referendum on gender-affirming care also ignores that interference with medical treatment represents only one facet of the daily harms at issue in this case, which include profound stigma

1

from a statewide mandate of exclusion, physical pain from avoiding facilities as a result, and privacy violations that compromise safety. Finally, Defendants assert that transgender students can simply use single-occupancy facilities, blithely ignoring the irreparable harms that come from excluding them from facilities matching their gender identity—the crux of S.B. 1100's mandate.

## ARGUMENT

### I. THE REQUESTED RELIEF IS PROHIBITORY.

Contrary to Defendants' argument, Plaintiffs request a prohibitory, not mandatory, TRO. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009). Before S.B. 1100, Idaho schools were not mandated to bar transgender students from facilities matching their gender identity. If S.B. 1100 is in effect when the school year starts, it will force schools to do so. And it will upend inclusive policies that currently exist. Avoiding that outcome preserves the status quo. Defendants incorrectly assert that Plaintiffs are asking for an injunction requiring all Idaho schools to immediately adopt transgender-inclusive facilities policies. But as noted, Plaintiffs ask only for an injunction against enforcement of a law that will *mandate* the exclusion of transgender people at the statewide level. "[L]ike other injunctions that prohibit enforcement of a new law or policy, Plaintiffs' requested injunction is prohibitory." *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014).

Defendants also suggest, without explanation, that the July 6 filing date is relevant because S.B. 1100 technically went into effect on July 1. Opp. at 1. Such a formalistic view of the "status quo" is not, and should not be, the law. "The status quo to be preserved by a preliminary injunction . . . is not the circumstances existing at the moment the lawsuit or injunction request was actually filed, but the last uncontested status between the parties which preceded the controversy." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012); *accord GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Here, the "last uncontested status,"

2

*GoTo.com*, 202 F.3d at 1210, was when schools across Idaho were not mandated to bar transgender people from facilities matching their gender identity. *See* Dkt. 15-9, Ex. 5. If S.B. 1100 is enforced against transgender people on August 16, they will be shut out of these basic facilities in violation of their rights. *See Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) (an injunction that "prevents future constitutional violations" is "a classic form of prohibitory injunction").

In any event, "[t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. . . The focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo." *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008) (internal quotations omitted). Here, a TRO is prohibitory, but regardless, warranted.

## II. DEFENDANTS' ADDITIONAL ARGUMENTS ARE UNAVAILING.

Defendants next argue Plaintiffs cannot show a likelihood of success on the merits.[1] They concede that S.B. 1100 requires heightened scrutiny because it discriminates based on sex. The sex discrimination at issue, however, is not against cisgender males or females—who continue to have access to facilities matching their gender identity—but, rather, against transgender people.[2] As in *Hecox*, the law "on its face discriminates between cisgender [people] . . . and transgender [people]" because the former may use facilities consistent with their gender identity whereas the latter may not. *Hecox v. Little*, 479 F. Supp. 3d 930, 975 (D. Idaho. 2020). Heightened scrutiny is also required because the law discriminates against transgender people. *See Karnoski v. Trump*, 926 F.3d 1180, 1200-01 (9th Cir. 2019).

---

[1] Defendants do not address the Ninth Circuit's "serious questions" standard.
[2] Defendants devote pages to defending the validity of sex-segregated facilities generally. Opp. at 4-5. But that is not Plaintiffs' challenge. *See, e.g.*, *A.C. v. Metro. Sch. Dist. of Martinsville*, No. 22-1786, 2023 WL 4881915 (7th Cir. 2023), at *6 (plaintiffs have no "quarrel with" "the maintenance of sex-segregated facilities," only the exclusion of transgender people); *Hecox*, 479 F.Supp.3d at 969.

Defendants further ignore the majority of federal courts that have held that schools may not, consistent with the Constitution and Title IX, exclude transgender people from sex-specific facilities that match their gender identity. *See, e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 608-14 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021); *Whitaker*, 858 F.3d at 1051; Dkt. 15-1 at 11 n.4 (collecting cases). Only one Court of Appeal decision goes the other direction. Opp. at 3 (citing *Adams v. School Board of St. John's County*, 57 F.4th 791 (11th Cir. 2022)).[3] Defendants notably do not cite the Seventh Circuit's August 1, 2023 decision in *A.C. v. Metro.*, where the panel declined to follow *Adams* and affirmed that plaintiffs made a "strong showing of their chance of prevailing." No. 22-1786, 2023 WL 4881915 at *7 (7th Cir. 2023).

Although the Ninth Circuit has not decided this precise issue, its reasoning in other cases is in line with Plaintiffs' position. In *Karnoski*, the court recognized that transgender people bear the indicia of a quasi-suspect class. 926 F.3d at 1200-01. And in *Parents for Privacy v. Barr*, the court held that cisgender students did not have a right not to share facilities with transgender students using facilities matching their gender identity. 949 F.3d 1210 (9th Cir. 2020). The court favorably cited the Seventh Circuit's *Whitaker* decision as an "out-of-circuit case[] similar to this one in which courts also rejected Plaintiffs' purported privacy interest, in favor of transgender students' access to school facilities." *Id.* at 1223 n.10 (citing *Whitaker*, 858 F.3d at 1052).

Defendants also reveal that they will ask this Court to throw out the very concept of "gender identity" and find "flawed and unscientific" well-established medical standards of the World Professional Association for Transgender Health. Opp. at 7-9. That is a remarkable position that is irreconcilable with Ninth Circuit authority and Idaho's own previous position. In 2019, Idaho

---

[3] *L.W. by and through Williams v. Skrmetiti*, 73 F.4th 408 (6th Cir. 2023), cited by Defendants, did not concern access to restrooms and related facilities.

4

conceded that "the appropriate benchmark regarding treatment for gender dysphoria is the [WPATH] Standards of Care." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 767 (9th Cir. 2019) (stating "[b]oth sides," including Idaho's Department of Corrections, "and their medical experts agree[d]" on this fact). The Ninth Circuit also recognized the validity of these standards. *See id.* at 795.[4]

After denying the existence of gender identity, Defendants ask why transgender people cannot simply use single-occupancy facilities, regardless of whether it interferes with their practical ability to reach an available bathroom. Opp. at 9-10. As Plaintiffs' evidence demonstrates, the exclusion of transgender people from facilities that match their gender identity exacerbates gender dysphoria, creates stigma, and causes irreparable harm including health risks, even where limited single-user options may exist. *See* Dkt. 1 at ¶¶ 26-31, 37; *e.g.* Dkt. 15-4 at ¶ 9 (single-user restroom in separate building not always available). Nor do single-occupancy facilities eliminate the risk of outing (Opp. 9-10): the exclusion itself creates risk, including, for example, when a transgender girl cannot go with female friends into the girls' restroom, and that risk is only heightened when she is then seen "walking [in]to a different restroom" (Opp. 10).

By contrast, Defendants fail to identify any non-speculative harm that could be caused by delaying enforcement of S.B. 1100. There is no evidence that S.B. 1100's application to transgender students serves privacy or safety interests, and Defendants identify none. Dkt. 1 at ¶¶ 63-72; *see Parents for Priv.*, 949 F.3d at 1228. Further, the single-occupancy restrooms Defendants cite are available to cisgender students in schools with inclusive policies, who, in contrast to Plaintiffs, do *not* have a constitutional right at issue here. *See id.* (noting cisgender, rather than transgender, students are welcome to use those restrooms).

---

[4] *See id.* (citing as authoritative "[t]he WPATH Standards of Care—which are endorsed by the American Medical Association, the American Medical Student Association, the American Psychiatric Association, the American Psychological Association" among other bodies).

| | |
|---|---|
| Dated: August 8, 2023 | Respectfully Submitted, |
| /s/ J. Max Rosen | Samuel L. Linnet |
| Katherine M. Forster | ALTURAS LAW GROUP, PLLC |
| Robyn K. Bacon | |
| J. Max Rosen | Peter C. Renn |
| Nicholas R. Sidney | Kell L. Olson |
| Paul Martin | Tara L. Borelli |
| Avery P. Hitchcock | Christina S. Paek |
| Jimmy P. Biblarz | LAMBDA LEGAL DEFENSE & EDUCATION FUND |
| MUNGER TOLLES & OLSON LLP | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of August, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Lincoln Davis Wilson
lincoln.wilson@ag.idaho.gov

Rafael John Droz
rafael.droz@ag.idaho.gov

/s/ J. Max Rosen
J. Max Rosen
