UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA ROE, by and through her parents and next friends Rachel and Ryan Roe, SEXUALITY AND GENDER ALLIANCE, an association,<br><br>      Plaintiffs,<br><br>v.<br><br>DEBBIE CRITCHFIELD, in her official capacity as Idaho State Superintendent of Public Instruction, et. al.,<br><br>      Defendants. | Case No. 1:23-cv-00315-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiffs' Motion for Temporary Restraining Order ("TRO"). Dkt. 34. Defendants oppose the motion. Dkt. 39. Because oral argument would not significantly aid its decision-making process, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons below, the Court GRANTS the Motion and will issue a TRO until further notice.

## II. BACKGROUND

On July 6, 2023, Plaintiffs filed the above-entitled civil rights action challenging Idaho Senate Bill 1100 ("S.B. 1100"). Dkt. 1. S.B. 1100 was adopted on March 22, 2023, took effect on July 1, 2023, and requires, among other things, that students in Idaho public schools use the bathroom or locker room that corresponds with his or her biological sex,

i.e. the person's sex assigned at birth. Plaintiffs allege this law is unconstitutional and disproportionately harms students who identify as transgender.

Alongside their Complaint, Plaintiffs filed a Motion to Proceed Anonymously (Dkt. 13)[1] and a Motion for Preliminary Injunction (Dkt. 15) ("PI Motion"). Defendants then filed a Motion for Extension of Time requesting an approximately 60-day extension to respond to Plaintiffs' PI Motion. Dkt. 21. The Court partially granted the request, extended the briefing deadlines, and set the PI Motion for a hearing on September 13, 2023. Dkt. 31.

Notably, in their opposition to Defendants' Motion for Extension, Plaintiffs argued the Court could grant the extension, but if it did, it should also take other actions to protect Plaintiffs' rights in the interim—such as sua sponte issuing a TRO. Dkt. 25, at 3–4. In its Decision, the Court noted that while it *could* take various actions to accomplish certain goals, it would not do so of its own accord. Dkt. 31, at 4 (explaining it would not take any further action "sua sponte").

On July 28, 2023, Plaintiffs filed the instant Motion for TRO, in which they formally ask the Court to do what they previously suggested the Court could do sua sponte: issue a TRO until the Court's scheduled hearing and decision on the PI Motion. Dkt. 34.

Like their prior suggestion that the Court act sua sponte, Plaintiffs suggest in their present Motion that the Court can issue a TRO without a response from Defendants. Dkt. 34-1, at 3, 7.[2] While this is true, *see* Fed. R. Civ. P. 65(b), the Court strongly prefers to hear

---

[1] The Court recently granted this motion. Dkt. 38.

[2] Plaintiffs recognized, however, that the Court would likely want a response from Defendants. Dkt. 34-1, at 7 n.1.

MEMORANDUM DECISION AND ORDER – 2

from both sides on any issue when feasible. Here, Defendants asked the Court to give them a short time to respond. Dkt. 35. The Court obliged and set an expedited briefing schedule. Dkt. 36. The Court also asked the parties to focus on the "status quo" question in their briefing as that would likely be its "main focus in determining Plaintiffs' TRO Motion." Dkt. 37.

### III. LEGAL STANDARD

A preliminary injunction and a TRO generally serve the same purpose of "preserv[ing] the status quo ante litem pending a determination of the action on the merits." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980); Fed. R. Civ. P. 65.

A plaintiff seeking a preliminary injunction or TRO "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

### IV. ANALYSIS

Although the issues in this case are "complex" and "weighty," Dkt. 31, at 4, the question today is relatively simple: what is the status quo that must be preserved pending resolution of Plaintiffs' PI Motion?

The 2023-2024 school year begins next week, on August 16, 2023. Plaintiffs request

that the Court enter a TRO prohibiting S.B. 1100 from going into effect[3] until the Court issues a full ruling on the PI Motion. Dkt. 34. They contend a short, prohibitory TRO will preserve the status quo and prevent harm. Defendants oppose the request, arguing the TRO Plaintiffs are requesting is mandatory and will *change*, rather than *preserve*, the status quo.

Defendants are incorrect on both fronts.

Both sides admit that prior to S.B. 1100 being adopted by the Idaho Legislature—and long before it went into effect last month—there was a patchwork of regulations and rules concerning which students could use which restrooms[4] in Idaho schools. Dkt. 39, at 2; Dkt. 40, at 2. Some school districts (approximately 75% of the 115 school districts in Idaho) maintained rules mandating sex-separate restrooms, changing facilities, and overnight accommodations. Dkt. 39-1, at 2. A smaller percentage (25%) had policies in place that allowed for individuals to use facilities consistent with their chosen gender identity.

Then S.B. 1100 passed. S.B. 1100 requires that schools mandate students use restrooms consistent with their biological sex.

Because of this, Defendants assert the status quo the Court must maintain is sex-separate bathrooms. But this is not accurate. The relevant "status quo" for purposes of an injunction "refers to the legally relevant relationship *between the parties* before the controversy arose." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir.

---

[3] Like most bills in Idaho, S.B. 1100 became law on July 1, 2023. That said, because no public school districts have yet to go back into session, it is not really "in effect" yet.

[4] For ease, the Court will consistently refer just to restrooms, but S.B. 1100 also encompasses locker rooms, overnight accommodations etc.

MEMORANDUM DECISION AND ORDER – 4

2014) (emphasis in original); *see also Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 514 (9th Cir. 1984) (for purposes of injunctive relief, the status quo means "the last uncontested status which preceded the pending controversy") (cleaned up). In this suit, Plaintiffs contests the enforceability and constitutionality of S.B. 1100. The status quo, therefore, is the policy in Idaho prior to S.B. 1100's passage and enactment.[5]

So even though some school districts did, in fact, have policies separating bathroom usage, others did not. Thus, while S.B. 1100 may "codify[] the common practice," of sex-separate bathrooms, Dkt. 39, at 2, that does not mean the new law is the status quo. Simply put, the status quo concerning bathroom usage in Idaho schools was diverse; but no law, no restriction, and no mandate dictated those policies. In other words, keeping the status quo at this stage is doing just that: leaving schools to their own devices without any input from the state of Idaho, and without any formal regulations one way or the other.

Reviewing what would happen if the Court ruled the other way helps see why this must be the case. If the Court were to allow S.B. 1100 to go into full force and effect, it would *require* all schools to adopt the sex-separated policy. Doing this would not be a change for some schools and would be a change for others. But the mere fact that S.B. 1100

---

[5] The Court finds the timing of Plaintiffs' lawsuit does not change is analysis. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012) ("The status quo to be preserved by a preliminary injunction [] is not the circumstances existing at the moment the lawsuit or injunction request was actually filed, but the last uncontested status between the parties which preceded the controversy.") (cleaned up); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (cleaned up). The last uncontested status in this case between these two parties was the landscape before S.B. 1100 passed.

MEMORANDUM DECISION AND ORDER – 5

dictates a state-wide policy is the change that upends the status quo of there not being a policy in the first instance. Asking school districts to implement this specific regime would change the school-by-school status quo that has been in place for numerous years.

This dovetails into the difference between a prohibitory injunction and a mandatory injunction. The Court turns to that issue next.

A prohibitory injunction preserves the status quo by preventing a party from taking some action before a determination on the merits of the action. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009). *See also Heckler v. Lopez,* 463 U.S. 1328, 1333 (1983) (a prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits"). By contrast, a mandatory injunction "orders a responsible party to take action." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996). Because mandatory injunctions "go[ ] well beyond simply maintaining the status quo," they are "particularly disfavored" and subject to a heightened burden of proof. *Marlyn Nutraceuticals*, 571 F. 3d at 879. *See also Diamond House of SE Idaho v. City of Ammon*, 381 F. Supp. 3d 1262, 1270 (D. Idaho 2019).

By granting the TRO today, the Court is not mandating or requiring that school districts in Idaho do anything—including adopt policies that would allow students to use restrooms that coincide with their gender identity. Nor is it requiring Defendants to do anything. It is simply prohibiting, for the time being, the enforcement of a new State-wide law and allowing the continuation of school-by-school imposition of policies.

In sum, the Court finds that the status quo was the legal landscape before S.B. 1100 was passed, and that landscape did not require sex-separate or sex-inclusive restrooms.

MEMORANDUM DECISION AND ORDER – 6

Each school district was free to implement its own policies or regulations. That system continues today.

Now, the Court recognizes that, when deciding a TRO, it should look at the standard *Winter* factors[6] "not merely on preservation of the status quo." *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008) (cleaned up). The conundrum in this case—like many cases where competing constitutional rights are at stake—is that both sides allege factors two, three, and four lean their way. Both contend the equities tip in their favor, that the public interest supports their view, and that they will each suffer future harm if the Court does not rule as they suggest. Without delving substantively into the parties' respective arguments, the Court simply notes these three factors are roughly even. The Court concludes its review of the *Winter* factors with factor one—a likelihood of success on the merits.

As the Court has noted elsewhere, a Plaintiff's ability to demonstrate "a likelihood of success on the merits, or serious questions going to the merits, is the most important element of a preliminary injunction." *Perlot v. Green*, 609 F. Supp. 3d 1106, 1126 (D. Idaho 2022) (citing *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (cleaned up). This showing, however, is only *preliminary* because the parties have typically not engaged in any discovery by the time a preliminary injunction motion is filed. A TRO that precedes a PI, such as this, is even more removed from the merits and substance of the

---

[6] These factors include: (1) A likelihood of success on the merits; (2) likely irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities weighs in favor of an injunction; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20.

case.[7] Said another way, at this point the Court is effectively tasked with trying to make a pre-preliminary call on the prospects of Plaintiffs' claims. It cannot do so at this time with any degree of certainty.

Notably, there is already a circuit split on the issues raised in this case. The Fourth Circuit has decided that denying gender-affirming bathroom access can violate both Title IX and the Equal Protection Clause, while the Eleventh Circuit found no violations based on substantially similar facts. *Compare Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), *with Adams ex rel. Kasper v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (*en banc*). And just last week, the Seventh Circuit effectively joined the Fourth Circuit when it upheld preliminary injunctions entered in two district court cases dealing with these same issues. *See A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 2023 WL 4881915 (7th Cir. Aug. 1, 2023).

Candidly, against this divided backdrop, the Court does not know if Plaintiffs will be able to show success on the merits or not at the upcoming hearing. Hence the Court's focus today on the status quo. Ultimately, the Court finds the *Winter* factors do not tip strongly one way or the other. The Court does find, however, that preserving the status quo pending a more complete review is the most fitting approach at the current juncture.

## V. CONCLUSION

Today, the Court puts a pause on S.B. 1100. It does not find it unconstitutional. It

---

[7] For example, in this case, Defendants' deadline to respond to Plaintiffs' PI Motion (and Plaintiffs' Complaint) is still weeks away. Limited discovery has taken place in the form of retained experts and reports, but again, the Court only has those from Plaintiffs.

does not find it constitutional. This is not a full adjudication of *any* argument on the merits. The Court is simply holding S.B. 1100 in abeyance and preserving the situation as it existed prior to the parties' disagreement, which is that S.B. 1100 *will not* be in effect when school starts on August 16, 2023. School districts may choose how to organize their bathrooms, changing facilities, and overnight accommodations—whether that is sex-separate or transgender-inclusive; whether it is consistent with what it did last year or not. But the State of Idaho will not be mandating that decision at this time.

### VI. ORDER

1. Plaintiffs' Motion for Temporary Restraining Order (Dkt. 34) is GRANTED.
2. The provisions of S.B. 1100 are held in abeyance until the Court has an opportunity to rule on the merits of this action.
3. The TRO will last until the Court issues a decision on Plaintiffs' PI Motion unless ordered otherwise.

DATED: August 10, 2023

David C. Nye
Chief U.S. District Court Judge