RAÚL R. LABRADOR
ATTORNEY GENERAL

LINCOLN DAVIS WILSON, ISB #11860
Chief, Civil Litigation and
Constitutional Defense

RAFAEL J. DROZ, ISB #9934
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID  83720-0010
Telephone: (208) 334-2400
Fax: (208) 854-8073
lincoln.wilson@ag.idaho.gov
rafael.droz@ag.idaho.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA ROE, by and through her parents and next friends, et al. | Case No. 1:23-cv-00315-DCN |
| *Plaintiffs,* | **CONSOLIDATED RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND STATEMENT OF INTEREST AND IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| DEBBIE CRITCHFIELD, in her official capacity as Idaho State Superintendent of Public Instruction, et al. | |
| *Defendants.* | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

STANDARD OF DECISION ............................................................................................ 3

ARGUMENT .................................................................................................................. 4

I.   Plaintiffs' claims fail on the merits ....................................................................... 4

    A.   Plaintiffs' Equal Protection claims fail as a matter of law ............................... 5

        1.   Sex-separated bathrooms protect safety and privacy ................................... 6

        2.   The best-reasoned caselaw upholds sex-separated bathrooms .................. 10

        3.   S.B. 1100 classifies based on sex, not gender dysphoria ............................ 13

    B.   Title IX expressly allows for sex-separated bathrooms ................................... 16

    C.   Plaintiffs' scientific case is biased and deeply flawed ..................................... 19

        1.   Gender identity does not determine sex ...................................................... 20

        2.   WPATH's standards are not "internationally accepted" ............................. 21

        3.   In most cases, gender dysphoria desists without intervention .................. 22

        4.   Single-user bathrooms are an adequate accommodation ........................... 23

II.   Plaintiffs are not entitled to a preliminary injunction ...................................... 24

CONCLUSION ............................................................................................................. 25

TABLE OF AUTHORITIES

CASES

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville,*
  No. 22-1786, 2023 WL 4881915 (7th Cir. Aug. 1, 2023) ...................................... 4, 17

*Adams v. Sch. Bd. of St. Johns Cnty., Fla.,*
  3 F.4th 1299 (11th Cir. 2022) ..................................................................................... 7

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty,*
  57 F.4th 791 (11th Cir. 2022) ........................................................................... *passim*

*All. for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ............................................................................ 3, 24

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1990) ..................................................................................... 3

*Ballard v. U.S.,*
  329 U.S. 187 (1946) .................................................................................................... 5

*Barhart v. Sigmon Coal,*
  534 U.S. 438 (2002) ................................................................................................. 14

*Bostock v. Clayton Cnty., Ga.,*
  140 S. Ct. 1731 (2020) ........................................................................ 6, 15, 16, 20

*Byrd v. Maricopa Cnty. Sheriff's Dep't,*
  629 F.3d 1135 (9th Cir. 2011) ........................................................................ 1, 9, 24

*Carhart v. Gonzales,*
  413 F.3d 791 (8th Cir. 2005), *rev'd,* 550 U.S. 124 (2007) ......................................... 9

*Chaney v. Plainfield Healthcare Ctr.,*
  612 F.3d 908 (7th Cir. 2010) ................................................................................ 9, 24

*City of Cleburne, Tex. v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985) ............................................................................................... 6, 8

*Clark v. Jeter,*
  486 U.S. 456 (1988) .................................................................................................... 6

*Daggett v. Commission on Governmental Ethics & Election Practices,*
 172 F.3d 104 (1st Cir. 1999) ...................................................................... 9

*Daniels-Feasel v. Forest Pharms., Inc.,*
 2021 WL 4037820 (S.D.N.Y. Sept. 3, 2021), *aff'd*, 2023 WL 4837521 (2d Cir. July
 28, 2023) ................................................................................................... 21

*Daubert v. Merrell Dow Pharms.,*
 509 U.S. 579 (1993), 113 S. Ct. 2786 (1993) ......................................... 19

*D.H. by A.H. v. Williamson Cnty. Bd. of Educ.,*
 No. 3:22-CV-00570, 2022 WL 16639994 (M.D. Tenn. Nov. 2, 2022)................ 11, 17

*Dobbs v. Jackson Women's Health Org.,*
 142 S. Ct. 2228 (2022).................................................................... *passim*

*Dodds v. United States Dep't of Educ.,*
 845 F.3d 217 (6th Cir. 2016)...................................................................... 17

*Drakes Bay Oyster Co. v. Jewell,*
 747 F.3d 1073 (9th Cir. 2014).................................................................... 25

*Dunagin v. Oxford,*
 718 F.2d 738 (5th Cir. 1983)................................................................... 9-10

*EEOC v. Freeman,*
 778 F.3d 463 (4th Cir. 2015)...................................................................... 21

*Eknes-Tucker v. Gov. of Alabama,*
 ___ F.4th ____, 2023 WL 5344981 (11th Cir. Aug. 21, 2023). .................. 3

*Faulkner v. Jones,*
 10 F.3d 226 (4th Cir. 1993)................................................................... 9, 24

*Free v. Peters,*
 12 F.3d 700 (7th Cir. 1993)......................................................................... 9

*Frontiero v. Richardson,*
 411 U.S. 677 (1973)..................................................................................... 5

*G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.,*
 822 F.3d 709 (4th Cir. 2016)....................................................................... 7

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................. 20

*Godecke v. Kinetic Concepts, Inc.*,
  937 F.3d 1201 (9th Cir. 2019) .................................................................... 3

*Grabowski v. Ariz. Bd. of Regents*,
  69 F.4th 1110 (9th Cir. 2023) .................................................................. 16

*Grimm v. Gloucester County School Board*,
  972 F.3d 586 (4th Cir. 2020) ..................................................................... 4

*Happel v. Wal-Mart Stores, Inc.*,
  602 F.3d 820 (7th Cir. 2010) ................................................................... 23

*Hecox v. Little*,
  479 F. Supp. 3d 930 (D. Idaho 2020) .............................................. 5, 12, 13

*Indiana Harbor Beld R.R. Co. v. American Cyanamid Co.*,
  916 F.2d 1174 (7th Cir. 1990) .................................................................... 9

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prods. Liab. Litig.*,
  524 F. Supp. 2d 1166 (N.D. Cal. 2007) ..................................................... 23

*In re Rezulin Prod. Liab. Litig.*,
  369 F. Supp. 2d 398 (S.D.N.Y. 2005) ....................................................... 23

*In re Zoloft*,
  26 F. Supp. 3d 449 (E.D. Penn. 2014) ................................................. 21, 22

*Karnoski v. Trump*,
  926 F.3d 1180 (9th Cir. 2019) .................................................................. 15

*Langevin v. Chenango Court, Inc.*,
  447 F.2d 296 (2d Cir. 1971) ...................................................................... 9

*L.W. by and through Williams v. Skrmetti*,
  73 F.4th 408 (6th Cir. 2023) ................................................................. 3, 12

*McClain v. Metabolife Int'l, Inc.*,
  401 F.3d 1233 (11th Cir. 2005) ................................................................ 23

*Michael M. v. Superior Ct. of Sonoma Cty.*,
  450 U.S. 464 (1981) ................................................................................ 5

*Miss. Univ. for Women v. Hogan*,
  458 U.S. 718 (1982) ................................................................................ 6

*Parents for Privacy v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) .............................................................. 12

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981) .................................................................................. 18

*Rink v. Cheminova, Inc.*,
  400 F.3d 1286 (11th Cir. 2005) ............................................................ 21

*Tennessee v. United States Dep't of Educ.*,
  615 F. Supp. 3d 807 (E.D. Tenn. 2022) ............................................ 2, 18

*Tingley v. Ferguson*,
  47 F.4th 1055 (9th Cir. 2022) .............................................................. 14

*Tuan Anh Nguyen v. I.N.S.*,
  533 U.S. 53 (2001) .................................................................................. 5

*U.S. v. Virginia*,
  518 U.S. 515 (1996) ............................................................................ 5, 9

*United States v. $124,570 U.S. Currency*,
  873 F.2d 1240 (9th Cir. 1989) ................................................................ 9

*Veronia Sch. Dist. 47J v. Acton*,
  515 U.S. 646 (1995) .............................................................................. 10

*Whitaker v. Kenoscha School District*,
  858 F.3d 1034 (7th Cir, 2017) ................................................................ 4

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................... 3

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct, 2111 (2022) ................................................................. *passim*

Statutes

20 U.S.C. § 1681 ................................................................................................ 16

20 U.S.C. § 1686 ................................................................................................ 16

Idaho Code § 33-6601 .......................................................................................... 1

Idaho Code § 33-6603 .......................................................................................... 6

Idaho Code § 33-6605 .................................................................................... 1, 25

Rules and Regulations

34 C.F.R. § 106.32 .............................................................................................. 16

34 C.F.R. § 106.33 .............................................................................................. 16

Federal Rule of Evidence 201 .............................................................................. 9

Other Authorities

Cambridge Radical Feminist Network, *There Is Nothing Progressive About Removing Women-Only Bathrooms*, Medium (Jan. 13, 2019) ................................. 8

M. Price-Feeney, *Impact of Bathroom Discrimination on Mental Health Among Transgender and Nonbinary Youth*, 68 J. Adolescent Health No. 6 (June 2021) ........................................................................................... 2, 14, 23, 25

Peter C. Baldwin, *Public Privacy: Restrooms in American Cities, 1869-1932*, 42 J. of Soc. Hist. (2014) ................................................................................................ 7

Peter Coutu, *Changing the Culture*, Isthmus (Sept. 21, 2017) ................................ 19

Ruth Bader Ginsberg, *The Fear of the Equal Rights Amendment*, Wash. Post, Apr. 7, 1975 ........................................................................................................ 8

Stuart & Stuart, *Behind Closed Doors: Public Restrooms and the Fight for Women's Equality*, 24 Tex. Rev. L. & Pol. (2019) ........................................................... 8

W. Burlette Carter, *Sexism in the "Bathroom Debates": How Bathrooms Really Became Separated by Sex*, 37 Yale L. & Pol'y Rev. (2019) ................................... 7

## INTRODUCTION

This case concerns a challenge to Idaho S.B. 1100, which institutes the traditional practice of separating bathrooms, locker rooms, and overnight stays by sex in Idaho public schools. Sex separation of bathrooms is both "nearly universal" and longstanding—it has existed not just from the founding of this country, but since time immemorial. *Adams by and through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 796 (11th Cir. 2022) (en banc). It is based on what S.B. 1100 recognizes as the "real and inherent physical differences between men and women" and the natural right of every person "to privacy and safety in restrooms and changing facilities where such person might be in a partial or full state of undress in the presence of others." Idaho Code § 33-6601 [33-6701] (1)-(2). S.B. 1100 codifies that practice for multi-occupancy bathrooms, but it also provides an accommodation through unisex, single-occupancy bathrooms. Idaho Code § 33-6605 [33-6705].

Plaintiffs say this is illegal under the Equal Protection Clause and Title IX. They are wrong. The Court should deny an injunction and dismiss their claims.

*First*, Plaintiffs' equal protection claims fail. S.B. 1100's sex classification for bathroom use easily satisfies intermediate scrutiny. As the Eleventh Circuit recognized in *Adams*, sex-separation of bathrooms has existed since before the Fourteenth Amendment was adopted. The practice directly serves sex-specific interests of safety and privacy, including in protecting one's unclothed figure from being seen by the opposite sex. *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011). Nor is there any merit to the view that this sex classification

was meant to discriminate against people with gender dysphoria.  Gender dysphoria is not a proxy for sex, and the law accommodates those who have it.

*Second*, Plaintiffs' Title IX claims fail too.  Plaintiffs ignore that Title IX and its implementing regulations specifically state that sex-separated restrooms are permissible.  The federal government, in contrast, acknowledges the regulations, but says they do not apply to transgender people.  But it does so despite a preliminary injunction entered in favor of Idaho that prohibits the federal government from enforcing that position to enjoin state laws.  *See Tennessee v. United States Dep't of Educ.*, 615 F. Supp. 3d 807 (E.D. Tenn. 2022).  An interpretation enjoined by one preliminary injunction is not a basis to grant another.

Because Plaintiffs' claims fail as a matter of law, they cannot show they are likely to succeed on the merits.  But even if they could show "serious questions" on the merits, that would not be enough for an injunction since they cannot show that the balance of harms tips decidedly in their favor.  To the contrary, they have no irreparable harm, since S.B. 1100 provides them accommodation through gender-neutral single-occupancy bathrooms that their own expert's cited authorities say "can be viewed as part of gender-affirming support and care."  Price-Feeney, *Impact of Bathroom Discrimination on Mental Health Among Transgender and Nonbinary Youth*, 68 J. ADOLESCENT HEALTH No. 6, at 1143 (June 2021) (Ex. 4); Budge Dep. at 95:12-19 (Ex. 1).[1]  The law *supports* them; it does not injure them.

---

[1] All references to Exhibits are to those attached to the accompanying Declaration of Lincoln D. Wilson.

Society-wide cultural changes have led to "vexing line-drawing dilemmas for legislatures" over "access to bathrooms" and other issues, which ought to provoke "hesitancy" for the courts to step in. *L.W. by and through Williams v. Skrmetti*, 73 F.4th 408, 420 (6th Cir. 2023); *Eknes-Tucker v. Gov. of Alabama*, ___ F.4th ___, 2023 WL 5344981 (11th Cir. Aug. 21, 2023). Where "the States are currently engaged in serious, thoughtful debates about the issue," then "[t]he burden of … constitutionalizing new areas of American life is not—and should not be—a light one." *Id*. at 415–16 (citation omitted). Plaintiffs have not met that burden.

## STANDARD OF DECISION

A motion to dismiss under Rule 12(b)(6) may seek dismissal based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). A preliminary injunction requires four elements: (1) a likelihood of success on the merits; (2) likely irreparable harm without an injunction; (3) that the balance of equities weighs in favor of an injunction; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Or if the plaintiff shows only "'serious questions' going to the merits" rather than a likelihood of success, then she must show irreparable injury, that the public interest is satisfied, and that "the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

ARGUMENT

## I.   Plaintiffs' claims fail on the merits.

As this Court has acknowledged, "there is already a circuit split on the issues raised in this case." Dkt. 44 at 8.  Late last year, the en banc Eleventh Circuit upheld a law indistinguishable from S.B. 1100.  *Adams*, 57 F.4th at 796.  A Fourth Circuit panel has ruled the opposite, over a dissent by Judge Niemeyer.  *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020).  And the Seventh Circuit has done likewise, *Whitaker v. Kenosha Sch. Dist.*, 858 F.3d 1034 (7th Cir. 2017), with Judge Easterbrook expressing the opinion that the Eleventh Circuit's decision "better understands how Title IX applies" in this context.  *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, No. 22-1786, 2023 WL 4881915, at *11 (7th Cir. Aug. 1, 2023) (Easterbrook, J., concurring).  The best-reasoned authorities show that Plaintiffs' claims fail as a matter of law and are due to be dismissed.  But at minimum, with no controlling decision from the Ninth Circuit, "this divided backdrop" undermines Plaintiffs' attempt to show they are likely to prevail on the merits.  Dkt. 44 at 8.

That becomes even more clear in considering the Supreme Court's reaffirmation that the Constitution's text and original public meaning is the lodestar for its interpretation.  *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  "Constitutional analysis must begin with 'the language of the instrument,' ... which offers a 'fixed standard' for ascertaining what our founding document means."  *Dobbs*, 142 S. Ct. at 2244–45 (citation omitted).  The analysis is "rooted in the ... text, as informed by

history." *Bruen*, 142 S. Ct. at 2127.  Thus, in evaluating constitutional claims, courts must consider "whether the Constitution, properly understood," confers the right in question.  *Dobbs*, 142 S. Ct. at 2234.  And a constitutional challenge to state law will not succeed where an "overwhelming consensus" has historically upheld the regulations in question.  *Id.* at 2253-54.  These standards doom Plaintiffs' claims.

## A.     Plaintiffs' Equal Protection claims fail as a matter of law.

Although the Equal Protection clause protects "sex" as a basic "immutable characteristic," *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973), this Court has recognized that it "does not require courts to disregard the physiological differences between men and women."  *Hecox v. Little*, 479 F. Supp. 3d 930, 976 (D. Idaho 2020) (citing *Michael M. v. Superior Ct. of Sonoma Cty.*, 450 U.S. 464, 481 (1981)).  "To fail to acknowledge even our most basic biological differences … risks making the guarantee of equal protection superficial, and so disserving it."  *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 73 (2001).  Those physiological differences between men and women are "enduring" and should be a "cause for celebration," not the denigration, of the "two sexes."  *U.S. v. Virginia*, 518 U.S. 515, 533 (1996).  "The truth is that the two sexes are not fungible; a community made up exclusively of one is different from a community composed of both; the subtle interplay of influence one on the other is among the imponderables."  *Ballard v. U.S.*, 329 U.S. 187, 193 (1946).  Even in addressing questions related to gender dysphoria, the Supreme Court has continued to recognize sex as referring "to biological distinctions between male and female."

*Bostock v. Clayton County, Georgia*, 140 S. Ct. 1739 (2020). That is because gender dysphoria is a "distinct concept[] from sex." *Id.* at 1746–47.

Because the two sexes are in some respects "similarly situated" and in other respects "meaningfully dissimilar," *see City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985), the Supreme Court has directed that classifications based on sex are subject to intermediate scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). That is, those classifications must serve "'important governmental objectives" and be "'substantially related to the achievement of those objectives.'" *Adams*, 57 F.4th at 801 (quoting *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)). S.B. 1100 is subject to intermediate scrutiny because it classifies based on sex: "the immutable biological and physiological characteristics, specifically the chromosomes and internal and external reproductive anatomy, genetically determined at conception and generally recognizable at birth, that define an individual as male or female." Idaho Code § 33-6602 [33-6702](3). And based on that definition, S.B. 1100 codifies the longstanding historical practice of requiring sex-separated use of bathrooms, locker rooms, and overnight lodging at public schools as a matter of state law. Idaho Code § 33-6603 [33-6703] (2)-(4). In upholding these well-settled practices, S.B. 1100 easily survives intermediate scrutiny under historical-textual analysis. *Dobbs*, 142 S. Ct. at 2244–45; *Bruen*, 142 S. Ct. at 2131.

### 1. Sex-separated bathrooms protect safety and privacy.

As Judge William Pryor observed in dissenting from the original panel opinion in *Adams*, "[n]ot long ago, a suit challenging the lawfulness of separating bathrooms

on the basis of sex would have been unthinkable." *Adams v. Sch. Bd. of St. Johns Cnty., Fla.*, 3 F.4th 1299, 1321 (11th Cir. 2022) (panel opinion) (W. Pryor, J., dissenting). That "common-sense" practice has been deemed acceptable because "it protects well-established privacy interests in using the bathroom away from the opposite sex." *Id.* And as the en banc Eleventh Circuit ultimately held in *Adams*, the history of this practice is ultimately fatal to Plaintiffs' challenge. *Adams* 57 F.4th at 796; *accord Dobbs*, 142 S. Ct. at 2244–45; *Bruen*, 142 S. Ct. at 2131.

"[S]ex-separation in bathrooms dates back to ancient times, and, in the United States, preceded the nation's founding." W. Burlette Carter, *Sexism in the "Bathroom Debates": How Bathrooms Really Became Separated by Sex*, 37 Yale L. & Pol'y Rev. 227, at 229 (2018). These practices have occurred "[a]cross societies and throughout history … in order to address privacy and safety concerns arising from the biological differences between males and females." *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 734 (4th Cir. 2016) (Niemeyer, J., concurring in part and dissenting in part), *vacated and remanded by Gloucester Cnty. Sch. Bd. v. G. G. ex rel. Grimm*, 137 S. Ct. 1239 (2017); Carter, *supra*, at 228. The practice was certainly common at the time the Fourteenth Amendment was ratified. Peter C. Baldwin, *Public Privacy: Restrooms in American Cities, 1869–1932*, 48 J. of Soc. Hist. 264 (2014). And so even before Idaho's statehood, "[s]chools educating both sexes followed sex-separation in multi-entry intimate spaces." Carter, *supra*, at 277 n.212.

Separating bathrooms by sex has provided significant protection for women. It was "among the earliest state-wide attempts to protect women from workplace sexual

harassment," *id.* at 279–283, and it was a victory in the women's rights movement. Kevin Stuart & DeAnn Barta Stuart, *Behind Closed Doors: Public Restrooms and the Fight for Women's Equality*, 24 Tex. Rev. L. & Pol. 1, 28–29 (2019).  Thus, Title IX, which Plaintiffs invoke as the basis for their claims, "provides a statutory carve-out for 'maintaining separate living facilities for the different sexes.'"  *Adams*, 57 F.4th at 813 (quoting 20 U.S.C. § 1686).  As Justice Ginsburg wrote before taking the bench, "[s]eparate places to disrobe, sleep, [and] perform personal bodily functions are permitted, in some situations required, by regard for individual privacy."  Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post, Apr. 7, 1975, at A21.[2]

Federal caselaw illustrates how these well-worn justifications for sex separation of restrooms have endured in the twentieth and twenty-first centuries. Justice Thurgood Marshall famously quipped that "[a] sign that says 'men only' looks very different on a bathroom door than a courthouse door."  *City of Cleburne,* 473 U.S. at 468–69 (Marshall, J., concurring).   The Supreme Court acknowledged that admitting women to the Virginia Military Institute for the first time "would undoubtedly require alterations necessary to afford members of each sex privacy from

---

[2] Self-described feminist commentators have argued for the same thing.  "[L]eaving aside the risk of assault, sex-segregated bathrooms give women the peace of mind of knowing they can use the bathroom, attend to their menstrual needs and to small children, with a degree of privacy and dignity that would otherwise not exist." Cambridge Radical Feminist Network, *There Is Nothing Progressive About Removing Women-Only Bathrooms*, Medium (Jan. 13, 2019).  And the loss of that private space will fall most heavily on "those individuals who—due to having a history of sexual assault, or for religious reasons—do not feel comfortable using a shared intimate space with male strangers." *Id.*

the other sex in living arrangements." *U.S. v. Virginia*, 518 U.S. 515, 550 n.19. Courts of appeals have likewise noted society's "undisputed approval of separate public rest rooms for men and women," *Faulkner v. Jones*, 10 F.3d 226, 232 (4th Cir. 1993), in order "to accommodate privacy needs." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 913 (7th Cir. 2010). And not long ago, the Ninth Circuit in particular emphasized that "[t]he desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *Byrd*, 629 F.3d at 1141.

Plaintiffs do not acknowledge this long tradition recognizing the importance of sex separation in areas of personal bodily privacy. Much less do they grapple with the reasons for it. That is fatal to their claims.[3]

_____

[3] Plaintiffs assert, without elaboration, that the record is "Bereft of Any Evidence" supporting the legislature's findings regarding safety and privacy. Dkt. 15-1 at 5. This is mistaken as a matter of law because it criticizes what is inherent to such legislative facts—that is, those facts "which have relevance to legal reasoning and the lawmaking process," rather than adjudicative facts, which are "the facts of the particular case." Fed. R. Evid. 201, Advisory Comm. Note. Legislative facts are "facts relevant to shaping a general rule," *Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1182 (7th Cir. 1990) (Posner, J.), that "have salience beyond the specific parties to [a] suit," *Carhart v. Gonzales*, 413 F.3d 791, 799 (8th Cir. 2005) (citation omitted), *rev'd*, 550 U.S. 124 (2007), and "help the tribunal decide questions of law and policy and discretion." *Langevin v. Chenango Ct., Inc.*, 447 F.2d 296, 300 (2d Cir. 1971) (Friendly, C.J.) (quotation marks and citation omitted); *United States v. $124,570 U.S. Currency*, 873 F.2d 1240, 1244 (9th Cir. 1989). They are not subject to ordinary rules of judicial notice, *see* Fed. R. Evid. 201, and they may be established by material in the briefs at any stage of the proceeding, even on appeal. *See Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 112 (1st Cir. 1999); *Free v. Peters*, 12 F.3d 700, 706 (7th Cir. 1993) (Posner, J.); *Dunagin v. Oxford*, 718 F.2d 738, 748 n.8 (5th Cir. 1983). And the critical legislative facts here—the safety and privacy interests that support sex-separated bathrooms—are amply supported by the authorities set forth in this brief.

## 2.  The best-reasoned caselaw upholds sex-separated bathrooms.

Plaintiffs are not likely to succeed on the merits because the courts of appeals are split on whether sex-separated bathrooms comply with equal protection.  And not only are the courts of appeals split, but the key decisions on these questions have generated multiple opinions, including concurrences and dissents.  Among those opinions, the best-reasoned decisions uphold laws like S.B. 1100 and show that Plaintiffs' claims fail as a matter of law.

Most significant, in *Adams*, the en banc Eleventh Circuit upheld what it termed "the unremarkable—and nearly universal—practice of separating school bathrooms based on biological sex."  57 F.4th at 796.  As Judge Lagoa's opinion for the court explained, "public bathrooms" are "likely the most frequently encountered example" of the "long tradition in this country of separating sexes" in certain circumstances.  *Id.* at 801.  Where that happens in public schools, additional deference is warranted, given "'the schools' custodial and tutelary responsibility for children.'"  *Id.* at 801-02 (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995)).  In light of that tradition and deference, sex-separation of bathrooms both "advances the important governmental objective of protecting students' privacy in school bathrooms and does so in a manner substantially related to that objective."  *Id.* at 803.  As the court explained, "protection of individual privacy will occasionally require some segregation between the sexes," *id.* at 804, and so it is "no surprise, then, that the privacy afforded by sex-separated bathrooms has been widely recognized throughout American history and jurisprudence."  *Id.* at 805.  And those

privacy interests are sex-specific, because they "hinge on using the bathroom away from the opposite sex and shielding one's body from the opposite sex." *Id.* at 806. Given the direct fit between those sex-specific privacy interests and sex separation of bathrooms, the Eleventh Circuit upheld the law. *See id.*; *accord D.H. by A.H. v. Williamson Cnty. Bd. of Educ.*, No. 3:22-CV-00570, 2022 WL 16639994, at *10 (M.D. Tenn. Nov. 2, 2022).

Likewise, while Plaintiffs rely on the Fourth Circuit's overturning of a similar school board policy in *Grimm*, *see* Dkt. 15-1, far more persuasive is the vigorous dissent by Judge Niemeyer, who would have held that sex-separation of bathrooms in "accord with longstanding and widespread practice" was "appropriately justified by the needs of individual privacy, as has been recognized by law." 972 F.3d at 628 (Niemeyer, J., dissenting). It "is constitutional for a school to provide separate restrooms for its male and female students … because there are biological differences between the two sexes that are relevant with respect to restroom use." *Id.* at 636. The "privacy interest" that people have when "they remove clothes and engage in personal hygiene, … is heightened when persons of the opposite sex are present," and especially so for children, who "are still developing, both emotionally and physically." *Id.* (quotation omitted). Whatever the majority may have believed about the wisdom of certain policies for students with gender dysphoria, "our role as a court is limited"— to "apply the law and … leave it to Congress to determine policy." *Id.* at 637.

Nor is anything in *Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020), to the contrary. That case was the converse of this one: it did not overturn sex-

separated bathrooms, but rather rejected a challenge to a policy that allowed students with gender dysphoria to use bathrooms of the opposite sex. *Id.* at 1217–18. And of course, holding that the Constitution does not *require* sex-separated bathrooms is not the same as holding that the Constitution *forbids* sex-separated bathrooms. In fact, the variety of legislative approaches on the question suggests the opposite: that the constitution permits latitude on the question. *L.W.*, 73 F.4th at 412, 415–416.

The Ninth Circuit's recent decision in *Hecox v. Little*, ___ F.4th ___, 2023 WL 5283127 (9th Cir. Aug. 17, 2023), is even less applicable. Although the State disagrees with that decision, the Ninth Circuit's opinion distinguished *Adams* by being quite clear that "bathrooms by their very nature implicate important privacy interests and are not the equivalent of athletic teams." *Id.* at *10 & n.10. The State's interest in personal sexual safety and privacy that supports S.B. 1100 is wholly distinct from the interests of fairness and protecting athletic scholarships for women that were cited to this Court in support of the Fairness in Women's Sports Act. *Hecox v. Little*, 479 F. Supp. 3d 930, 980-83 (D. Idaho 2020). Likewise, while the Ninth Circuit concluded that the Fairness in Women's Sports Act discriminated directly against persons with gender dysphoria, *Hecox*, 2023 WL 5283127 at *7-8, S.B. 1100 classifies based only on sex. *See infra* at Section I.A.3. *Hecox* "address[ed] only the Act before [the court], and opine[d] on no other regulation or policy." *Hecox*, 2023 WL 5283127 at *22. There is no basis to extend *Hecox* to this context.

### 3.  S.B. 1100 classifies based on sex, not gender dysphoria.

Plaintiffs work in vain to characterize S.B. 1100 as discriminating based on their status as individuals with gender dysphoria.  S.B. 1100 separates bathrooms, locker rooms, and overnight stays based on sex—it does not account for or distinguish students based on gender dysphoria or any other characteristic.  To respect the safety and privacy of all students in areas where they may be partially undressed, S.B. 1100 simply requires all students to use the restroom or changing facilities that correspond with their sex.  So while S.B. 1100 does separate restroom facilities by sex, it treats every *similarly situated* individual the same.  All males must use the boys' restroom (or a single-occupancy restroom), and all females must use the girls' restroom (or a single-occupancy restroom).

This separation based on biological sex requires no knowledge or awareness of gender dysphoria, and as a result, necessarily does not discriminate based on transgender status or gender identity.  As the Eleventh Circuit explained in *Adams*, such a law "does not depend in any way on how students act or identify," but rather "separates bathrooms based on biological sex, which is not a stereotype." *Adams*, 57 F.4th at 809.  There is no classification based on gender dysphoria since there is a "lack of identity" between that classification and the sex-based line drawn by the law, which includes people with gender dysphoria on both sides.  *Id.* (discussing *Geduldig*, 417 U.S. at 486, 496–97).  Even a disparate impact on persons with gender dysphoria, to have any basis to be actionable, would require a showing it was "motivated by purposeful discrimination." *Id.* at 810 (quotation omitted).  Plaintiffs lack any such

evidence—to the contrary, the law specifically provides an accommodation for people with gender dysphoria that Dr. Budge's studies acknowledge "can be viewed as part of gender-affirming support and care."  Price-Feeney at 1143 (2021); Budge Dep. at 95:12-19.[4]  And even then, as a matter of original meaning, the Equal Protection Clause and Title IX have nothing at all to say about gender dysphoria or transgender status since those concepts were essentially unknown when both the Fourteenth Amendment and Title IX were enacted.  *Dobbs*, 142 S. Ct. at 2244–45; *Bruen*, 142 S. Ct. at 2131; Carl R. Trueman, The Rise and Triumph of the Modern Self 19, 350–57 (2020).

Nor does it make a difference that the Ninth Circuit applies intermediate scrutiny to classifications concerning gender dysphoria.  The Ninth Circuit adopted

---

[4] Plaintiffs seek to minimize the common-sense findings of the legislature in support of S.B. 1100 and instead strain to find evidence of discriminatory intent in legislative testimony.  But "[s]tray remarks of individual legislators are among the weakest evidence of legislative intent," *Tingley v. Ferguson*, 47 F.4th 1055, 1087 (9th Cir. 2022), and "it is quite a leap to attribute these motives to all the legislators whose votes were responsible for the enactment of those laws."  *Dobbs*, 142 S. Ct. at 2256; *Barhart v. Sigmon Coal*, 534 U.S. 438, 457 (2002).  None of the speakers in support of the bill expressed any animus towards transgender individuals or "professed a belief that transgender people do not or should not exist."  Dkt 15-1 at 6.  Rather, Plaintiffs find discrimination only through mischaracterization—for example, by pointing to Senator Trakel's comments regarding "some small child" being "molested or raped in the bathroom."  *Id.*  But Senator Trakel was simply addressing whether documented cases of harm were required to enact a preventative law—whether "we have to wait for someone to be hurt, or injured or raped before we implement a law" (Feb. 23, 2023, Senate Educ. Comm. Hearings at 52:28; https://tinyurl.com/4w8mkpvh)—and made clear that he did "not think that the risk of harm or anything comes from the trans community, but … from predators and people that would abuse this policy to get into opposite sex bathrooms, locker rooms, and overnight trips."  Mar. 15, 2023, House Educ. Comm. Hearings at 25:13 (https://tinyurl.com/yvpnrn38).

that standard in *Karnoski v. Trump*, 926 F.3d 1180, 1192 (9th Cir. 2019), which concerned a policy that directly forbade military service by persons with gender dysphoria. *Id.* at 1186. But S.B. 1100 does not make any such classification here: it "facially classifies based on biological sex," not gender dysphoria. *See Adams*, 57 F.4th at 808. Just like in *Adams*, S.B. 1100 "does not classify students" according to gender dysphoria "because a 'lack of identity' exists" between that diagnosis "and a policy that divides students into biological male and biological female groups … for purposes of separating the male and female bathrooms by biological sex." *Id.* at 809; *L. W.*, 73 F.4th at 412. And even if intermediate scrutiny applied under *Karnoski*, it makes no difference: that standard already applies based on the law's sex classification, and S.B. 1100 passes it with flying colors.

Finally, Plaintiffs cannot save their case by invoking the Supreme Court's statutory interpretation of Title VII's sex discrimination provisions in *Bostock*, 140 S. Ct. For one, *Bostock* was painstakingly clear that it did "not purport to address bathrooms, locker rooms, or anything else of the kind." *Id.* at 1753. And more important, the heart of its analysis that Plaintiffs rely on—that "it is impossible to discriminate against a person for being transgender without discriminating against that individual based on sex"—does not apply here. Dkt. 15-1 at 12 (quoting *Bostock*, 140 S. Ct. at 1741). This is not a case like *Bostock* where Plaintiffs attempt to leverage a classification based on gender dysphoria into a classification based on sex. In fact, it's the opposite: Plaintiffs argue that a classification based on sex should be treated as a classification based on gender dysphoria. Nothing in *Bostock* permits that logical

inversion.  And it is also plainly wrong.  As *Adams* observed, a classification based on sex is not necessarily a classification based on gender dysphoria, since individuals with gender dysphoria fall into both of the two sexes.  *Adams*, 57 F.4th at 808-09.

## B.   Title IX expressly allows for sex-separated bathrooms.

Plaintiffs say that S.B. 1100 violates Title IX because its requirement of sex-separated bathrooms necessarily discriminates "on the basis of sex."  20 U.S.C. § 1681.  They omit, however, that the Title IX and its implementing regulations "explicitly permit" schools to classify based on sex in this area.  *Adams*, 57 F.4th at 811.  Title IX states that no provision in that chapter "shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686.   And the regulations allow schools receiving federal funds to provide "separate toilet, locker room, and shower facilities on the basis of sex," so long as the facilities "provided for students of one sex [are] comparable to such facilities provided for students of the other sex."  34 C.F.R. § 106.33.  They also allow schools to "provide separate housing on the basis of sex," so long as the housing is "[p]roportionate in quantity to the number of students of that sex applying for such housing" and "[c]omparable in quality and cost to the student."  34 C.F.R. § 106.32(b).  Since Title IX allows the practice in question, the fact that the Ninth Circuit has held that Title IX protects gender identity is simply immaterial.  *See Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023).   Plaintiffs' construction of Title IX "is untenable and appears to contradict the very purpose of allowing separate facilities."  *D.H. v.*

*Williamson Cnty. Board of Educ.*, No. 3:22-cv-00570, 2022 WL 16639994, at *10. (M.D. Tenn. 2022).   As the Eleventh Circuit logically observed, what the law specifically permits it necessarily does not forbid.  *Adams*, 57 F.4th at 811.

Plaintiffs ignore *Adams*, but urge the Court to follow the decisions of the Fourth, Sixth, and Seventh Circuits that have held that Title IX prohibits sex-separated bathrooms.   Dkt. 15-1 at 17 n.8.  But the reasoning of those decisions rejecting the express language of Title IX's regulations is not persuasive, as the separate opinions in each of those courts illustrates.  Judge Niemeyer dissented in the Fourth Circuit, explaining that "[c]ontrary to Grimm's claim, Title IX and its regulations explicitly authorize the policy followed by the High School." *Grimm*, 972 F.3d at 628 (Niemeyer, J., dissenting).  Judge Sutton dissented in the Sixth Circuit, noting that the U.S. Supreme Court's grant of a stay from the Fourth Circuit's initial ruling in *Grimm* "necessarily found that the school board was reasonably likely to succeed on the merits." *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 223 (6th Cir. 2016) (Sutton, J., dissenting).  And Judge Easterbrook in the Seventh Circuit expressed that *Adams* "better understands how Title IX applies" in this context.  *A.C.*, 2023 WL 4881915, at *11 (Easterbrook, J., concurring).

Unlike Plaintiffs, the federal government at least acknowledges that its own Title IX regulations permit separation of bathrooms by sex, but says, without citation, that those rules do "not hold when the student is transgender."  Dkt. 41 at 10.  But what the federal government omits is even more disturbing: that it has been enjoined from enforcing this interpretation against the State of Idaho, which successfully sued

it to block this very theory.  *See Tennessee*, 615 F. Supp. 3d 807.  In that injunction, the district court ruled that the federal government's interpretation was likely legislative, since it was "a new position inconsistent with ... [the Department's] existing regulations."  *Id.* at 839.  The district court specifically enjoined Defendant Kristen Clarke, the principal signatory to the government's statement of interest in this matter.  *Id.* at 816.  And it did so to prevent, among other things, Ms. Clarke's interference with Idaho's "sovereign authority to enforce state laws."  *Id.* at 822.  Ms. Clarke's failure to cite this injunction while filing a brief seeking to overturn Idaho law is troubling indeed, and Defendants reserve all their rights.

Further, if Title IX were not clear enough on its face, its role as spending clause legislation is even more compelling.  "A safeguard of our federalist system is the demand that Congress provide the States with a clear statement when imposing a condition on federal funding because legislation enacted pursuant to the spending power is much in the nature of a contract."  *Adams*, 57 F.4th at 815 (quotation and citation omitted).  Thus, the "legitimacy of Congress' power" under the spending power "rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'"  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (citations omitted).  And "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously."  *Id.*  So if Congress meant to forbid sex-separated bathrooms through regulations that specifically approve them, it ought to have said so clearly.  It manifestly did not.

## C.     Plaintiffs' scientific case is biased and deeply flawed.

Plaintiffs base their scientific case on the testimony of Dr. Stephanie Budge, "a psychologist and professor with expertise in transgender health."  Dkt. 15-1 at 2. Dr. Budge has acknowledged in print media that she is an "advocate" and "activist" regarding transgender issues and is not concerned that her research might be "tainted" and viewed as biased as a result.  Budge Dep. at 112:13-120:5; Peter Coutu, *Changing the Culture*, Isthmus (Sept. 21, 2017) (Ex. 2).  She says that reliability "can" be important to scientific research, but would not agree that it is a necessary ingredient.  Budge Dep. at 29:20-33:19.  Federal law is to the contrary.  *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).  And while the Rules of Evidence do not apply at the preliminary injunction stage, Dr. Budge's "activist" opinion would not meet the criteria for admissibility under Rule 702.[5]

Dr. Budge says that while most people have a "sex assigned at birth," for those who have gender dysphoria, their subjective "gender identity" is "determinative" of their sex.   Dkt. 15-1 at 2-3 (citing Budge Decl. ¶ 25).   She says that under "internationally accepted Standards of Care" promulgated by World Professional Association for Transgender Health ("WPATH"),[6] people with gender dysphoria should receive "social transition," which requires them to "live fully in accordance with their gender identity in all aspects of life."  *See id.* (citing Budge Decl. ¶¶ 15, 34).

---

[5] These arguments relate only to Plaintiffs' motion for preliminary injunction.

[6] Defendants served a subpoena on WPATH for records related to its Standards of Care, which WPATH has agreed to produce, subject to entry of a protective order.

She says this requires use of multi-occupancy bathrooms of the sex with which they identify, claiming that using gender-neutral single-occupancy restrooms "is stigmatizing and damaging." *See id.* at 7 (citing Budge Decl. ¶ 52). She is wrong on every one of these points.

### 1. Gender identity does not determine sex.

Dr. Budge cites nothing in support of her bold assertions about "sex … assigned at birth" and the allegedly "determinative" status of subjective professions of gender identity. Dkt. 15-5 ¶¶ 21-22. But as explained by Defendants' expert Dr. James Cantor, that notion is contrary to science, through which "the sex of a fetus is typically known by sonogram or amniocentesis many months before birth," as seen in "increasingly popular 'gender reveal' events." Cantor Decl. ¶ 49.[7]  It is also contrary to the law—among other things, *Bostock*'s recognition of discrimination based on gender dysphoria is based on the premise that the individual's sex is different than their subjective identity. *See Bostock*, 140 S. Ct. at 1741. So while Dr. Budge purported to apply "a scientific process" in reaching her opinions, Budge Dep. at 18:22-19:4, her attempt to conflate gender identity and sex is just an "*ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Cantor Decl. ¶¶ 47-48.

### 2. WPATH's standards are not "internationally accepted."

Dr. Budge said she reviewed "the full extent of the literature" in forming her opinion, Budge Dep. at 16:23-17:10, and she agreed "scientists should take into

---

[7] Dr. Budge refused to admit that prenatal genetic tests are capable of determining the sex of a child. Budge Dep. at 45:21-46:5.

account all of the information when making conclusions." *Id.* at 21:13-21.  Courts concur: "sound scientific methodology requires that a scientist consider all of the scientific evidence when making causation determinations." *In re Zoloft*, 26 F. Supp. 3d 449, 463 (E.D. Penn. 2014).  And "expert testimony that 'cherry-picks' relevant data" should be excluded. *EEOC v. Freeman*, 778 F.3d 463, 469 (4th Cir. 2015) (collecting cases); *In re Lipitor*, 892 F.3d 624, 634 (4th Cir. 2018); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005).

Dr. Budge did not apply the standard she endorses.  Instead, she emphasizes WPATH's statements that "puberty-delaying medication and gender-affirming hormones are appropriate and medically necessary treatments for adolescents." Dkt. 15-5 ¶ 31. And she ignored two systematic reviews—one by the UK's National Health Service and one by Sweden—that determined that the benefits of those treatments, if any, did not outweigh their known risks for children.  Budge Dep. at 106:6-111:11; Cantor Decl. ¶ 126.  Dr. Budge admitted she was aware of those reviews at the time they happened, *see id.,* 108:4-10, yet her declaration filed in July 2023 did not cite them, much less discuss or distinguish them.  Dkt. 15-5.  It is frankly "alarming" that Dr. Budge engaged in this "biased reliance on favorable sources" while ignoring two systematic reviews by European medical authorities that "could not be more relevant" to her opinions.  *Daniels-Feasel v. Forest Pharms., Inc.*, 2021 WL 4037820, slip op., at *12 (S.D.N.Y. Sept. 3, 2021), *aff'd*, 2023 WL 4837521 (2d Cir. July 28, 2023).  Her result-oriented opinion warrants little weight.

### 3.  In most cases, gender dysphoria desists without intervention.

Dr. Budge also fails to mention the eleven cohort studies that have followed minors with gender dysphoria, all of which reported that a majority of cases desisted without any intervention.  Cantor Decl. ¶¶ 54-57.  That is all the more troubling because she was previously confronted with those studies in a case challenging a similar Oklahoma law.  *See* Cantor *Bridge* Decl. App. 3 (Ex. 5); Budge Dep. at 87:3-88:17.  At her deposition in this case, Dr. Budge tried to dismiss those studies as "very old," Budge Dep. at 58:12-59:5, even though the largest and most recent study dates to 2021.  *See* Singh (2021) (Ex. 3); Budge Dep. at 85:14-86:2.  Then, when reviewing that study for the first time at deposition, Dr. Budge offered the ad hoc explanation that the study should never have been published and that the subjects likely did not have gender dysphoria.  Budge Dep. at 59:6-22; 80:11-84:17.[8]  But again, the very first sentence of the study says it "reports follow-up data on the largest sample to date of boys clinic-referred *for gender dysphoria*."  Singh (2021) at 1 (emphasis added).

Dr. Budge thus "selectively discuss[es] studies most supportive of her conclusions," *Zoloft*, 26 F. Supp. 3d at 460 (E.D. Penn. 2014), and "fails to explain information that otherwise would tend to cast doubt on that theory."  *In re Rezulin Prod. Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005).  Such cherry-picking of

---

[8] Dr. Budge also surmised that the patients in the Singh study may not have gender dysphoria because diagnostic criteria for that condition have changed over time.  Budge Dep. at 82:9-83:5.  But that rationalization carries little weight when she also acknowledged that the diagnostic criteria have become broader over time, and that if they were applied to the period at issue in the Singh study, she would expect to see "the same level of diagnoses, same number" as today.  *Id.* at 79:1-80:10.

favorable evidence "does not reflect scientific knowledge, is not derived by the scientific method, and is not 'good science.'" *In re Bextra & Celebrex Mktg. Sales Pracs. & Prods. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007); Cantor Decl. ¶ 107.  The court should disregard or give little weight to Dr. Budge's declaration.

### 4.  Single-user bathrooms are an adequate accommodation.

Dr. Budge's own authorities undermine her attempt to dismiss single-user bathrooms as an adequate accommodation.   While S.B. 1100 grants such accommodation to anyone uncomfortable using sex-separated multi-occupancy restrooms, Dr. Budge says that "[n]umerous research studies" confirm the "negative psychological impact of being invalidated and 'othered' in these ways."  Budge Decl. ¶ 52.  Not so—none of the studies she cites did any research on whether single-user bathrooms caused the impact she claims.  To the contrary, the first study she cited in support specifically states that "providing gender-neutral bathrooms … can be viewed as part of gender-affirming support and care."  Price-Feeney at 1143 (2021); Budge Dep. at 95:12-19.  By citing this study to reach "conclusions the authors of the study do not make," Dr. Budge "exceed[s] the limits of the conservative scientific methodology." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1248 (11th Cir. 2005); *accord Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009); *Happel v. Wal-Mart Stores, Inc.*, 602 F.3d 820, 826 (7th Cir. 2010); Cantor Decl. ¶ 26.  Her authorities do not support her opinions.

## II.     Plaintiffs are not entitled to a preliminary injunction.

The legal authorities above show that Plaintiffs' claims fail as a matter of law, and at a minimum, the fractured rulings in the courts of appeals undermine their attempt to show they are likely to succeed on the merits.  Plaintiffs note that "'serious questions going to the merits'" are enough for an injunction under Ninth Circuit law, as long as they meet the other elements and show "'the balance of hardships tips sharply in the plaintiff's favor.'"  Dkt. 15-1 at 9-10 (quoting *All. for the Wild Rockies*, 632 F.3d at 1134-35).  But they fare no better under this standard—this Court has already observed that the other "three factors are roughly even."  Dkt. 44 at 7.  In fact, the balance of harms tilts against Plaintiffs, and they cannot show irreparable harm or support of the public interest.  They are not entitled to an injunction.

*First*, the balance of harms does not favor Plaintiffs.  S.B. 1100 protects the privacy and safety interests of all who use the bathrooms, locker rooms, and overnight lodging by ensuring they do not have to expose their undressed bodies to members of the opposite sex.  As set forth above, those interests in shielding one's "unclothed figure" from "strangers of the opposite sex" is well settled in the law, particularly in the Ninth Circuit.  *Byrd*, 629 F.3d at 1141; *see also Faulkner*, 10 F.3d at 232; *Chaney*, 612 F.3d at 913.  An injunction against S.B. 1100 will leave those safety and privacy interests wholly unprotected for the majority of students who do not have gender dysphoria.  *Adams*, 57 F.4th at 806.  Under Plaintiffs' view, the only constitutionally adequate way to protect *all* students' privacy would be "single-stall, sex-neutral bathrooms."  *Id.*  And that is not the law.

*Second*, Plaintiffs themselves cannot show irreparable harm. Plaintiffs emphasize purported stigma, *see* Dkt. 15-1 at 1, 4, 7, 19, and Plaintiff Roe says using the multiple-occupancy facility the law allows will cause "outing" to peers. *Id.* at 8. Yet S.B. 1100 specifically provides an accommodation—that is the right to use a unisex, single-occupancy bathroom. Idaho Code § 33-6605 [33-6705]. Plaintiffs say that single-occupancy bathrooms "impose practical burdens where located in less accessible areas away from classes." Dkt. 34-1 at 8. But surely walking to a different restroom is not irreparable harm of constitutional dimension. Dr. Budge says that these "gender-neutral" bathrooms, *see* Budge Dep. at 93:24-94:4, have a "negative psychological impact" according to "[n]umerous research studies." Budge Decl. ¶ 52. And even if such a psychological impact could be irreparable harm, it is not supported by Dr. Budge's studies, which did not do any research on whether single-user bathrooms caused such an impact. Quite the opposite, the first study she cites states that "providing gender-neutral bathrooms … can be viewed as part of gender-affirming support and care." Price-Feeney at 1143 (2021); Budge Dep. at 95:12-19.

*Third*, the public interest does not favor an injunction. As Plaintiffs note, this element "'merge[s]'" with the balance of harms "'[w]hen the government is a party.'" Dkt. 15-1 at 9 (quoting *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). And as set forth above, the harm to the public in losing the safety and privacy protections of S.B. 1100 weighs decidedly against enjoining the law.

## CONCLUSION

The Court should deny a preliminary injunction and dismiss the Complaint.

DATED: August 22, 2023.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By:  /s/ Lincoln D. Wilson
      LINCOLN DAVIS WILSON
      Chief of Civil Litigation and
      Constitutional Defense

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 22, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Samuel L. Linnet
sam@alturaslawgroup.com

Avery P. Hitchcock
avery.hitchcock@mto.com

Christina S. Paek
cpaek@lambdalegal.org

Jacob Max Rosen
max.rosen@mto.com

Kell L. Olson
kolson@labdalegal.org

Jimmy Biblarz
jimmy.biblarz@mto.com

Peter C. Renn
prenn@lambdalegal.org

Katherine M. Forster
katherine.forster@mto.com

Tara L. Borelli
tborelli@lamdalegal.org

Nicholas Sidney
nick.sidney@mto.com

Paul Martin
paul.martin@mto.com

Robyn K. Bacon
robyn.bacom@mto.com

*Counsel for Plaintiffs*

*Counsel for Plaintiffs*

  /s/ *Lincoln Davis Wilson*
LINCOLN DAVIS WILSON
Chief, Civil Litigation and
Constitutional Defense