Samuel L. Linnet (ISB No. 9788)
sam@alturaslawgroup.com
ALTURAS LAW GROUP, PLLC
101 E Bullion St., Unit 2H
Hailey, ID 83333
(208) 788-6688

Peter C. Renn*
prenn@lambdalegal.org
Kell L. Olson*†
kolson@lambdalegal.org
Tara L. Borelli*†
tborelli@lambdalegal.org
Christina S. Paek*
cpaek@lambdalegal.org
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
†*mailing address only*
(213) 382-7600 (T) | (213) 402-2537 (F)

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Katherine M. Forster*
katherine.forster@mto.com
Robyn K. Bacon*
robyn.bacon@mto.com
Nicholas R. Sidney*
nick.sidney@mto.com
Paul Martin*
paul.martin@mto.com
Avery P. Hitchcock*
avery.hitchcock@mto.com
Jimmy P. Biblarz*
jimmy.biblarz@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Ave., 50th Fl.
Los Angeles, CA 90071-3426
(213) 683-9100 (T) | (213) 687-3702 (F)

J. Max Rosen*
max.rosen@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
(415) 512-4000 (T) | (415) 512-4077 (F)

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| REBECCA ROE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DEBBIE CRITCHFIELD, et al., <br><br> *Defendants*. | Case No. 1:23-cv-00315-DCN <br><br> **Supplemental Declaration of Jimmy P. Biblarz** |

1

## SUPPLEMENTAL DECLARATION OF JIMMY P. BIBLARZ

I, Jimmy P. Biblarz, do declare as follows:

1. I am an attorney at law duly admitted and licensed to practice law in the State of California and counsel for Plaintiffs Rebecca Roe and Sexuality and Gender Alliance in the above-captioned action. I am admitted to appear before this Court pro hac vice. I am an attorney at the law firm of Munger, Tolles & Olson LLP in Los Angeles. I have personal knowledge of the facts contained herein or know of such facts by my review of the files maintained by Munger, Tolles & Olson LLP in the normal course of its business, and if called upon to do so, could and would competently testify thereto.

2. In Greg Wilson's Declaration in Support of Defendants' Opposition of Plaintiffs' Motion for a Temporary Restraining Order, he avers: "To the best of the State Education Department's estimation, even before the enactment of S.B. 1100, the vast majority of Idaho public school districts (approximately three-quarters of school districts) maintained sex-separated restrooms, changing facilities, and overnight accommodations and did not have any policy that would permit the relief that Plaintiffs seek here." Although S.B. 1100 also applies to charter schools, *see* 33-6602(2) ("'Public school' means any public school teaching K-12 students within an Idaho school district or charter school."), Mr. Wilson states that his averment does not pertain to or include them, Wilson Decl. ¶ 5 ("The state of Idaho has 115 traditional public school districts, without counting public charter schools."); *id.* ¶ 6 (addressing "Idaho public school districts").

3. In preparation for Plaintiffs' reply brief in support of their motion for a preliminary injunction, I oversaw research into the basis for Mr. Wilson's averment that "before the enactment of SB 1100," "that vast majority of Idaho public school districts (approximately

three-quarters of school districts) … did not have any policy that would *permit* the relief that Plaintiffs seek here." Wilson Decl. ¶ 6 (emphasis added).

4. To test this proposition, I searched at length for any publicly available "policy" in any Idaho public school district (*i.e.*, not charter schools, which Mr. Wilson does not purport to address) that, before S.B. 1100, categorically prohibited transgender students from using sex-separated facilities aligned with their gender identity. To reasonably conduct this search, I first identified the list of Idaho public school districts from the State of Idaho's website (https://www.idaho.gov/education/school-districts/). I determined that each school district had a publicly accessible website on which it published district policies, handbooks, community updates, calendars, and related information. For example, Bonneville Joint School District #93's website can be accessed at https://www.d93schools.org/. I then visited the website of each public school district in Idaho, and looked for available policy manuals, handbooks, press releases, handouts, or other available writings related to whether a school district had a policy expressly allowing, or expressly disallowing, under all or certain circumstances, a transgender person to use sex-separated facilities that correspond with their gender identity.

5. Through this search, I was able to locate numerous written, accessible policies or practices governing the subject matter stated above (many of which expressly allowed, before S.B. 1100, transgender students to use facilities that aligned with their gender identity). However, I identified no written policy that met Mr. Wilson's description, *i.e.*, that existed before the enactment of S.B. 1100 and categorically excluded transgender students from sex-separated facilities that correspond to their gender identity.

6. For districts where I did not identify any available policies via their websites, I then conducted a Google search of the school district name and a variety of key terms including

"transgender," "bathroom access," and "facilities policy." I identified and read several media articles that discussed school board debates about facilities policies. Lastly, to the extent they were publicly available on districts' websites, I reviewed school board meeting minutes from the last three years for districts where I had been unable to find any facilities policy information. I looked for agenda items related to facilities policies.

7. Again, I was not able to locate any policy that met Mr. Wilson's description, *i.e.*, that existed before the enactment of S.B. 1100 and categorically excluded transgender students from sex-separated facilities that correspond to their gender identity.

8. I also reviewed the Idaho House Education Committee and Idaho Senate Education Committee hearings on S.B. 1100. Between the two hearings, the words "transgender" or "trans" (referring to transgender people), were referenced at least 75 times.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 6, 2023

*/s/ Jimmy Biblarz*
Jimmy P. Biblarz