RAÚL R. LABRADOR
ATTORNEY GENERAL

LINCOLN DAVIS WILSON, ISB #11860
Chief, Civil Litigation and
Constitutional Defense

RAFAEL J. DROZ, ISB #9934
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Fax: (208) 854-8073
lincoln.wilson@ag.idaho.gov
rafael.droz@ag.idaho.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

REBECCA ROE, by and through her parents and next friends, et al.

*Plaintiffs*,

v.

DEBBIE CRITCHFIELD, in her official capacity as Idaho State Superintendent of Public Instruction, et al.

*Defendants.*

Case No. 1:23-cv-00315-DCN

**REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Plaintiffs' equal protection claims fail ........ 1

II. Plaintiffs' Title IX claims fail ........ 8

III. Plaintiffs' privacy claims fail ........ 10

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

### CASES

*Adams by and through Kasper v. School Board of St. Johns County*,
57 F.4th 791 (11th Cir. 2022) .......... *passim*

*Bostock v. Clayton County, GA*,
140 S. Ct. 1731 (2020) .......... *passim*

*Byrd v. Maricopa County Sheriff's Department*,
629 F.3d 1135 (9th Cir. 2011) .......... 6

*Chaney v. Plainfield Healthcare Center*,
612 F.3d 908 (7th Cir. 2010) .......... 6, 7

*Dobbs v. Jackson Women's Healthcare Organization*,
142 S. Ct. 2256 .......... 5

*Faulkner v. Jones*,
10 F.3d 226 (4th Cir. 1993) .......... 6, 7

*Fowler v. Stitt*,
___ F. Supp. 3d ___, 2023 WL 4010694 (N.D. Okla., June 8, 2023) .......... 10

*Frontiero v. Richardson*,
411 U.S. 677 (1973) .......... 2

*Gonzales v. Carhart*,
550 U.S. 124 (2007) .......... 8

*Grabowski v. Arizona Board of Regents*,
69 F.4th 1110 (2023) .......... 8, 9

*Hawkins v. United States*,
358 U.S. 74 (1958) .......... 6

*Hecox v. Little*,
___ F.4th ___, 2023 WL 5283127 (9th Cir. Aug. 17, 2023) .......... *passim*

*L.W. by and through Williams v. Skrmetti*,
73 F.4th 408 (6th Cir. 2023) .......... 7

*Nguyen v. INS*,
533 U.S. 53 (2001) .......... 2

*Parents for Privacy v. Barr*,
949 F.3d 1210 (9th Cir. 2020) .......... 7, 9

*Tennessee v. United States Department of Education*,
615 F. Supp. 3d 807 (E.D. Tenn. 2020) .......... 9

*Tingley v. Ferguson*,
47 F.4th 1055 (9th Cir. 2022) .......... 5

*United States v. Virginia*,
518 U.S. 515 (1996) .......... 2, 6

*Washington v. Glucksberg*,
521 U.S. 702 (1997) .......... 10

**STATUTES AND RULES**

Idaho Code § 33-6605 .......... 4

Idaho Code § 33-6705 .......... 4

20 U.S.C. § 1686 .......... 8

34 C.F.R. § 106.33 .......... 8

Federal Rule of Evidence 201 .......... 6

Federal Rule of Civil Procedure 12 .......... 10

**OTHER AUTHORITIES**

House Education Committee Hearing, March 15, 2023
https://tinyurl.com/5n7ht9sx .......... 5

Patricia M. Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*,
68 Iowa L. Rev. 195 (1983) .......... 5

## INTRODUCTION

Plaintiffs pull out all the stops in characterizing the State's legal defense of S.B. 1100. They say it "defies reason," Dkt. 50 at 4, that is "absurd" and "astounding," *id.* at 2, 6, 22, that it "attack[s] a straw man" based on "non-facts," *id.* at 8, 10, and that it consists of "red herrings" and "[v]ague[] gesturing" with "no factual support whatsoever." *Id.* at 1, 2, 10. What they don't say, however, is that the State's arguments that they so thoroughly disparage are the same ones that a majority of the active judges of the Eleventh Circuit adopted as law in upholding a policy indistinguishable from S.B. 1100. *Adams by and through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 796 (11th Cir. 2022) (en banc). Plaintiffs' contempt for the Eleventh Circuit's reasoning is no answer to it. Nor did the Ninth Circuit hold otherwise in *Hecox*—it expressly distinguished *Adams* on the ground that "bathrooms by their very nature implicate important privacy interests and are not the equivalent of athletic teams." *Hecox v. Little*, ___ F.4th ____, 2023 WL 5283127, at *10 & n.10 (9th Cir. Aug. 17, 2023). Plaintiffs' claims fail for the same cogent reasons that Judge Barbara Lagoa's opinion for the Eleventh Circuit recognized in *Adams*. And so this Court should dismiss those claims with prejudice.

## ARGUMENT

### I. Plaintiffs' equal protection claims fail.

The Eleventh Circuit's en banc decision in *Adams* shows that Plaintiffs' equal protection claims fail as a matter of law. That court considered and upheld the same dividing line that S.B. 1100 applies for bathroom use here: "biological sex." 57 F.4th

at 796. That standard of "biological sex" underlies all of the Supreme Court's equal protection jurisprudence on sex discrimination. Indeed, while Plaintiffs allege that sex is determined by subjective "gender identity," Dkt. 1 at ¶ 24, the Supreme Court holds the opposite: that sex is binary, *United States v. Virginia*, 518 U.S. 515, 533 (1996), an "immutable characteristic," *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973), and defined by "our most basic biological differences." *Nguyen v. INS*, 533 U.S. 53, 73 (2001). Even in more recent statutory decisions, the Supreme Court has continued to recognize sex as referring "to biological distinctions between male and female." *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1739 (2020). And so *Adams*, employing that basic biological definition of sex, upheld "the unremarkable—and nearly universal—practice of separating school bathrooms" according to sex. 57 F.4th at 796. This Court should too.

Plaintiffs' claims would require the Court to reject this biological conception of sex and adopt their construct of sex as a subjective concept that depends on "gender identity." Dkt. 1 at ¶ 24. Yet even while they advance that theory, they try to say it has nothing to do with the gender-affirming care, and that it is "inexplicabl[e]" that the State would think otherwise. Dkt. 50 at 2. But their actual allegations preclude this retrospective gloss on their claims. In fact, Plaintiffs' theory of gender-affirming care is the very core and foundation of their Complaint: that they are entitled to access to "gender-affirming facilities" as "part of a social transition—and an important step in treating the symptoms of gender dysphoria." Dkt. 1 at ¶ 34.

Similar allegations about gender-affirming care permeate Plaintiffs' pleading:

- "Treatment for gender dysphoria generally entails living in a manner consistent with one's gender identity in all aspects of life—including using restrooms and related facilities that align with that gender identity." *Id.* ¶ 4.

- "Prohibiting transgender youth from using those restrooms is nothing short of depriving them of the medical care they need, and it will expose vulnerable Idaho youth to a range of serious health consequences including depression, anxiety, and suicidality." *Id.*

- "Failing to recognize or respect a transgender person's gender is contrary to established medical protocols and can exacerbate the symptoms of gender dysphoria." *Id.* ¶ 29.

- "In addition to social transition, medical treatments such as gender-affirming hormone therapy and surgical care may also be undertaken to facilitate transition and alleviate dysphoria by bringing a person's body into greater typical alignment with their gender identity." *Id.* ¶ 30.

- "Psychotherapy … is not a substitute for social and medical transition as a means of treating gender dysphoria." *Id.* ¶ 31.

- "Living in a manner consistent with her gender identity, including having access to the girls' restroom, is an important aspect of the treatment for Rebecca's gender dysphoria." *Id.* ¶ 51.

This litany of allegations about the purportedly therapeutic role of bathrooms in Plaintiffs' medical treatment shows it is not possible to address their claims apart from the essential premise of gender-affirming care. And that premise is at odds with the definition of sex that the U.S. Supreme Court employs in its equal protection cases (in addition to being scientifically unsupported, *see* Dkt. 47-1 at 19–23).

Plaintiffs nevertheless continue to urge this subjective conception of "sex" based on "gender identity" to criticize S.B. 1100, which they say stops only people with gender dysphoria from using the bathroom associated with their gender identity. Dkt. 50 at 3. But there is nothing wrong with the law making this simple distinction based on biological sex. As *Adams* explained, a legal classification based on that

settled understanding of sex "is not a stereotype" and "does not depend in any way on how students act or identify." 57 F.4th at 809. And even if, as *Bostock* held, a classification based on gender dysphoria is necessarily a classification based on sex, *see* 140 S. Ct. at 1741, that does not mean the reverse is true: that a classification based on sex is necessarily a classification based on gender dysphoria.

Plaintiffs claim the Ninth Circuit's decision in *Hecox* forecloses the State's defense, but it does nothing of the kind. While the State disagrees with the panel decision in *Hecox*,[1] that opinion took particular pains to distinguish *Adams*, noting that "bathrooms by their very nature implicate important privacy interests and are not the equivalent of athletic teams." *Hecox*, 2023 WL 5283127, at *10 & n.10. In addition, *Hecox* was premised on the finding that the Fairness in Women's Sports Act was enacted to "target" people with gender dysphoria and did nothing to accommodate them, *see id.*, but that is not the case here. To the contrary, like in *Adams*, S.B. 1100 provides an accommodation that allows people with gender dysphoria to use single-user, gender-neutral bathrooms. Idaho Code § 33-6605 [33-6705]; Dkt. 47-1 at 14. Thus, while the State disagrees that a sex-based law must accommodate people with gender dysphoria, that disagreement is immaterial here.

Plaintiffs try to minimize S.B. 1100's accommodation by arguing that the legislative record shows the law was specifically enacted to discriminate against persons with gender dysphoria. Their claims are misleading. For example, they

---

[1] Both the State Defendants and the intervenors have filed petitions for rehearing en banc in *Hecox*, to which the Ninth Circuit has now requested a response. *See Hecox v. Little*, No. 20-35813, Dkt. 228 (9th Cir. Sept. 7, 2023).

argue the law was overtly biased against people with gender dysphoria because the phrase "trans" was used 75 times during legislative hearings. Dkt. 50 at 7. But they conveniently omit that 49 of those 75 references were from the opponents of the law. *See* Appendix A. And many of the references by supporters of the law simply responded to say that the law was there to protect sex-specific privacy, not to harm persons with gender dysphoria—e.g., Sen. Trakel's comment that he did "not think that the risk of harm or anything comes from the trans community, but … from predators and people that would abuse this policy to get into opposite sex bathrooms, locker rooms, and overnight trips." Mar. 15, 2023, House Educ. Comm. Hearings at 25:13 (https://tinyurl.com/5n7hr9sx). Thus, the legislative record here shows not only the fallacy of relying on "[s]tray remarks of individual legislators" to show legislative intent, *Tingley v. Ferguson*, 47 F.4th 1055, 1087 (9th Cir. 2022); *Dobbs,* 142 S. Ct. at 2256, but also why overreliance on legislative history is like "looking over a crowd and picking out your friends."[2] And it certainly does not show animus against those whom the law accommodates.

This Court should therefore follow *Adams* and the authorities it relied on, as fully set forth in the State's opening brief. Dkt. 47-1 at 6–12. The Eleventh Circuit did not require extensive legislative findings in support of that policy or a specific record of harms that the policy sought to address retrospectively. Instead, it ruled based on the "long tradition in this country of separating sexes" in these

---

[2] *See* Patricia M. Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*, 68 Iowa L. Rev. 195, 214 (1983) (attributing quote to Hon. Harold Leventhal).

circumstances, *Adams* 57 F.4th at 801, and the equally longstanding judicial recognition of "the important governmental objective" of protecting sex-specific privacy, *id.* at 803, and "shielding one's body from the opposite sex." *Id.* at 806. The Court thus need not credit Plaintiffs' allegations that privacy and safety interests are insufficient to support S.B. 1100, since they are contrary to the law's longstanding recognition that "elementary self-respect and personal dignity" support "[t]he desire to shield one's unclothed figure" from strangers of the opposite sex. *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011); *see also Virginia*, 518 U.S. at 550 n.19; *Faulkner v. Jones*, 10 F.3d 226, 232 (4th Cir. 1993); *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 913 (7th Cir. 2010). Nor does the State need to proffer an evidentiary record to defend these interests that are "widely recognized throughout American history and jurisprudence." *Adams*, 57 F.4th at 805.

In the face of this well-settled recognition of safety and privacy interests, Plaintiffs charge that Defendants "fail to point to *any* facts at all to substantiate their justifications" for S.B. 1100. Dkt. 50 at 10. But this mistakenly demands that these basic premises of law, which the Eleventh Circuit and others have recognized as matters of *legislative* fact, be proven by *adjudicative* facts. *See* Dkt. 47-1 at 9 n.3. The Federal Rules of Evidence recognize that the Court may take judicial notice of such legislative facts even where Plaintiffs dispute them. *See* Fed. R. Evid. 201, Advisory Committee Note, subdivision (a). For example, because of the inherent judicial authority to make findings of legislative fact, the Supreme Court could conclude, without evidence, that adverse testimony by a spouse in a criminal case

would "be likely to destroy almost any marriage." *Id.* (quoting *Hawkins v. United States*, 358 U.S. 74, 78 (1958)). In the same manner, this Court needs no evidentiary record to endorse society's "undisputed approval of separate public rest rooms for men and women," *Faulkner*, 10 F.3d at 232, "to accommodate privacy needs." *Chaney*, 612 F.3d at 913. It may simply find these things are so—as both the Idaho legislature and generations before have found—and dismiss Plaintiffs' claims with prejudice.

Plaintiffs say the Ninth Circuit rejected these safety and privacy interests in *Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020). But it did no such thing. Again, *Parents for Privacy* concerned the inverse of the law here: a policy allowing students to use bathrooms based on subjective gender identity, rather than a law requiring students to use bathrooms based on biological sex. Dkt. 47-1 at 12–13. And Plaintiffs' own briefing shows that the asserted privacy interests in the two cases are not the same: *Adams* recognized the interest in "'using the bathroom away from the opposite sex,'" while *Parents for Privacy* rejected the right to be free from "'the mere presence of transgender students in locker and bathroom facilities.'" *See* Dkt. 50 at 13 (quoting *Adams*, 57 F.4th at 806; *Parents for Privacy*, 949 F.3d at 1228–29). Quite plainly, legislative power to protect generalized sex-specific privacy is not the same as an individual right to be free from "bodily exposure to a transgender student in school facilities." *Parents for Privacy*, 949 F.3d at 1225.

In the end, if *Parents for Privacy* says the constitution makes room for schools to cast aside traditional standards of sex-separated bathrooms, then surely it makes room to uphold those standards too. *See L.W. by and through Williams v. Skrmetti*,

73 F.4th 408, 420 (6th Cir. 2023). States have "wide discretion to pass legislation in areas where there is medical and scientific uncertainty." *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007) (citation omitted). And given the medical controversy over the gender-affirming care Plaintiffs endorse, the State had ample reason to act as it did.

**II. Plaintiffs' Title IX claims fail.**

Nothing in Plaintiffs' brief refutes the plain statutory fact that Title IX and its implementing regulations "explicitly permit" the sex classifications that S.B. 1100 institutes for bathrooms, locker rooms, and overnight lodging. *Adams*, 57 F.4th at 811; 20 U.S.C. § 1686; 34 C.F.R. § 106.33. And as *Adams* held, the status of Title IX as spending clause legislation would require Congress to unambiguously prohibit sex-separated bathrooms—not, as here, to expressly permit them. 57 F.4th at 815 (citation omitted). The Court should dismiss Plaintiffs' Title IX claims.

*First*, Plaintiffs note the Ninth Circuit has applied *Bostock*'s Title VII holding to Title IX. *Grabowski v. Arizona Bd. Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023). But that does not matter because *Bostock*'s rationale does not apply here. *Bostock* held that classifications based on gender dysphoria are necessarily classifications based on sex, but that does not mean that S.B. 1100's classification based on sex is necessarily a classification based on gender dysphoria. Dkt. 47-1 at 15. Plus, *Bostock* was clear that it did "not purport to address bathrooms, locker rooms, or anything else of the kind." *Bostock,* 140 S. Ct. at 1753. And even if *Bostock* applied in general, that does not address Title IX's express statutory carve-out.

*Second*, Plaintiffs try to argue that "sex" is ambiguous because Title IX does not define it. Dkt. 50 at 19. But this second argument is foreclosed by their first: if *Grabowski* says *Bostock*'s Title VII protection of gender dysphoria applies to Title IX, then so does its definition of sex. And *Bostock* was quite clear in defining sex as referring "to biological distinctions between male and female." 140 S. Ct. at 1739.

*Third*, Plaintiffs strangely argue that the Title IX holding in *Parents for Privacy* is "irreconcilable with *Adams*," when in fact it is in perfect alignment. Dkt. 50 at 19. They quote that holding in full: "'just because Title IX authorizes sex-segregated facilities does not mean that they are required, let alone that they must be segregated based only on biological sex and cannot accommodate gender identity.'" *Id.* (quoting *Parents for Privacy*, 949 F.3d at 1227). But the premise of that holding—that "Title IX authorizes sex-segregated facilities … based … on biological sex"—is exactly what *Adams* said. *See* 57 F.4th at 811. Plaintiffs cannot draw an inference from *Parents for Privacy* to hold the opposite of what it explicitly says.

*Fourth*, Plaintiffs try to distinguish the injunction against the United States in *Tennessee v. United States Dep't Educ.,* 615 F. Supp. 3d 807 (E.D. Tenn. 2022). Dkt. 50 at 22. But the United States advances the same arguments here that were the basis for its guidance that the Tennessee court enjoined. *Tennessee*, 615 F. Supp. 3d at 816, 833, 840 (e.g., arguing that *Bostock* applies to Title IX). If nothing else, that injunction—and the United States' deliberate decision not to even mention it to this Court—speaks deeply to the lack of merit in its Title IX arguments.

## III. Plaintiffs' privacy claims fail.

Plaintiffs' privacy claims fail for the reasons stated in the State's opening brief. Plaintiffs say that the State did not challenge their claims that they have a privacy right against "involuntary disclosure" of their gender dysphoria. Dkt. 50 at 23. To the contrary, the State expressly argued that Plaintiffs' claim that S.B. 1100 "will cause 'outing' to peers" fails because the law "specifically provides an accommodation—that is the right to use a unisex, single-occupancy bathroom." Dkt. 47-1 at 25. Plaintiffs thus fail to allege any cognizable injury to support that claim.

Based on the mistaken premise that the State did not move to dismiss this claim, Plaintiffs argue that the State has "waived several issues" and "concede[d] that there is a constitutional right to privacy in one's transgender status." Dkt. 50 at 23. But that is wrong as a matter of basic civil procedure. A defendant concedes nothing by omitting a merits argument from a Rule 12(b)(6) motion, since, unlike other defenses, "[f]ailure to state a claim upon which relief can be granted" is never waived. Fed. R. Civ. P. 12(h)(2). So even if Plaintiffs were somehow able to show an injury in connection with disclosure of their gender dysphoria, the State would argue, among other things, that "the concept of ordered liberty" within substantive due process does not protect against that disclosure. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (cleaned up); *Fowler v. Stitt*, __ F. Supp. 3d ___, 2023 WL 4010694 (N.D. Okla. June 8, 2023). The Court can so hold if and when the time comes.

## CONCLUSION

The Court should dismiss the Complaint with prejudice.

DATED: September 11, 2023.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By: /s/ *Lincoln D. Wilson*
LINCOLN DAVIS WILSON
Chief, Civil Litigation and
Constitutional Defense

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 11, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Samuel L. Linnet
sam@alturaslawgroup.com

Christina S. Paek
cpaek@lambdalegal.org

Kell L. Olson
kolson@labdalegal.org

Peter C. Renn
prenn@lambdalegal.org

Tara L. Borelli
tborelli@lamdalegal.org

Paul Martin
paul.martin@mto.com

*Counsel for Plaintiffs*

Avery P. Hitchcock
avery.hitchcock@mto.com

Jacob Max Rosen
max.rosen@mto.com

Jimmy Biblarz
jimmy.biblarz@mto.com

Katherine M. Forster
katherine.forster@mto.com

Nicholas Sidney
nick.sidney@mto.com

Robyn K. Bacon
robyn.bacom@mto.com

*Counsel for Plaintiffs*

/s/ *Lincoln Davis Wilson*
LINCOLN DAVIS WILSON
Chief, Civil Litigation and
Constitutional Defense