RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Acting Division Chief, Civil Litigation
and Constitutional Defense

JAMES E. "JIM" RICE, ISB #6511
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
jim.rice@ag.idaho.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| REBECCA ROE, *et al.*<br><br>     *Plaintiffs*,<br><br>v.<br><br>DEBBIE CRITCHFIELD, in her official capacity as Idaho State Superintendent of Public Instruction, *et al*.<br>     *Defendants*. | Case No. 1:23-cv-00315-DCN<br><br>**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL (Dkt. 64)** |

### INTRODUCTION

  Plaintiffs believe that the State of Idaho is disallowed from separating school bathrooms, changing facilities, and overnight accommodations based on biological sex—even when those facilities are used by children. They contend that the Equal

Protection Clause, Title IX, and some constitutional privacy right require States to allow any person of any sex to have access to the facility of his or her choice. But none of those federal grounds contain that novel requirement. The U.S. Constitution and bedrock principles of federalism leave States empowered to legislate on matters of health, safety, and welfare, which is precisely what Idaho has done here. The State of Idaho acted within its traditional police powers and determined, as a matter of State policy, that K-12 public school restrooms and changing facilities will be separated based on sex. That policy determination is neither radical nor unlawful: it is consistent with "the unremarkable—and nearly universal—practice of separating school bathrooms based on biological sex." *Adams by and through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 796 (11th Cir. 2022) (en banc).

After failing to secure their requested relief from this Court, Plaintiffs appealed this Court's decision, asking the Ninth Circuit to dictate a single national policy that local governments cannot separate intimate school facilities based on sex. But that is not the role of the judiciary—it is both a matter for the legislative branch and a matter for State, not federal, government. That is why the Ninth Circuit has previously declined to "pass judgment on [a] school district's policy or on how [a] school district can best fulfill its duty as a public educational institution." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1217 (9th Cir. 2020).

This Court correctly denied Plaintiffs' motion for a preliminary injunction. The law at issue, Idaho Code § 33-6701, *et seq.*, draws a distinction based on sex, and that distinction furthers an important and legitimate State interest. The law does not

discriminate against transgender students. It easily passes Equal Protection scrutiny. Similarly, it does not violate Title IX since Title IX expressly allows schools to maintain sex segregated restrooms, locker rooms, and changing facilities. Further, there is no privacy violation because the law does not require students to disclose any personal information. Accordingly, this Court should uphold its decision denying Plaintiffs' request for a preliminary injunction and deny Plaintiffs' Motion for Injunction Pending Appeal (Dkt. 64-1).

## STANDARD

"In determining whether to grant an injunction pending appeal, [the Court] appl[ies] the test for preliminary injunctions." *Tandon v. Newsom*, 992 F.3d 916, 919 (9th Cir. 2021).[1] "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam)). A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) likely irreparable harm in the absence of a preliminary injunction; (3) that the

---

[1] In their memorandum, Plaintiffs cite *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) for the standard to be applied to their motion. *See* Dkt. 64-1 at 3. However, the *Lair* case sets forth the standard for a *stay* pending appeal, under FRCP 62(b). *See Lair*, 697 F.3d at 1203. Plaintiffs have not requested a stay, but filed a motion for an injunction pending appeal under FRCP 62(d). *See* Dkt. 64. While the standards may be similar, there are nuances that make it important for the Court to apply the proper standard. As set forth above, the standard for an injunction pending appeal is the same test for a preliminary injunction. *See Tandon*, 992 F.3d at 919.

balance of equities weighs in favor of an injunction; and (4) that an injunction is in the public interest. *Id.* Where, as here, "the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)

## ARGUMENT

Plaintiffs have appealed this Court's decision denying their request for a preliminary injunction prohibiting the State from enforcing S.B. 1100,[2] and have asked this Court for an injunction pending appeal. Plaintiffs have failed to present any reason why this Court should grant what it previously denied a little over one week ago.

### I. Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims

The Court thoroughly and thoughtfully addressed the very same questions Plaintiffs raise here, and it found that Plaintiffs were not entitled to a preliminary injunction. *See* Dkt. 60 at 34–36. The Court found that Plaintiffs are unlikely to succeed on the merits of their claim "because 1) S.B. 1100 is based upon sex, not gender identity, and 2) privacy and safety are important government interests and

---

[2] Senate Bill 1100 added a new chapter to title 33 of the Idaho Code, chapter 66. *See* 2023 Idaho Session Laws ch. 120. However, there was another bill that passed which also added chapter 66 to title 33. The compiler of the Idaho Code therefore redesignated the new chapter from S.B. 1100 as chapter 67 of title 33, Idaho Code. *See* Compiler Notes to chapter 67, title 33, Idaho Code Annotated. Thus, when referring to the specific code section, this brief will refer to chapter 67 of title 33.

separating these types of facilities on the basis of sex is substantially related to the achievement of those objectives." *Id.* at 35. The Eleventh Circuit has also addressed the same claims, and it held, sitting en banc, that "separating school bathrooms based on biological sex passes constitutional muster and comports with Title IX." *Adams*, 57 F.4th at 796. Likewise, a recent Sixth Circuit decision addressed related and relevant issues, holding that Kentucky and Tennessee laws limiting certain sex-transition treatments for minors experiencing gender dysphoria did not violate the Equal Protection Clause. *L.W. by and through Williams v. Skrmetti*, ___ F.4th___, Nos. 23-5600, 23-5609, 2023 WL 6321688, at *12–20 (6th Cir. Sept. 28, 2023). The court stated that "[c]onstitutionalizing new areas of American life is not something federal courts should do lightly, particularly when 'the States are currently engaged in serious, thoughtful' debates about the issue." *Id.* at *6 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). All of these decisions confirm that Plaintiffs are unlikely to succeed on the merits of any of their three claims. *See* Dkt. 60 at 34–36. The Court should deny their motion.

### A. Plaintiffs are unlikely to succeed on the merits of their Equal Protection Claim, because the statute survives intermediate scrutiny.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In analyzing a case under the Equal Protection Clause, the Court must "determine what level of scrutiny applies to a classification

under a law or policy, and then decide whether the policy at issue survives that level of scrutiny." *Hecox v. Little*, 79 F.4th 1009, 1021 (9th Cir. 2023). While the parties disagree on the reasons why, there is no dispute that the statute is subject to intermediate scrutiny. Dkt. 64-1 at 4.

The Court properly found that intermediate scrutiny applies because SB 1100 differentiates on the basis of sex, not transgender status, Dkt. 60 at 11, and properly recognized that "[u]nder intermediate scrutiny, 'a party seeking to uphold government action based on sex must establish an exceedingly persuasive justification for the classification.'" *Id.* at 13 (quoting *United States v. Virginia*, 518 U.S. 515, 524 (1996) (cleaned up)). Put another way, this burden can be met by showing that the "classification serves important governmental objectives," and that the "means employed are substantially related to the achievement of those objectives." *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982) (citation omitted).

In passing S.B. 1100, the legislature made a series of findings to support the law. *See* Idaho Code § 33-6701. Among other things, the legislature determined that "[e]very person has a natural right to privacy and safety in restrooms and changing facilities where such person might be in a partial or full state of undress in the presence of others." Idaho Code § 33-6701(2). The Ninth Circuit agrees. In *Michenfelder v. Sumner*, the Ninth Circuit held that there is a right to bodily privacy and stated that "[s]hielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and

personal dignity." 860 F.2d 328, 333 (9th Cir. 1988) (cleaned up); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't,* 629 F.3d 1135, 1141 (9th Cir. 2011) ("reiterating [the Court's] longstanding recognition that the desire to shield one's unclothed figure from the view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity") (cleaned up).

The legislature determined that when students share restrooms or changing facilities with members of the opposite biological sex it can "generate[] potential embarrassment, shame and psychological injury to students." Idaho Code § 33-6701(4). The Ninth Circuit agrees. In *Parents for Privacy*, this Court stated that "adolescence and the bodily and mental changes it brings can be difficult for students, making bodily exposure to other students in locker rooms a potential source of anxiety." 949 F.3d at 1217.

The legislature determined that "[t]here are real and inherent physical differences between men and women." Idaho Code § 33-6701(1). The U.S. Supreme Court agrees. In *United States v. Virginia*, the Court stated that "[p]hysical differences between men and women … are enduring." 518 U.S. at 533.

While much more could be said on this issue, and much more has been said, *see generally, e.g., Adams*, 57 F.4th at 800–808,[3] it is sufficient that based on the cited

---

[3] As this Court recognized, courts in the Fourth Circuit and Seventh Circuit have overturned similar policies, while the Eleventh Circuit, sitting en banc, upheld a similar policy. *See Adams*, 57 F.4th 791; *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020); Dkt. 60 at 13–14. The Eleventh Circuit en banc decision in

legislative findings, and the U.S. Supreme Court and Ninth Circuit caselaw mirroring the legislature's findings, the purpose of the law—protecting the privacy and safety of students—is an important governmental objective. This Court previously found that "[p]rivacy is a legitimate interest supporting the constitutionality of S.B. 1100," Dkt. 60 at 15, and that finding should control here.

The next issue under the Equal Protection analysis is whether the "means employed are substantially related to the achievement of those objectives." *Miss. Univ. for Women*, 458 U.S. at 724 (citation omitted). In their Motion for an Injunction Pending Appeal, Plaintiffs argue that the "Defendants could not show how" the law as it existed prior to S.B. 1100 "has caused any of [Defendants'] claimed harms." Dkt. 64-1 at 6. However, that is not the standard under an Equal Protection analysis. The standard is not whether the previous law, or lack of a law, caused any harms, but whether the "means employed are substantially related to the achievement" of the

---

*Adams* is the better reasoned opinion and, while the Ninth Circuit has not directly addressed the issue, *Adams* is consistent with Supreme Court and this Court's precedents. The *A.C.* case is distinguishable in that it recognized that the important privacy interests asserted by the State in the instant case attached to situations in which students might be forced to disrobe in front of members of the opposite sex by *excluding* from the preliminary injunctions in favor of the transgender students situations in which students might be forced to disrobe in front of each other. *See A.C.*, 75 F.4th at 772. Similarly, the *Grimm* case was an as-applied challenge specifically relating to situations in which no one would be in a situation in which they might be forced to disrobe in front of any other student. *See Grimm*, 972 F.3d at 613-14 ("But the Board ignores the reality of how a transgender child uses the bathroom: by entering a stall and closing the door.") (internal quotations omitted). In the instant case, the Plaintiffs have mounted a facial challenge, *see* Dkt. 1 at ¶103, to the law, including the sections in which "a person may be in a state of undress in the presence of others." Idaho Code § 33-6703(3).

government's important objectives. *Miss. Univ. for Women*, 458 U.S. at 724. As discussed above, the government's objectives in this case—protecting the privacy and safety of students—are legitimate, important government interests. Thus, the question is not whether there was harm under the previous state of law, but whether the laws' means are substantially related to the government's objectives.

In this case, the objective of protecting the privacy and safety of students includes the objective of preventing students from being in a situation in which they may have to expose their "unclothed figure[s]" to strangers of the opposite sex. *Michenfelder*, 860 F.2d at 333. As the Court found, "Restrooms, changing facilities, and overnight accommodations are, without question, spaces in school (and out of school as the case may be) where bodily exposure is most likely to occur. That S.B. 1100 restricts access to who will interact in those circumstances based upon sex furthers the goal of privacy." Dkt. 60 at 17.

Plaintiffs' reliance on *Parents for Privacy* misses the point. In the instant case, the question is not whether students have a "privacy right to avoid all risk of intimate exposure to or by a transgender person who was assigned the opposite biological sex at birth." *Parents for Privacy*, 949 F.3d at 1217. Rather, the question is whether the legislature has an important interest in protecting the privacy right of students—it does, as discussed above—and whether the means employed by S.B. 1100 are substantially related to the government's interest—they are. The Court stated that "it appears gender-inclusive policies are constitutional *and* sex-separate policies are constitutional. That is to say, *Parents for Privacy's* holding that the Constitution does

not *require* sex-separate facilities is not the same as a holding that the Constitution *forbids* sex-separate facilities." Dkt. 60 at 17 (emphasis in original).

In situations in which there are two separate policy choices, and both policy choices are constitutional, the decision as to which policy is best for the State of Idaho lies with the people through their duly elected representatives, and not the judiciary. *See Parents for Privacy*, 949 F.3d at 1217 (noting that "it is not [the Court's] role to pass judgment on the school district's policy or on how the school district can best fulfill its duty as a public educational institution"). That Plaintiffs disagree with the policy is not sufficient to find it unconstitutional. Rather, as the Idaho Supreme Court has held, "[i]f the people of Idaho are dissatisfied with the policy choices the legislature has made … they can make these choices for themselves through the ballot box." *Planned Parenthood Great Nw.*, 522 P.3d at 1195.

### B. Plaintiffs are unlikely to succeed on the merits of their Title IX claim, because Title IX specifically allows for sex-segregated restrooms, living accommodations, and locker rooms.

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…." 20 U.S.C. § 1681(a). Title IX does not "prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes." Further, under Title IX, a "recipient may provide separate

toilet, locker room, and shower facilities on the basis of sex….” 34 C.F.R. § 106.33.

S.B. 1100 does exactly what Title IX says educational facilities can do—provide separate toilet, locker room, shower facilities, and living facilities for “the different sexes.” Thus, under the plain language of Title IX, the “unremarkable—and nearly universal—practice of separating school bathrooms based on biological sex,” *Adams*, 57 F.4th at 796, is perfectly acceptable. Indeed, the Ninth Circuit has held that “Title IX authorizes sex-segregated facilities.” *Parents for Privacy*, 949 F.3d at 1227. Therefore, Plaintiffs' Title IX claim fails.

Plaintiffs acknowledge that the Ninth Circuit has not determined whether barring transgender students from restrooms of the opposite sex also violates Title IX. But in an attempt to get around the plain language of Title IX and its implementing regulations, Plaintiffs make a convoluted argument that because discrimination based on transgender status is a form of sex discrimination, Title IX's use of the word "sex" cannot be read as "'biological sex'" in the Ninth Circuit. They argue that, as a result, S.B. 1100's requirement that schools maintain separate restrooms for the different sexes violates the Title IX provisions that allow schools to maintain separate restrooms for the different sexes. Dkt. 64-1 at 12–14. But, even if discrimination based on transgender status is a form of sex discrimination, it does not automatically follow that distinctions drawn on the basis of biological sex are tantamount to discrimination against transgender persons. Plaintiffs' argument ignores the meaning of the term "sex" as it was understood at the time Title IX was passed.

Plaintiffs' argument would have been considered nonsensical at the time Title IX was enacted in 1972. Not only did the "overwhelming majority of dictionaries" of the time define "'sex' on the basis of biology and reproductive function," but if Title IX's definition of "'sex' were ambiguous enough to include 'gender identity,' … then this carve out" for sex segregated restrooms and living facilities "would be rendered meaningless." *Adams*, 57 F.4th at 813.

Finally on this point, Title IX was enacted pursuant to Congress's authority under the U.S. Constitution's Spending Clause of Article I, § 8, clause 1. *Adams*, 57 F.4th at 815. As the Ninth Circuit has stated, "if Congress desires to condition the States' receipt of federal funds, it must do so unambiguously." *Arizona v. Yellen*, 34 F.4th 841, 852 (9th Cir. 2022) (quoting *South Dakota v. Dole*, 483 U.S. 203, 207 (1987)). Only then would it enable "the States to exercise their choice knowingly, cognizant of the consequences of their participation." *Id.* "A safeguard of our federalist system is the demand that Congress provide the States with a clear statement when imposing a condition on federal funding." *Adams*, 57 F.4th at 815.

Given Title IX's plain language allowing schools to do what the State of Idaho has chosen to do in this situation, Title IX does not clearly prohibit what the State of Idaho has done. Rather, it does the opposite—it clearly *allows* the State of Idaho to do what it has done. Thus, Plaintiffs are not likely to succeed on their Title IX claim.

### C. Plaintiffs are unlikely to succeed on the merits of their Privacy claim because the law does not require anyone to disclose personal information.

Plaintiffs claim that "S.B. 1100 exposes their transgender status to others in violation of their constitutional right to privacy," Dkt. 64-1 at 14, and that the "involuntary disclosure of a person's transgender status violates that person's fundamental right to privacy." Dkt. 1 at ¶ 127. For Plaintiffs to succeed, they must show "that the contours of the privacy right protected by the Fourteenth Amendment are so broad as to protect against" the implementation of S.B. 1100. *Parents for Privacy*, 949 F.3d at 1225. While there is a "constitutionally protected interest in avoiding disclosure of personal matters," "the right to informational privacy is not absolute." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (internal quotations omitted), *abrogated as to the right to abortion by Dobbs v. Jackson Women's Health Org.*, 597 U.S. \_\_\_, 142 S. Ct. 2228 (2022). Rather, the right to informational privacy "is a conditional right which may be infringed upon a showing of proper governmental interest." *Tucson Woman's Clinic,* 379 F.3d at 551. (cleaned up).

Despite the existence of a right to informational privacy, Plaintiffs have failed to show that the right to informational privacy even applies in the current situation. They claim a right against the involuntary disclosure to other students of certain personal matters while using a multi-occupancy restroom or changing facility in a public school. The cases cited by Plaintiffs do not support their claim. *Doe v. Cnty. of San Diego*, 576 F. Supp. 3d 721, 733 (S.D. Cal. 2021) dealt with "[i]nformation

provided to, and collected by law enforcement regarding the personal details of a minor victim of a sexual assault." *Tucson Woman's Clinic*, 379 F.3d at 551, found a privacy right in medical records in the context of a warrantless search by the government. *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998), involved a governmental entity "perform[ing] unauthorized tests—that is, the non-consensual retrieval of previously unrevealed medical information that may be unknown even to plaintiffs." The court there also found that "[t]hese tests may also be viewed as searches in violation of Fourth Amendment rights that require Fourth Amendment scrutiny." These cases do not support a right to informational privacy to that which might be disclosed during one's voluntary use of a multi-occupancy bathroom, locker room, or sleeping facility.

Further, even if Plaintiffs have the claimed right, there is nothing in S.B. 1100 that exposes a student's private information to any other student. This is because schools must offer students, *for any reason*, an accommodation if they are "unwilling or unable to use a multi-occupancy restroom or changing facility designated for the person's sex." Idaho Code § 33-6705. For Plaintiffs' claim to succeed, they must show that SB 1100 requires them to disclose personal information protected by the right to privacy. However, students can choose whether to use the multi-occupancy facilities that match their biological sex, or instead use a separate, single-occupancy facility to protect any private information.

Plaintiffs' privacy claim fails.

## II. Plaintiffs have failed to show a likelihood of irreparable harm.

To obtain an injunction Plaintiffs "must establish that irreparable harm is *likely*, not just possible." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21–23 (2008)) (emphasis in original). However, this Court found after the hearing that Plaintiffs failed to "identify any *specific* instances of harm befalling … students in Idaho." Dkt. 60 at 32 (emphasis in original). The Court stated that "it cannot base its decision on what some students may subjectively feel or the speculation of future harm." *Id.* In short, Plaintiffs did not present "any conclusive evidence about *Idaho* and any specific harm students … have, or will, suffer." *Id.* at 33 (emphasis in original). Thus, Plaintiffs failed to meet their burden of showing that irreparable harm is likely.

Plaintiffs simply ask the Court to re-weigh the evidence that the Court previously considered at the hearing on Plaintiffs' Motion for Preliminary Injunction. Dkt. 64-1 at 15–17. Plaintiffs also wrongly state that their evidence was unrebutted, citing to Plaintiffs' expert witness report, *see id.* at 16. But, in fact, Defendants presented an expert witness report and provided extensive argument and evidence showing Plaintiffs' expert testimony was not credible, along with evidence showing possible harm to children caused by treatments recommended by Plaintiffs' expert. *See* Transcript of Sept. 13, 2023 Hearing at 37–38, 40–49; Dkt. 47-8 at 46–47; Appendix 2; *see generally* Dkt. 47-8. Plaintiffs further fail to acknowledge that this Court already gave what it deemed the appropriate weight to the evidence from both experts and ultimately held that "neither side has any conclusive evidence about

*Idaho* and any specific harm students … have, or will, suffer." Dkt. 60 at 33.

The Court reasonably determined on the evidence before it that Plaintiffs had failed to establish a likelihood of harm. There is no reason for the Court to disturb that finding less than two weeks after its decision.

### III. Plaintiffs failed to establish that the balance of equities and public interest support an injunction.

The last two factors the Court weighs in determining whether to issue a preliminary injunction are whether the balance of equities weighs in favor of an injunction and whether an injunction is in the public interest. Plaintiffs do not separately address these factors in their motion, raising them only in passing in relation to the other factors. *See* Dkt. 64-1 at 15–17 (addressing harm, but not addressing the balance of equities and public interest). In fact, the words "public interest" appear only one time in the motion, and that is in the standard of review. *See id.* at 3. Plaintiffs offer no argument or authority for why an injunction would be in the public interest. *See id.* at 15–17. Nor do Plaintiffs offer any meaningful argument regarding the balance of equities. *See id.* at 9. Plaintiffs have therefore failed to meet their burden of proving that those elements have been met.

As made clear by the Ninth Circuit, Plaintiffs must meet all four elements of the test for a preliminary injunction. *See All. for the Wild Rockies*, 632 F.3d at 1135 (stating that the U.S. Supreme Court requires a plaintiff seeking a preliminary injunction "to make a showing on all four prongs" of the test). Plaintiffs have not, and

their motion should also be denied on that basis. *E.g., United States v. Fujinaga*, Nos. 19-10222, 21-10155, 2022 WL 671018, at *1 (9th Cir. Mar. 7, 2022) (memorandum disposition) (failure to argue elements of preliminary injunction is a failure to meet burden of persuasion) (citation omitted).

Even if this Court examines the remaining merged factors, the Court properly held, "There is no doubt the public has an interest in this issue. And the interest is significant on both sides." Dkt. 60 at 34. Further, the "States, too, have an interest in seeing their constitutionally reserved police power … defended from federal overreach." *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). "The public interest is also served by maintaining our constitutional structure." *Id.* In this case, the State of Idaho has an interest in seeing its laws enacted pursuant to its police power enforced, and in seeing that its constitutional authority over the public school system in Idaho is maintained.

Plaintiffs have not met their burden on these remaining two factors.

## CONCLUSION

The Court should deny the Plaintiffs' Motion for an Injunction Pending Appeal.

DATED: October 22, 2023

        STATE OF IDAHO
        OFFICE OF THE ATTORNEY GENERAL

By:  /s/ *James E. M. Craig*
     JAMES E. M. CRAIG
     Acting Division Chief,
     Civil Litigation and
     Constitutional Defense

     *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 22, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Samuel L. Linnet
sam@alturaslawgroup.com

Christina S. Paek
cpaek@lambdalegal.org

Kell L. Olson
kolson@labdalegal.org

Peter C. Renn
prenn@lambdalegal.org

Tara L. Borelli
tborelli@lamdalegal.org

Paul Martin
paul.martin@mto.com

*Counsel for Plaintiffs*

Avery P. Hitchcock
avery.hitchcock@mto.com

Jacob Max Rosen
max.rosen@mto.com

Jimmy Biblarz
jimmy.biblarz@mto.com

Katherine M. Forster
katherine.forster@mto.com

Nicholas Sidney
nick.sidney@mto.com

Robyn K. Bacon
Robyn.bacom@mto.com

*Counsel for Plaintiffs*

   /s/ *James E. M. Craig*
JAMES E. M. CRAIG
Acting Division Chief,
Civil Litigation and
Constitutional Defense