No. 23-2807

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

REBECCA ROE, by and through her parents and next friends, Rachel and
Ryan Roe, et al.,

*Plaintiffs-Appellants*,

*v.*

DEBBIE CRITCHFIELD, in her official capacity as Idaho State
Superintendent of Public Instructions, et al.,

*Defendants-Appellees,*

On Appeal from the United States District Court
for the District of Idaho
No. 1:23-cv-00315-DCN

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION
## FOR INJUNCTION PENDING APPEAL

RAÚL R. LABRADOR
 *Attorney General*

JOSHUA N. TURNER
 *Acting Solicitor General*

Idaho Office of the Attorney General
700 W. Jefferson St., Suite 210
Boise, ID 83720
(208) 334-2400

JAMES E. M. CRAIG
 *Acting Division Chief, Civil Litigation
 and Constitutional Defense*

JAMES E. "JIM" RICE
 *Deputy Attorney General*

BRIAN V. CHURCH
 *Deputy Attorney General*

james.craig@ag.idaho.gov
jim.rice@ag.idaho.gov
brian.church@ag.idaho.gov

*Attorneys for Defendants-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ...................................................................................... 1

STANDARD ........................................................................................... 2

ARGUMENT .......................................................................................... 3

    I.  Appellants Are Unlikely to Succeed on the Merits of Their Claims ............ 5

        A. Appellants are unlikely to succeed on the merits of their Equal
            Protection Claim because the statute survives intermediate scrutiny ..... 6

        B. Appellants are unlikely to succeed on the merits of their Title IX claim
            because Title IX specifically allows for sex segregated restrooms, living
            accommodations, and locker rooms ......................................................... 10

        C. Appellants are unlikely to succeed on the merits of their Privacy Claim
            because the law does not require anyone to disclose any personal infor-
            mation. ............................................................................................... 12

    II.  Appellants have failed to show a likelihood of irreparable harm .............. 14

    III. Appellants failed to establish that the balance of equities and public interest
          support an injunction ................................................................................. 16

CONCLUSION ........................................................................................ 18

TABLE OF AUTHORITIES

CASES

*A.C. by M.C. v. Metro. Sch. District of Martinsville,*
75 F.4th 760 (7th Cir. 2023) .......................................................................... 8

*Adams ex. rel. Kasper v. Sch. Board of St. Johns County,*
57 F.4th 791 (11th Cir. 2022) ................................................... *passim*

*Alliance for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ............................................... 15, 17

*Arizona v. Yellen,*
34 F.4th 841 (9th Cir 2022) .................................................... 12

*Byrd v. Maricopa County Sheriff's Department,*
629 F.3d 1135 (9th Cir. 2011) .............................................. 7

*BST Holdings, LLC v. OSHA,* 17,
618 F.4th 604 (5th Cir. 2021) ............................................... 17

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. ____, 142 S.Ct. 2228 (2022) ............................... 13

*Doe v. County of San Diego,*
576 F. Supp. 3d 721 (S.D. Cal. 2021) ............................... 13

*Drakes Bay Oyster Co. v. Jewell,*
747 F.3d 1073 (9th Cir. 2014) ............................................. 3

*Greenwood v. FAA,*
28 F.3d 971 (9th Cir. 1994) ................................................... 16

*Grimm v. Gloucester County School Board,*
972 F.3d 586 (4th Cir. 2020) ................................................ 8

*Hecox v. Little,*
79 F.4th 1009 (9th Cir 2023) ............................................... 6

*Lopez v. Brewer*,
   680 F.3d 1068 (9th Cir. 2012) ........................................................ 2

*L.W. by and through Williams v. Skrmetti*,
   ___ F. 4th___, Nos. 23-5600, 23-5609, 2023 WL 6321688, at *12-20 (6th Cir. Sept. 28, 2023) ...................................................................................... 5

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ...................................................................... 2

*Michenfelder v. Sumner*,
   860 F.2d 328 (9th Cir 1988) ..................................................... 7, 9

*Mississippi University for Women v. Hogan*,
   458 U.S. 718 (1982) ................................................................ 6, 8, 9

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
   135 F.3d 1260 (9th Cir. 1998) ...................................................... 14

*Orr v. Plumb*,
   884 F.3d 923 (9th Cir. 2022) ...................................................... 16

*Parents for Privacy v. Barr*,
   949 F.3d 1210 (9th Cir. 2020) ............................................... *passim*

*Planned Parenthood Great Northwest v. State*,
   522 P.3d 1132 (Idaho 2023) .................................................... 3, 10

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) ..................................................................... 3, 16

*South Dakota v. Dole*,
   483 U.S. 203 (1987) ..................................................................... 12

*Tandon v. Newsom*,
   992 F.3d 916 (9th Cir. 2021) ......................................................... 2

*Tucson Woman's Clinic v. Eden*,
   379 F.3d 531 (9th Cir. 2004) .................................................. 13, 14

*United States v. Fujinaga,*
   Nos. 19-10222, 21-10155, 2022 WL 671018 at *1 (9th Cir. Mar. 7, 2022) ............. 17

*United States v. Virginia,*
   518 U.S. 515 (1996) ........................................................................ 6, 8

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ........................................................................... 5

*Winter v. National Res. Def. Council,*
   555 U.S. 7 (2008) ............................................................................ 15

STATUTES

20 U.S.C. § 1681 ............................................................................... 10

34 C.F.R. § 106.33 ............................................................................ 11

Idaho Code § 33-6701 .................................................................... *passim*

Idaho Code § 33-6702 ......................................................................... 4

Idaho Code § 33-6703 ......................................................................... 4

Idaho Code § 33-6705 ..................................................................... 4, 14

OTHER AUTHORITIES

Idaho Constitution Article IX, §1 ........................................................... 3

U.S. Constitution Article I, § 8, clause 1 ................................................ 12

U.S. Constitution Amendment XIV, § 1 ...................................................... 6

## INTRODUCTION

Appellants believe that the State of Idaho is disallowed from separating school bathrooms, changing facilities, and overnight accommodations based on biological sex—even when those facilities are used by children. They contend that the Equal Protection Clause, Title IX, and some constitutional privacy right require States to allow any person of any sex to have access to the facility of his or her choice. But none of those federal grounds contain that novel requirement. The U.S. Constitution and bedrock principles of federalism leave States empowered to legislate on matters of health, safety, and welfare, which is precisely what Idaho has done here. The State of Idaho acted within its traditional police powers and determined, as a matter of State policy, that K-12 public school restrooms and changing facilities will be separated based on sex. That policy determination is neither radical nor unlawful: it is consistent with "the unremarkable—and nearly universal—practice of separating school bathrooms based on biological sex." *Adams ex. rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 796 (11th Cir. 2022) (en banc).

After failing to secure their requested relief from the district court, Appellants now want this Court to dictate a single national policy that local governments cannot separate intimate school facilities based on sex.  But that is not the role of this Court— it is both a matter for the legislative branch and a matter for State, not federal, government.  That is why this Court has previously declined to "pass judgment on [a] school

district's policy or on how [a] school district can best fulfill its duty as a public educational institution." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1217 (9th Cir. 2020).

The district court correctly denied Appellants' motion for a preliminary injunction. The law at issue, Idaho Code § 33-6701, *et seq.*, draws a distinction based on sex, and that distinction furthers an important and legitimate State interest. The law does not discriminate against transgender students. It easily passes Equal Protection scrutiny. Similarly, it does not violate Title IX since Title IX expressly allows schools to maintain sex segregated restrooms, locker rooms, and changing facilities. And there is no privacy violation because the law does not require students to disclose any personal information. Accordingly, this Court should follow the district court's decision, and deny Appellants' Emergency Motion for Injunction Pending Appeal.

## STANDARD

"In determining whether to grant an injunction pending appeal, [the Court] appl[ies] the test for preliminary injunctions." *Tandon v. Newsom*, 992 F.3d 916, 919 (9th Cir. 2021). "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam)). A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) likely irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities weighs in favor

of an injunction; and (4) that an injunction is in the public interest. *Id.* Where, as here,

"the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*,

747 F.3d 1073, 1092 (9th Cir. 2014)

In deciding whether to issue an injunction pending appeal the appellate court

must "give deference to the discretion of the District Court." *Purcell v. Gonzalez*, 549

U.S. 1, 5 (2006) (per curiam).

## ARGUMENT

In the 2023 Legislative Session, the Idaho Legislature passed Senate Bill 1100

(S.B. 1100). *See* 2023 Idaho Session Laws ch. 120.[1] Acting pursuant to its police power,

*see Planned Parenthood Great Nw. v. State*, 522 P.3d 1132, 1195 (2023), and its constitutional

"duty … to establish and maintain a general, uniform and thorough system of public

… schools," Art. IX, § 1, Idaho Constitution, the legislature determined that establish-

ing a "statewide policy ensuring separate school restrooms and changing facilities on

the basis of biological sex is substantially related to the important government interest

in protecting the privacy and safety of all students." Idaho Code § 33-6701(7). Based

---

[1] Senate Bill 1100 added a new chapter to title 33 of the Idaho Code, chapter 66. *See* 2023 Idaho Session Laws ch. 120. However, there was another bill that passed which also added chapter 66 to title 33. The compiler of the Idaho Code therefore redesignated the new chapter from S.B. 1100 as chapter 67 of title 33, Idaho Code. *See* Compiler Notes to chapter 67, title 33, Idaho Code Annotated. Thus, when referring to the specific code section, this brief will refer to chapter 67 of title 33.

in part upon that finding, and the other legislative findings in the statute, *see* Idaho Code § 33-6701, the legislature passed a statewide policy applicable to all K-12 public schools stating that "[e]very public school restroom or changing facility accessible by multiple persons at the same time must be: (a) Designated for use by male persons only or female persons only; and (b) Used only by members of that sex." Idaho Code § 33-6703(1). The statute also defines "sex" to mean "the immutable biological and physiological characteristics, specifically the chromosomes and internal and external reproductive anatomy, genetically determined at conception and generally recognizable at birth, that define an individual as male or female." § 33-6702(3).

Finally, in recognition of the fact that "adolescence and the bodily and mental changes it brings can be difficult for students, making bodily exposure to other students in locker rooms a potential source of anxiety," *Parents for Privacy*, 949 F.3d at 1217, the legislature required all public schools to provide a reasonable accommodation to a student who, for "*any reason*, is unwilling or unable to use a multi-occupancy restroom or changing facility designated for the person's sex. Idaho Code § 33-6705(1)(a) (emphasis added).

Appellants filed suit challenging the law and asked the district court for a preliminary injunction. The district court denied Appellants' Motion for a Preliminary Injunction, and have asked this Court for that which the district court denied.

## I.   Appellants Are Unlikely to Succeed on the Merits of Their Claims

The district court thoroughly and thoughtfully addressed the very same questions

Appellants raise here, and it found that Appellants were not entitled to a preliminary injunction.  *See* D.Ct. Dkt. 60 at 34–36.  The district court found that Appellants are unlikely to succeed on the merits of their claim "because 1) S.B. 1100 is based upon sex, not gender identity, and 2) privacy and safety are important government interests and separating these types of facilities on the basis of sex is substantially related to the achievement of those objectives."  *Id.* at 35. The Eleventh Circuit has also addressed the same claims, and it held, sitting en banc, that "separating school bathrooms based on biological sex passes constitutional muster and comports with Title IX."  *Adams*, 57 F.4th at 796.  Likewise, a recent Sixth Circuit decision addressed related and relevant issues, holding that Kentucky and Tennessee laws limiting certain sex-transition treatments for minors experiencing gender dysphoria did not violate the Equal Protection Clause. *L.W. by and through Williams v. Skrmetti*, ___ F.4th___, Nos. 23-5600, 23-5609, 2023 WL 6321688, at *12–20 (6th Cir. Sept. 28, 2023).  The court stated that "[c]onstitutionalizing new areas of American life is not something federal courts should do lightly, particularly when 'the States are currently engaged in serious, thoughtful' debates about the issue."  *Id.* at *6 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). All of these decisions confirm that Appellants are unlikely to succeed on the merits of any of their three claims.  *See* D.Ct. Dkt. 60 at 34-36.  This Court should deny their motion.

## A. Appellants are unlikely to succeed on the merits of their Equal Protection Claim because the statute survives intermediate scrutiny.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In analyzing a case under the Equal Protection Clause, the Court must "determine what level of scrutiny applies to a classification under a law or policy, and then decide whether the policy at issue survives that level of scrutiny." *Hecox v. Little*, 79 F.4th 1009, 1021 (9th Cir. 2023). While the parties disagree on the reasons why, there is no dispute that the statute is subject to intermediate scrutiny. Dkt. 4.1 at 10.

The District Court properly found that intermediate scrutiny applies because SB 1100 differentiates on the basis of sex, not transgender status, D.Ct. Dkt. 60 at 11, and properly recognized that "[u]nder intermediate scrutiny, 'a party seeking to uphold government action based on sex must establish an exceedingly persuasive justification for the classification.'" *Id.* at 13 (quoting *United States v. Virginia*, 518 U.S. 515, 524 (1996) (cleaned up)). Put another way, this burden can be met by showing that the "classification serves important governmental objectives," and that the "means employed are substantially related to the achievement of those objectives." *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982) (citation omitted).

In passing S.B. 1100, the legislature made a series of findings to support the law. *See* Idaho Code § 33-6701. Among other things, the legislature determined that "[e]very

person has a natural right to privacy and safety in restrooms and changing facilities where such person might be in a partial or full state of undress in the presence of others." Idaho Code § 33-6701(2). This Court agrees. In *Michenfelder v. Sumner*, this Court held that there is a right to bodily privacy and stated that "[s]hielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and personal dignity." 860 F.2d 328, 333 (9th Cir. 1988) (cleaned up); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't,* 629 F.3d 1135, 1141 (9th Cir. 2011) ("reiterating [the Court's] longstanding recognition that the desire to shield one's unclothed figure from the view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity") (cleaned up).

The legislature determined that when students share restrooms or changing facilities with members of the opposite biological sex it can "generate[] potential embarrassment, shame and psychological injury to students." Idaho Code § 33-6701(4). This Court agrees. In *Parents for Privacy*, this Court stated that "adolescence and the bodily and mental changes it brings can be difficult for students, making bodily exposure to other students in locker rooms a potential source of anxiety." 949 F.3d at 1217.

The legislature determined that "[t]here are real and inherent physical differences between men and women." Idaho Code § 33-6701(1). The U.S. Supreme Court agrees. In *United States v. Virginia*, the Court stated that "[p]hysical differences between men and women … are enduring." 518 U.S. at 533.

While much more could be said on this issue, and much more has been said, *see*

*generally, e.g., Adams*, 57 F.4th at 800–808,[2] it is sufficient that based on the cited legisla-tive findings, and the U.S. Supreme Court and Ninth Circuit caselaw mirroring the leg-islature's findings, the purpose of the law—protecting the privacy and safety of stu-dents—is an important governmental objective.  The District Court properly found that "[p]rivacy is a legitimate interest supporting the constitutionality of S.B. 1100," D.Ct. Dkt. 60 at 15, and this Court should similarly find.

The next issue under the Equal Protection analysis is whether the "means em-ployed are substantially related to the achievement of those objectives." *Miss. Univ. for Women*, 458 U.S. at 724 (citation omitted).  In their Emergency Motion for an Injunc-tion, Appellants argue that the "Defendants could not show how" the law as it existed prior to S.B. 1100 "has caused any harms."  Dkt. 4.1 at 12.  However, that is not the standard under an Equal Protection analysis.  The standard is not whether the previous law, or lack of a law, caused any harms, but whether the "means employed are substan-tially related to the achievement" of the government's important objectives.  *Miss. Univ. for Women*, 458 U.S. at 724. As discussed above, the government's objectives in this case—protecting the privacy and safety of students—are legitimate, important

---

[2] As the district court recognized, courts in the Fourth Circuit and Seventh Circuit have overturned similar policies, while the Eleventh Circuit, sitting en banc, upheld a similar policy.  *See Adams*, 57 F.4th 791; *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020); D.Ct. Dkt. 60 at 13-14.  The Eleventh Circuit en banc decision in *Adams* is the better reasoned opinion and, while this Court has not directly addressed the issue, *Ad-ams* is consistent with Supreme Court and this Court's precedents.

government interests.  Thus, the question is not whether there was harm under the previous state of law, but whether the laws' means are substantially related to the government's objectives.

In this case, the objective of protecting the privacy and safety of students includes the objective of preventing students from being in a situation in which they may have to expose their "unclothed figure[s]" to strangers of the opposite sex.  *Michenfelder*, 860 F.2d at 333.  As the District Court found, "Restrooms, changing facilities, and overnight accommodations are, without question, spaces in school (and out of school as the case may be) where bodily exposure is most likely to occur.  That S.B. 1100 restricts access to who will interact in those circumstances based upon sex furthers the goal of privacy."  D.Ct. Dkt. 60 at 17.

Appellants' reliance on *Parents for Privacy* misses the point.  In the instant case, the question is not whether students have a "privacy right to avoid all risk of intimate exposure to or by a transgender person who was assigned the opposite biological sex at birth."  *Parents for Privacy*, 949 F.3d at 1217.  Rather, the question is whether the legislature has an important interest in protecting the privacy right of students—it does, as discussed above—and whether the means employed by S.B. 1100 are substantially related to the government's interest—they are.  The District Court stated that "it appears gender-inclusive policies are constitutional *and* sex-separate policies are constitutional.  That is to say, *Parents for Privacy's* holding that the Constitution does not *require* sex-separate facilities is not the same as a holding that the Constitution *forbids* sex-separate

facilities." D.Ct. Dkt. 60 at 17 (emphasis in original).

In situations in which there are two separate policy choices, and both policy choices are constitutional, the decision as to which policy is best for the State of Idaho lies with the people through their duly elected representatives, and not the judiciary. *See Parents for Privacy*, 949 F.3d at 1217 (noting that "it is not [the Court's] role to pass judgment on the school district's policy or on how the school district can best fulfill its duty as a public educational institution"). That Appellants disagree with the policy is not sufficient to find it unconstitutional. Rather, as the Idaho Supreme Court has held, "[i]f the people of Idaho are dissatisfied with the policy choices the legislature has made … they can make these choices for themselves through the ballot box." *Planned Parenthood Great Nw.*, 522 P.3d at 1195.

### B. Appellants are unlikely to succeed on the merits of their Title IX claim because Title IX specifically allows for sex-segregated restrooms, living accommodations, and locker rooms.

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…." 20 U.S.C. § 1681(a). Title IX does not "prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes." Further, under Title IX, a "recipient may provide separate toilet, locker room, and shower facilities on the basis of sex…." 34 C.F.R. § 106.33.

S.B. 1100 does exactly what Title IX says educational facilities can do—provide separate toilet, locker room, shower facilities, and living facilities for "the different sexes."  Thus, under the plain language of Title IX, the "unremarkable—and nearly universal—practice of separating school bathrooms based on biological sex," *Adams*, 57 F.4th at 796, is perfectly acceptable.  Indeed, this Court has held that "Title IX authorizes sex-segregated facilities." *Parents for Privacy*, 949 F.3d at 1227.  Therefore, Appellants' Title IX claim fails.

Appellants acknowledge that the Ninth Circuit has not determined whether barring transgender students from restrooms of the opposite sex also violates Title IX. But in an attempt to get around the plain language of Title IX and its implementing regulations, Appellants make a convoluted argument that because discrimination based on transgender status is a form of sex discrimination, Title IX's use of the word "sex" "cannot be read as '"biological sex"'" in the Ninth Circuit. They argue that, as a result, S.B. 1100's requirement that schools maintain separate restrooms for the different sexes violates the Title IX provisions that allow schools to maintain separate restrooms for the different sexes.  Dkt. 4.1 at 17-19. But, even if discrimination based on transgender status is a form of sex discrimination, it does not automatically follow that distinctions drawn on the basis of biological sex are tantamount to discrimination against transgender persons. Appellants' argument ignores the meaning of the term "sex" as it was understood at the time Title IX was passed.

Appellants' argument would have been considered nonsensical at the time Title

IX was enacted in 1972. Not only did the "overwhelming majority of dictionaries" of the time define "'sex' on the basis of biology and reproductive function," but if Title IX's definition of "'sex' were ambiguous enough to include 'gender identity,' … then this carve out" for sex segregated restrooms and living facilities "would be rendered meaningless." *Adams*, 57 F.4th at 813.

Finally on this point, Title IX was enacted pursuant to Congress's authority under the U.S. Constitution's Spending Clause of Article I, § 8, clause 1. *Adams*, 57 F.4th at 815. As this Court has stated, "if Congress desires to condition the States' receipt of federal funds, it must do so unambiguously." *Arizona v. Yellen*, 34 F.4th 841, 852 (9th Cir. 2022) (quoting *South Dakota v. Dole*, 483 U.S. 203, 207 (1987)). Only then would it enable "the States to exercise their choice knowingly, cognizant of the consequences of their participation." *Id.* "A safeguard of our federalist system is the demand that Congress provide the States with a clear statement when imposing a condition on federal funding." *Adams*, 57 F.4th at 815.

Given Title IX's plain language allowing schools to do what the State of Idaho has chosen to do in this situation, Title IX does not clearly prohibit what the State of Idaho has done. Rather, it does the opposite—it clearly *allows* the State of Idaho to do what it has done. Thus, Appellants are not likely to succeed on their Title IX claim.

### C. Appellants are unlikely to succeed on the merits of their Privacy claim because the law does not require anyone to disclose personal information.

Appellants claim that "S.B. 1100 exposes their transgender status to others in

violation of their constitutional right to privacy," Dkt. 4.1 at 19–20, and that the "in-
voluntary disclosure of a person's transgender status violates that person's fundamental
right to privacy." D.Ct. Dkt. 1 at ¶ 127. For Appellants to succeed, they must show
"that the contours of the privacy right protected by the Fourteenth Amendment are so
broad as to protect against" the implementation of S.B. 1100. *Parents for Privacy*, 949
F.3d at 1225. While there is a "constitutionally protected interest in avoiding disclosure
of personal matters," "the right to informational privacy is not absolute." *Tucson Wom-
an's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (internal quotations omitted), *abro-
gated as to the right to abortion by Dobbs v. Jackson Women's Health Org.*, 597 U.S. ___, 142 S.
Ct. 2228 (2022). Rather, the right to informational privacy "is a conditional right which
may be infringed upon a showing of proper governmental interest." *Id.* (cleaned up).

Despite the existence of a right to informational privacy, Appellants have failed
to show that the right to informational privacy even applies in the current situation.
They claim a right against the involuntary disclosure to other students of certain per-
sonal matters while using a multi-occupancy restroom or changing facility in a public
school. The cases cited by Appellants do not support their claim. *Doe v. Cnty. of San
Diego*, 576 F. Supp. 3d 721, 733 (S.D. Cal. 2021) dealt with "[i]nformation provided to,
and collected by law enforcement regarding the personal details of a minor victim of a
sexual assault." *Tucson Woman's Clinic*, 379 F.3d at 551, found a privacy right in medical
records in the context of a warrantless search by the government. *Norman-Bloodsaw v.
Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998), involved a governmental

entity "perform[ing] unauthorized tests—that is, the non-consensual retrieval of previously unrevealed medical information that may be unknown even to plaintiffs." The court there also found that "[t]hese tests may also be viewed as searches in violation of Fourth Amendment rights that require Fourth Amendment scrutiny." These cases do not support a right to informational privacy to that which might be disclosed during one's voluntary use of a multi-occupancy bathroom, locker room, or sleeping facility.

Further, even if Appellants have the claimed right, there is nothing in S.B. 1100 that exposes a student's private information to any other student.  This is because schools must offer students, *for any reason*, an accommodation if they are "unwilling or unable to use a multi-occupancy restroom or changing facility designated for the person's sex."  Idaho Code § 33-6705.  For Appellants' claim to succeed, they must show that SB 1100 requires them to disclose personal information protected by the right to privacy.  However, students can choose whether to use the multi-occupancy facilities that match their biological sex, or instead use a separate, single-occupancy facility to protect any private information.

Appellants' privacy claim fails.


## II.     Appellants have failed to show a likelihood of irreparable harm.

To obtain an injunction Appellants "must establish that irreparable harm is *likely*, not just possible." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21–23 (2008)) (emphasis in

original).  However, the District Court found after the hearing that Appellants failed to

"identify any *specific* instances of harm befalling … students in Idaho."  D.Ct. Dkt. 60 at

32 (emphasis in original).  The District Court stated that "it cannot base its decision on

what some students may subjectively feel or the speculation of future harm."  *Id.*  In

short, Appellants did not present "any conclusive evidence about *Idaho* and any specific

harm students … have, or will, suffer."  *Id.* at 33.  Thus, Appellants failed to meet their

burden of showing that irreparable harm is likely.

Appellants simply ask this Court to re-weigh the evidence that the District Court

considered at the hearing on Appellant's Motion for Preliminary Injunction.  Dkt. 4.1

at 21–23.  Appellants also wrongly state that their evidence was unrebutted, citing to

Appellants' expert witness report, *see id.* at 21–22.  But, in fact, Defendants presented

an expert witness report and provided extensive argument and evidence showing Ap-

pellants' expert testimony was not credible, along with evidence showing possible harm

to children caused by treatments recommended by Appellants' expert.  *See* Defendants'

Addendum at D.37-D.38, D.40-D.49, D. 113-D.114, D.182-D.183; *see generally* D.69-

D.187.  Appellants further fail to acknowledge that the district court already gave what

it deemed the appropriate weight to the evidence from both experts and ultimately held

that "neither side has any conclusive evidence about *Idaho* and any specific harm stu-

dents … have, or will, suffer."  D.Ct. Dkt. 60 at 33.

The District Court reasonably determined on the evidence before it that Appellants had failed to establish a likelihood of harm. This Court should give deference to that finding, *Purcell* 549 U.S. at 5, and should not find irreparable injury is likely.

### III.    Appellants failed to establish that the balance of equities and public interest support an injunction.

The last two factors the Court weighs in determining whether to issue a preliminary injunction are whether the balance of equities weighs in favor of an injunction and whether an injunction is in the public interest. Appellants do not separately address these factors in their motion, raising them only in passing in relation to the other factors, and for that reason their motion should be denied. *See, e.g., Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("The usual rule is that arguments … omitted from the opening brief are deemed forfeited."); *see also Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.") (citation omitted); *see* Dkt. 4.1 at 21–23 (addressing injury, but not addressing the balance of equities and public interest). In fact, the words "public interest" appear only one time in the motion, and that is in the standard of review. *See id.* at 8. Appellants offer no argument or authority why an injunction would be in the public interest. *See id.* at 21–23. Nor do Appellants offer any meaningful argument regarding the balance of

equities. *See id.* at 9. Appellants have forfeited these arguments by not raising them in their opening brief.

As made clear by this Court, Appellants must meet all four elements of the test for a preliminary injunction. *See All. for the Wild Rockies*, 632 F.3d at 1135 (stating that the U.S. Supreme Court requires a plaintiff seeking a preliminary injunction "to make a showing on all four prongs" of the test). Appellants have not, and their motion should also be denied on that basis. *E.g., United States v. Fujinaga*, Nos. 19-10222, 21-10155, 2022 WL 671018, at *1 (9th Cir. Mar. 7, 2022) (memorandum disposition) (failure to argue elements of preliminary injunction is a failure to meet burden of persuasion) (citation omitted).

Even if this Court examines the remaining merged factors, the District Court properly held, "There is no doubt the public has an interest in this issue. And the interest is significant on both sides." D.Ct. Dkt. 60 at 34. Further, the "States, too, have an interest in seeing their constitutionally reserved police power … defended from federal overreach." *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). "The public interest is also served by maintaining our constitutional structure." *Id.* In this case, the State of Idaho has an interest in seeing its laws enacted pursuant to its police power enforced, and in seeing that its constitutional authority over the public school system in Idaho is maintained.

Appellants have not met their burden on these remaining two factors.

## CONCLUSION

The Court should deny the emergency motion for an injunction pending appeal.


Respectfully submitted,

October 20, 2023.

HON. RAÚL R. LABRADOR
Attorney General

/s/ James E. M. Craig
JAMES E.M. CRAIG
Acting Division Chief
Civil Litigation and
Constitutional Defense

*Attorney for Appellees*

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

9TH Circuit Case No.:        23-2807

I am the attorney representing the Appellees.

**This brief contains 4704 words**, including 0 words manually counted in any visual images, and excluding the items exempt by FRAP 32(f). The brief's type size and type face comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.


s/ James E. M. Craig                    October 20, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing on October 20, 2023 with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.


s/ James E. M. Craig                    October 20, 2023