Samuel L. Linnet (ISB No. 9788)
sam@alturaslawgroup.com
ALTURAS LAW GROUP, PLLC
101 E Bullion St., Unit 2H
Hailey, ID 83333
(208) 788-6688

Peter C. Renn*
prenn@lambdalegal.org
Kell L. Olson*†
kolson@lambdalegal.org
Tara L. Borelli*†
tborelli@lambdalegal.org
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
†*mailing address only*
(213) 382-7600 (T) | (213) 402-2537 (F)

\* Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Katherine M. Forster*
katherine.forster@mto.com
Robyn K. Bacon*
robyn.bacon@mto.com
Nicholas R. Sidney*
nick.sidney@mto.com
Paul Martin*
paul.martin@mto.com
Avery P. Hitchcock*
avery.hitchcock@mto.com
Jimmy P. Biblarz*
jimmy.biblarz@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Ave., 50th Fl.
Los Angeles, CA 90071-3426
(213) 683-9100 (T) | (213) 687-3702 (F)

J. Max Rosen*
max.rosen@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
(415) 512-4000 (T) | (415) 512-4077 (F)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| REBECCA ROE, et al.,<br><br>        *Plaintiffs*,<br><br>v.<br><br>DEBBIE CRITCHFIELD, et al.,<br><br>        *Defendants*. | Case No. 1:23-cv-00315-DCN<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL AND FOR EXPEDITED RULING (Dkt. 64)** |

A modest extension of the existing pause on S.B. 1100 for a matter of months while Plaintiffs' expedited appeal to the Ninth Circuit is resolved is not only warranted by the law and equities but by simple prudence. Denying relief would require the immediate ejection of all transgender students from facilities they have already been using—in some cases for years—in

the middle of the school year. Regardless of how the appeal is ultimately resolved, there is a powerful interest in not placing those students onto a pendulum that swings them from one status quo, to another, and potentially back again. The same practical considerations that supported this Court's TRO, in concert with the law and equities, should guide this Court to grant an injunction pending appeal.[1]

## I.     Plaintiffs Are Likely to Succeed on Their Equal Protection Claim.

### A.     S.B. 1100 Requires Heightened Scrutiny.

Defendants admit "there is no dispute that [S.B. 1100] is subject to intermediate scrutiny." Dkt. 68 at 6. That is because S.B. 1100 adopts a sex-based classification, and that classification injures transgender students like Plaintiffs. But Defendants wholly fail to respond to the reasons why S.B. 1100 also discriminates based on transgender status. Dkt. 64-1 at 5-6. As in *Hecox v. Little*, 79 F.4th 1009, 1022 (9th Cir. 2023), S.B. 1100's "text, structure, purpose, and effect" show that it "categorically bans transgender [people]" from facilities "that correspond with their gender identity." Indeed, Defendants concede that it was specifically enacted to override school districts' adoption of local community policies expressly allowing transgender students to access such facilities. Dkt. 39 at 1 & n.1. Any claim that S.B. 1100 did not intend to

---

[1] Defendants suggest the standard in *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) is limited to stays sought under Rule 62(b), Fed. R. Civ. P. Dkt. 68 at 3 n.1. Defendants do not suggest the outcome of this Motion hinges on that argument. *Id.* Nonetheless, they are wrong. Rule 62(b) addresses a "stay by bond or other security," which was not at issue in *Lair* any more than it is here. Fed. R. Civ. P. 62(b). Instead, *Lair* set forth the standard courts apply to precisely the relief Plaintiffs seek. Both appellate and district courts routinely apply this standard to requests for an injunction to preserve the status quo pending appeal of a denial of a preliminary injunction. *See, e.g.*, *Humane Soc'y of U.S. v. Gutierrez*, 523 F.3d 990, 991 (9th Cir. 2008) (granting, in part, emergency stay—i.e., injunction—of defendants' acts pending appeal of denial of preliminary injunction); *Int'l Bhd. of Elec. Workers, Loc. 1547, AFL-CIO v. Alaska Commc'ns Sys. Holdings, Inc.*, 2020 WL 1272610, at *2 (D. Alaska Feb. 13, 2020) (citing same standard, and *Lair*, to address motion brought under Rule 62(d)).

exclude transgender people from such facilities belies reality, the record, and the government's admission.

> **B.   Defendants Failed to Prove that S.B. 1100 Likely Survives Heightened Scrutiny.**

Heightened scrutiny requires the government to present *evidence* demonstrating a substantial relationship between a law and its asserted interests. *Hecox*, 79 F.4th at 1016. Here, S.B. 1100 is premised on factual assertions, Idaho Code § 33-6601 [33-6701], that cisgender students will supposedly suffer psychological injury from sharing facilities with transgender students.

Defendants failed to produce an iota of evidence to substantiate these assertions, which is fatal under heightened scrutiny. The only piece of evidence they introduced—a declaration purporting to address gender dysphoria, Dkt. 47-8—had nothing to do with their justifications for S.B. 1100. Indeed, the word "privacy" does not appear once in that declaration. Even the out-of-circuit case upon which Defendants rely, *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022), was decided on a factual record developed through trial—not, as here, a barren record on the government's bald assertions.[2]

Even taken on their own terms, Defendants' arguments fail to justify S.B. 1100's sweeping ban. Defendants assert there is a right to shield one's unclothed body from the view of others, particularly those of the "opposite sex." Dkt. 68 at 6-7. But they cannot ignore that privacy protections, like stall doors and partitions, can readily address any objections to sharing

---

[2] Defendants also inexplicably argue that it is irrelevant even if the status quo—the absence of S.B. 1100's statewide mandate—has caused *no harm* at all. Dkt. 68 at 8-9. But if the status quo has caused no harm, then there is no justification for S.B. 1100, and, further, no reason to deny an injunction pending appeal.

facilities with transgender students, as courts have recognized.³  Dkt. 64-1 at 7.  This Court acknowledged that "privacy *may* not be as much of a concern in restrooms where stalls are widely used," and that users of a facility may not even be *aware* that a fellow user is transgender. Dkt. 60 at 18.  The proposition that cisgender students will experience psychological injury without S.B. 1100 cannot be squared with the availability of privacy protections at the disposal of schools.

The notion that S.B. 1100 is justified to prevent bodily exposure is also disproven by the record.  For starters, schools can provide a more private option to a cisgender student concerned about being seen by others, for any reason.  *Cf.* Dkt. 15-6 ¶ 8.  Alternatively, to the extent that the government's concern is about bodily exposure by transgender students, the unrebutted evidence shows that transgender students are most likely to take steps to avoid any such exposure, which may jeopardize their safety and exacerbate their gender dysphoria.  Dkt. 15-5 ¶¶ 67-68.  That is why the Ninth Circuit has observed that while sex-separated facilities may be a source of anxiety during adolescence, "this is particularly true for transgender students who experience gender dysphoria."  *Parents for Privacy v. Barr*, 949 F.3d 1210, 1217 (9th Cir. 2020).

Faced with this lopsided factual record, Defendants are left to argue that they will prevail on appeal based on their legal arguments alone.  But those arguments, which receive *de novo*

---

³ Defendants attempt to distinguish *A.C. v. Metropolitan School District of Martinsville*, 75 F. 4th 760 (7th Cir. 2023) by arguing situations where students might "disrobe" were excluded from the preliminary injunction. Dkt. 68 at 7 n.3.  To the contrary, *A.C.* upheld an injunction that *did* extend to locker rooms and upheld "the district court's conclusion that locker room use would be indistinguishable from bathroom use," noting as a factual matter that students had other options like changing stalls.  75 F.4th at 772.  More importantly, any such distinction would not change the need for an injunction here.  That some cases focus on restroom use by a particular student or students does not change that those cases identify constitutional harms similarly inflicted by S.B. 1100.  Like *A.C.*, both *Parents for Privacy v. Barr*, 949 F.3d 1210, 1240 (9th Cir. 2020) and *Doe v. Boyertown*, 897 F.3d 518, 532-33 (3d Cir. 2018), explicitly discuss locker room use in addition to restroom use and treat the privacy interests similarly.

review, are premised on a particular conception of the right to privacy as encompassing a cisgender student's right not to be in the mere presence of transgender peers. That premise is incompatible with Ninth Circuit precedent and, more fundamentally, with the promise of equal protection for all.

As a threshold matter, there is no record evidence to substantiate Defendants' assumption that cisgender students in Idaho invariably object to sharing facilities with their transgender peers—particularly in schools like those attended by Plaintiffs whose communities voluntarily adopted inclusive policies years ago. A.J., for instance, has used the boys' restroom for more than a year without issue. Defendants' argument relies on speculation regarding the objections such cisgender students might have, imagining "heightened levels of stress" they might experience from unspecified interactions with transgender students, Dkt. 60 at 16-17, and the presumption that there are no other means to address these students' concerns but to categorically ban transgender students from facilities matching their gender. This type of speculation is forbidden under heightened scrutiny. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1052 (7th Cir. 2017).

Defendants also mischaracterize the reasoning of *Parents for Privacy* to avoid its import here. In language Defendants ignore, the court held that there *is* no cognizable legal interest premised solely on an objection to "shar[ing] restrooms or locker rooms with transgender students whose sex assigned at birth is different than theirs." 949 F.3d at 1222.[4]

Defendants insist that *Parents for Privacy* is irrelevant to "whether the legislature has an

---

[4] Defendants and this Court both relied upon authority that *Parents for Privacy* specifically considered—and rejected—when holding that there is no privacy right to exclude transgender people from facilities matching their gender identity. 949 F.3d at 1223 (distinguishing *Byrd*, which relied upon *Michenfelder*).

5

important interest in protecting the privacy right of students" sufficient to justify S.B. 1100 under heightened scrutiny.  Dkt. 68 at 9.  But Defendants cannot satisfy their burden under heightened scrutiny by relying on a purported interest—in avoiding the mere presence of transgender students—that the Ninth Circuit specifically rejected.  That is why *Parents for Privacy* observed that cases "in which courts also rejected [objecting students'] purported privacy interest, in favor of transgender students' access to school facilities" were "similar to this one."  949 F.3d at 1223 n.10 (citing *Whitaker*).  The government "may not avoid the strictures of [the Equal Protection] Clause by deferring to the wishes or objections of some fraction of the body politic."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985).

Defendants also mischaracterize Plaintiffs' claim—which neither requires the abolition of sex-separated facilities nor creates a right for "any person of any sex to have access to the facility of his or her choice."  Dkt. 68 at 2.  There is nothing inconsistent between maintaining sex-separated facilities and allowing transgender students to use facilities matching their gender.  Boise School District illustrates the point.  Dkt. 15-9 (maintaining sex-separated facilities and providing transgender students access based on "persistent and consistent" gender identity).

Finally, Defendants appeal to principles of local sovereignty, suggesting courts should not "pass judgment on [a] school district's policy or on how [a] school district can best fulfill its duty as a public educational institution."  Dkt. 68 at 2 (quoting *Parents for Privacy*, 949 F.3d at 1217).  But the injunction sought will not stop local governments from crafting local policies, inclusive or otherwise, because, like the TRO, it would only provisionally enjoin a statewide mandate.  Instead, it is S.B. 1100—in contrast even to the local policy at issue in *Adams*—that takes the unusual step of usurping a traditionally local function and precluding any "'serious, thoughtful' debates."  Dkt. 68 at 5.  After all, it was Boise School District, under the authority of

duly elected officials, that decided to implement an inclusive practice for its local community for the last seven years. A short, continued pause on the statewide mandate of S.B. 1100 would simply maintain the authority of local governments while Plaintiffs' appeal is resolved.

**II.     Title IX Does Not Authorize Sex-Based Harm Against Transgender Students.**

Relying on dictionary definitions of "sex," Defendants argue that Title IX's statutory and regulatory provisions, Opp. 10, allow schools to impose sex-based harm against transgender students. As the Fourth and Seventh Circuits have held, that is an unconvincing reading of these provisions to answer a question they were not intended to answer.

Statutory interpretation requires analyzing more than "dictionary definitions of [] component words" but, rather, "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *United States v. Pacheco*, 977 F.3d 764, 767-68 (9th Cir. 2020) (quotes omitted). Defendants' focus on "[n]arrow definitions of sex" thus fails to "account for the complexity of the necessary inquiry." *A.C. v. Metropolitan Sch. Dist. of Martinsville*, 75 F.4th 760, 770 (7th Cir. 2023). Defendants also do not attempt to distinguish the Ninth Circuit's statement, in *Parents for Privacy*, that "sex" in these provisions need not mean "segregated based only on biological sex." Dkt. 64-1 at 12-13 (quoting 949 F.3d at 1227).

Regardless, viewing these provisions in the *context* of Title IX "as a whole" defeats Defendants' argument. *Pacheco*, 977 F.3d at 768. Like the Fourth and Seventh, the Ninth Circuit has read Title IX's central anti-discrimination mandate to protect transgender people. *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1116 & n.1 (9th Cir. 2023). The Fourth and Seventh Circuit's view of Sections 1686, 106.33, and 106.32 harmonizes with that holding: these provisions authorize, generally, sex-separated facilities, which Title IX does not eliminate; but they do not answer whether schools may inflict sex-based harm on transgender students by

excluding them from facilities matching their gender identity. The answer to that question comes from the anti-discrimination mandate. Indeed, under Defendants' contrary view, Title IX would permit schools to force transgender students to use facilities inconsistent with their gender identity—even *without* any single-occupancy option.

Defendants also urge a defense premised on the spending clause, arguing that Title IX must be clearer. But a spending clause argument is relevant, at most, to the availability of "money damages": it does not affect whether plaintiffs are entitled to an injunction. *Davis v. Monroe Cnty Bd. of Educ.*, 526 U.S. 629, 639 (1999). More broadly, courts have rejected arguments that the spending clause prevents application of a general anti-discrimination mandate to specific fact-patterns—which inherently requires judicial explication. Dkt. 50 at 27.

Finally, Defendants ignore Plaintiffs' argument that *regulations* implementing Title IX cannot contradict its *statutory* protection against sex-based harm. Dkt. 64-1 at 14. Even if Defendants were right as to the scope of Section 1686's "living facilities" language, that statute goes no further; it is only regulations that address "toilet, locker room, and shower facilities." 34 C.F.R. § 106.33. No regulation can override Title IX's statutory protection against discrimination.

## III. Plaintiffs Are Likely to Succeed on Their Privacy Claim.

Defendants concede "the existence of a right to informational privacy." Opp. 13. They also do not deny precedent specifically recognizing that one's transgender status is deeply personal and private information entitled to protection. Dkt. 15-1 at 18.

Nevertheless, Defendants raise a new argument in response to Plaintiffs' Motion for Injunction Pending Appeal, that no right to informational privacy applies to the "voluntary" use of school facilities. Dkt. 68 at 14. Defendants are wrong. There is nothing voluntary about a

student's need to use public school facilities to relieve basic bodily functions.

Defendants also assert, without evidence, that students can "use a separate, single-occupancy facility to protect any private information." Dkt. 68 at 14. But, as this Court found—and as the only evidence in the record confirms—excluding transgender students from facilities aligned with their gender identity exposes their status to others, and single-occupancy facilities do not cure that harm. Dkt. 15-2 ¶ 16; Dkt. 15-5 ¶¶ 61-62. When a transgender girl like Rebecca Roe cannot go with her female friends into the girls' restroom, the government jeopardizes the disclosure of her status; so too when she is seen consistently using a separate restroom. Consigning transgender students to alternate facilities draws more scrutiny and attention from peers and "very publicly brand[s] all transgender students with a scarlet 'T.'" *Doe v. Boyertown*, 897 F.3d 518, 530 (3d Cir. 2018); *Whitaker*, 858 F.3d at 1045-46.

Because the information at issue is "very sensitive," the potential for harm from involuntary disclosure is significant, and there are no safeguards to prevent disclosure, the government is unlikely to succeed in justifying its infringement on transgender students' privacy rights. *Cf. Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 553 (9th Cir. 2004). At a minimum, the irreversible nature of that infringement strongly militates in favor of an injunction pending appeal.

**IV.    Plaintiffs' Showing on the Remaining Factors Is Largely Unrebutted.**

Should this Court agree that Plaintiffs are likely to succeed, that is dispositive. Violation of a constitutional right is *per se* irreparable harm, and the government cannot suffer harm from an injunction that prevents an unlawful practice. Dkt. 15-1 at 24-25 (citing cases). Regardless, the record here shows that the equities tip sharply in Plaintiffs' favor.

On irreparable harm, Defendants ignore the voluminous evidence in the record that if

9

S.B. 1100 takes effect, it will unleash multiple harms on transgender youth: (1) psychological harm, including stigmatization; (2) forcible outing; (3) harassment, bullying, and violence; (4) health consequences from avoiding use of facilities; (5) impairment in learning ability; and (6) interference with social transition. *See* Dkt. 15-5; Dkt. 15-2 ¶¶ 13-16; Dkt. 15-4 ¶¶ 4-6, 9-10; Dkt. 15-5 ¶¶ 52-66; Dkt. 15-8 ¶¶ 28-32.

In responding to Plaintiffs' Motion for Preliminary Injunction, Defendants did not rebut the first *five* of those harms. As to the sixth, Defendants offered a report—from a psychologist who has never treated a transgender minor for gender dysphoria, Dkt. 50-2 ¶ 6—in response to Plaintiffs' report from a recognized expert on transgender care. *Whitaker*, 858 F.3d at 1045 (relying on Plaintiffs' expert). Defendants' report did not so much as mention sex-separated facilities. Dkt. 47-8. Moreover, the Ninth Circuit has repeatedly acknowledged the importance of social transition to "treat[] gender dysphoria," and cited the well-recognized standards Plaintiffs relied upon. Dkt. 64-1 at 17.

Beyond irreparable harm, Defendants inexplicably argue that Plaintiffs did not "offer any meaningful argument" regarding the balance of equities. Dkt. 68 at 16. Plaintiffs expressly addressed Defendants' lack of evidence they would "face comparable harm" from an injunction, Dkt. 64-1 at 17, which addresses those factors. *See Hecox*, 79 F.4th at 1036. As in *Hecox*, Plaintiffs "fac[e] deeply personal, irreparable harms" if S.B. 1100 takes effect. *Id.* By contrast, the inclusive policies and practices like those in Plaintiffs' schools have existed for *years*, and maintaining the status quo for a matter of months will cause no "comparable harm." *Id.*

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order enjoining S.B. 1100 pending their appeal of this Court's October 12, 2023 Order.

Dated: October 25, 2023                             Respectfully Submitted

                                                    /s/ Kell L. Olson
Katherine M. Forster                                Peter C. Renn
Robyn K. Bacon                                      Kell L. Olson
J. Max Rosen                                        Tara L. Borelli
Nicholas R. Sidney                                  LAMBDA LEGAL DEFENSE & EDUCATION FUND
Paul Martin
Avery P. Hitchcock                                  Samuel L. Linnet
Jimmy P. Biblarz                                    ALTURAS LAW GROUP, PLLC
MUNGER TOLLES & OLSON LLP

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of October, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James Edward Monroe Craig
james.craig@ag.idaho.gov

Rafael John Droz
rafael.droz@ag.idaho.gov

/s/ Kell L. Olson
Kell L. Olson