Samuel L. Linnet (ISB No. 9788)
sam@alturaslawgroup.com
ALTURAS LAW GROUP, PLLC
101 E Bullion St., Unit 2H
Hailey, ID 83333
(208) 788-6688

Peter C. Renn*
prenn@lambdalegal.org
Kell L. Olson*†
kolson@lambdalegal.org
Tara L. Borelli*†
tborelli@lambdalegal.org
Pelecanos*†
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
†*mailing address only*
(213) 382-7600 (T) | (213) 402-2537 (F)

*Admitted *pro hac vice* or forthcoming

*Attorneys for Plaintiffs*

Katherine M. Forster*
katherine.forster@mto.com
Paul E. Martin*
paul.martin@mto.com
Elizabeth Anastasi*
elizabeth.anastasi@mto.com
Abigail K. Bessler*
abigail.bessler@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Ave., 50th Fl.
Los Angeles, CA 90071-3426
(213) 683-9100 (T) | (213) 687-3702 (F)

J. Max Rosen*
max.rosen@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
(415) 512-4000 (T) | (415) 512-4077 (F)

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SEXUALITY AND GENDER ALLIANCE, <br><br> *Plaintiff*, <br><br> v. <br><br> DEBBIE CRITCHFIELD, et al., <br><br> *Defendants*. | Case No. 1:23-cv-00315-DCN <br><br> **APPENDIX TO MOTION FOR** <br><br> **PRELIMINARY INJUNCTION** |

1

# Appendix A

# Plaintiff-Appellant's Petition for Partial Panel Rehearing

No. 23-2807

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

REBECCA ROE, by and through her parents and next friends,
Rachel and Ryan Roe, and SEXUALITY AND GENDER ALLIANCE,

*Plaintiffs-Appellants*,

v.

DEBBIE CRITCHFIELD, in her official capacity as
Idaho State Superintendent of Public Instruction, *et al.*,

*Defendants-Appellees*

---

On Appeal from the United States District Court for the District of
Idaho
No. 1:23-cv-00315-DCN

---

## PLAINTIFF-APPELLANT'S PETITION FOR
## PARTIAL PANEL REHEARING

---

Peter C. Renn
Kell Olson[†]
Tara L. Borelli[†]
Pelecanos[†]
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
800 S. Figueroa St., Suite 1260
Los Angeles, CA 90017
(213) 382-7600
[†]*Mailing address only*

J. Max Rosen
max.rosen@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Fl.
San Francisco, CA 94105
(415) 512-4000

Samuel L. Linnet                    Katherine M. Forster
ALTURAS LAW GROUP, PLLC             Nicholas R. Sidney
101 E Bullion St., Unit 2H          Paul Martin
Hailey, ID 83333 | (208) 788-6688   MUNGER TOLLES & OLSON LLP
                                    350 South Grand Ave., 50th Fl.
                                    Los Angeles, CA 90071
                                    (213) 683-9100

*Counsel for Plaintiff-Appellant Sexuality and Gender Alliance*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

STANDARD .........................................................................................5

ARGUMENT ........................................................................................5

I.    Section 1681 Does Not Authorize S.B. 1100's Mandate that Idaho Schools Discriminate on the Basis of Sex. ....................................6

II.   Regulations Implementing § 1681 Do Not Authorize S.B. 1100's Mandate that Idaho Schools Discriminate on the Basis of Sex ...................9

III.  The Court Erred in Holding that § 1686 Authorizes Sex-Based Discrimination Beyond Living Facilities. .....................................12

IV.  The Court's Holding is Overbroad at a Minimum. .......................19

CONCLUSION .....................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville,*
    75 F.4th 760 (7th Cir. 2023) ............................................. 5, 10, 18, 20

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,*
    548 U.S. 291 (2006).......................................................... 4, 17

*B.P.J. by Jackson v. W. Virginia State Bd. of Educ.,*
    98 F.4th 542 (4th Cir. 2024) ............................................. 18

*Bostock v. Clayton Cnty.,*
    590 U.S. 622 (2020).......................................................... 2, passim

*Doe v. Snyder,*
    28 F.4th 103 (9th Cir. 2022) ............................................. 2, 7

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,*
    575 U.S. 768 (2015).......................................................... 16

*Grabowski v. Arizona Bd. of Regents,*
    69 F.4th 1110 (9th Cir. 2023) ........................................... 4, 7, 8, 18

*Grimm v. Gloucester Cnty. Sch. Bd.,*
    972 F.3d 586 (4th Cir. 2020).............................................. 5, 8, 18, 20

*Iselin v. United States,*
    270 U.S. 245 (1926).......................................................... 13

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369, 371 (2024) .................................................. 11

*Muldrow v. City of St. Louis,*
    601 U.S. 346 (2024).......................................................... 16

*Oncale v. Sundowner Offshore Servs., Inc.,*
    523 U.S. 75 (1998)............................................................ 10

*Pennhurst State Sch. and Hosp. v. Halderman*,
    465 U.S. 89 (1984) .................................................................. 3, passim

*Sch. Dist. of City of Pontiac*,
    584 F.3d at 294 .................................................................... 17

*Sedima, S. P. R. L. v. Imrex Co.*,
    473 U. S. 479 (1985) ............................................................ 17

*United States v. Mageno*,
    786 F.3d 768 (9th Cir. 2015) ............................................... 5

*United States v. Nordic Vill. Inc.*,
    503 U.S. 30 (1992) ............................................................... 17

**FEDERAL STATUTES**

20 U.S.C. § 1681 ........................................................................ 2, passim

20 U.S.C. § 1686 ........................................................................ 2, passim

42 U.S.C. § 2000e–2(a) ............................................................. 15

**FEDERAL RULES**

Fed. R. App. P. 40(a)(2) ............................................................ 5

**FEDERAL REGULATIONS**

34 C.F.R. § 106.33 .................................................................... 2, passim

**LEGISLATIVE MATERIALS**

Idaho Senate Bill 1100 ............................................................. 1, 2

**OTHER AUTHORITIES**

A. Scalia & B. Garner, *Reading Law: The Interpretation of
    Legal Texts* (2012) ............................................................... 17

Alan S. Oser, *About Real Estate*, N.Y. TIMES (Oct. 14, 1977) ................ 14

*Man's House Vanishes As He Eats Breakfast*, N.Y. TIMES
(Nov. 5, 1972) ...................................................................... 14

Samuel Weiss, *SUNY Plant Needs a Physical*, N.Y. TIMES
(Nov. 11, 1979) .................................................................... 14

*Webster's Third New International Dictionary* (1968)............................ 14

iv

# INTRODUCTION

Plaintiff[1] respectfully petitions for partial panel rehearing on its Title IX claim.  If permitted to stand, Senate Bill 1100 (S.B. 1100) will require that all Idaho schools exclude all transgender students from numerous sex-separated facilities consistent with their gender identity, including multi-occupancy restrooms, changing rooms, and sleeping quarters for events requiring overnight lodging.

This Court affirmed the district court's denial of a preliminary injunction on the narrow ground that Plaintiff has not established entitlement to relief on a *facial* challenge to S.B. 1100—that is, it held that Plaintiff has not shown that S.B. 1100's "mandated sex-segregation of *all* covered facilities" is likely invalid.  *See, e.g.*, Op. 21 & n.9 (emphasis added).  Consistent with that approach, the Court, addressing the Equal Protection Clause, held only that certain applications of S.B. 1100—specifically, to locker rooms and communal showers—appeared likely to satisfy intermediate scrutiny.  *Id.* at 21; *cf. id.* at 20 ("Common sense tells us that the communal restroom is a

---

[1] The Court granted Plaintiff Rebecca Roe's voluntary dismissal, leaving SAGA as the sole Plaintiff-Appellant.  Op. 14 n.5.  This Petition is thus brought on behalf of SAGA only.  Plaintiff refers to SAGA throughout.

place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall.")

The Court's Title IX analysis was broader. In sweeping language, the Court held that Title IX authorizes schools to exclude transgender students from myriad nonresidential facilities consistent with their gender identity—including restrooms. Op. 33. The Court did not ground this holding in § 1681 of Title IX—which bars "discrimination" on the basis of "sex" and thus protects transgender people from sex-based harm. *See Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022) (extending reasoning of *Bostock v. Clayton Cnty.*, 590 U.S. 622 (2020) to Title IX). Nor did it rely on 34 C.F.R. § 106.33, an implementing regulation of § 1681 that merely affirms that, when sex-separated facilities are offered, they must be comparable. Op. 32–33.

Instead, the Court turned to § 1686, which allows schools to "maintain[] separate living facilities for the different sexes." 20 U.S.C. § 1686; *see* Op. at 32–33; *see also* Op. 31 n.11 (framing the decision as turning on the fact that this is the "unusual case in which the statute in question," that is, §1686, "appears to affirmatively authorize conduct the funding recipient has engaged in"). The Court held that that

2

section does not "unambiguously carve[] out *only* living facilities from

Title IX's general mandate and not more intimate spaces such as

restrooms, changing rooms, and communal showers."  Op. 33.  Relying

on *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89 (1984),

the Court concluded that this purported ambiguity carves out all of S.B.

1100's applications from § 1681.

The Court's conclusion that § 1686 carves out more than just

"living facilities" is irreconcilable with the plain text of that section.

That section straightforwardly applies only to "living facilities."  None

of the applications of S.B. 1100, in turn, include "living facilities":

students do not live in non-residential schools.  And assuming,

*arguendo*, that *any* of S.B. 1100's applications—such as overnight

lodging for school-authorized activities—could fall within the scope of

"living facilities," restrooms in a non-residential school clearly cannot.

To the degree the Court relied on historical expectations of

legislators in 1972 to create ambiguity in otherwise clear text, that

approach is foreclosed by precedent.  Op. 33 n.15.  The Spending Clause

matters only when the *text* of an anti-discrimination statute is

ambiguous; historical expectations cannot supersede a statute's clear

3

text or create textual ambiguity where there is none. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 304 (2006). To hold otherwise would contradict the Supreme Court's holding in *Bostock*—extended by this Court to Title IX—that historically expected or assumed applications cannot add exceptions to an anti-discrimination statute's otherwise clear text. *See Grabowski v. Arizona Bd. of Regents,* 69 F.4th 1110 (9th Cir. 2023) (applying *Bostock*'s logic to Title IX).

The Court's Title IX analysis is thus incorrect. And at a minimum, it is overbroad. To affirm the district court on Plaintiff's facial challenge, the Court need only identify one application of S.B. 1100 that may be permissible. *See* Op. 21; *cf. id.* at 11 (listing overnight facilities as an application of S.B. 1100). The Court's holding at this stage of the litigation that §1686 applies to *all* of S.B. 1100's applications, including restrooms, Op. at 33, is unsupported by § 1686's plain text; creates clear tension with Supreme Court and circuit precedent; and unnecessarily places the Ninth Circuit in conflict with the Fourth and Seventh Circuits on Title IX's application to restrooms. *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607 (4th Cir. 2020);

4

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 770 (7th

Cir. 2023). Plaintiff respectfully asks the Court to reverse the district

court or, in the alternative, narrow its Title IX holding.

## STANDARD

Panel rehearing is appropriate when the petitioner can show that

the Court has "overlooked or misapprehended" some "point of law or

fact." Fed. R. App. P. 40(a)(2); *see also United States v. Mageno*, 786

F.3d 768, 774 (9th Cir. 2015).

## ARGUMENT

The Court's Title IX analysis involved three statutory and

regulatory provisions: 20 U.S.C. § 1681 (which prohibits discrimination

on the basis of sex); 34 C.F.R. § 106.33 (which implements § 1681 and

mandates, *inter alia*, that separate toilets be comparable); and 20

U.S.C. § 1686 (a carveout to § 1681 that allows schools to "maintain[]"

sex-separated "living facilities"). The first two of these provisions, the

Court recognized, do not support S.B. 1100, whether analyzed under

*Pennhurst* or not. And the Court's holding that § 1686 goes beyond

"living facilities" simply cannot be reconciled with the plain text of that

provision.

5

## I.  Section 1681 Does Not Authorize S.B. 1100's Mandate that Idaho Schools Discriminate on the Basis of Sex.

Section 1681 of Title IX provides that "[n]o person in the United States shall, on the basis of sex, be . . .  subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681.  The Court correctly declined to rule that § 1681's core anti-discrimination provision authorizes excluding transgender students from restrooms matching their gender identity—which is plainly "discrimination" "on the basis of sex."

Although Defendants wrongly argued that Plaintiff's Title IX claim rose and fell on the meaning of "sex" in Title IX, Answering Brief at 33, the Court did not hold that it was necessary to decide the precise meaning of that word in analyzing Plaintiff's constitutional or statutory claims.  Op. 28.  That is undoubtedly true of § 1681: Even assuming that "sex" means "sex assigned at birth," Title IX, like Title VII, plainly prohibits discrimination against transgender people on that basis.[2]  *See Bostock*, 590 U.S. at 655–57.  For instance, a transgender boy may not

_____

[2] Plaintiff developed this and related arguments below.  *See, e.g.*, ECF 50 at 18–23.  Because Defendants' Spending Clause argument was raised as a *defense* to Plaintiff's Title IX claim, the principal response thereto was necessarily on reply.

6

use the boys' restroom under S.B. 1100 because of his sex assigned at birth, while other boys can.  Similarly, this Court recognized, in analyzing Plaintiff's equal protection claim, that "S.B. 1100 discriminates . . . on the basis of sex," which is true even if sex is viewed solely as one's birth-assigned sex.  Op. 17.

The Court made the same general observations in the Title IX context, reaffirming that a law that treats transgender persons differently (and worse) necessarily discriminates on the basis of sex. Op. 27–28 (citing *Grabowski* and *Doe*).  Discrimination on the basis of sex is just what § 1681 proscribes, so nothing in that provision can save S.B. 1100.

Supreme Court and Ninth Circuit precedent confirm this conclusion.  *Bostock* notably proceeded from the premise that the term "sex" referred to "biological distinctions between male and female" and expressly refrained from addressing any broader meaning of "sex."  590 U.S. at 655.  Any ambiguity in the word's definition was thus irrelevant; the Supreme Court held, as a matter of plain meaning, that discrimination "because of sex" necessarily includes discrimination based on transgender status.  *Id.* at 657–59.

7

Consistent with *Bostock*, this Court confirmed in *Grabowski* that the "same result" logically applies under Title IX. *Grabowski*, 69 F.4th at 1116. It did not matter that Title IX, unlike Title VII, was enacted under Congress's Spending Clause authority; Title IX's prohibition on sex discrimination plainly reaches discrimination on the basis of sexual orientation. *Id.*; *see also Grimm*, 972 F.3d at 619 n.18 ("*Bostock* forecloses that 'on the basis of sex' is ambiguous as to discrimination against transgender persons").

There is thus no question that S.B. 1100 "discrimin[ates]" "on the basis of sex" within the plain meaning of § 1681. 20 U.S.C. § 1681(a). The Court did not point to any textual ambiguity in § 1681 that, viewed in light of the Constitution's Spending Clause, might alter this conclusion. As the Court recognized, because § 1681, standing on its own, cannot save S.B. 1100, the question is whether a carveout applies. Op. 31 n.11.[3]

---

[3] Defendants agreed. *See* Answering Brief at 49 ("Whether [S.B. 1100's] designation constitutes discrimination that would otherwise violate Title IX (it does not) is beside the point. What matters is whether S.B. 1100 fits into Title IX's carve-out for sex-specific facilities." (citations and internal quotations omitted)).

8

## II.    Regulations Implementing § 1681 Do Not Authorize S.B. 1100's Mandate that Idaho Schools Discriminate on the Basis of Sex.

The Court also rejected Defendants' invitation to hold that regulations implementing § 1681 operate as carveouts allowing federal funding recipients to exclude transgender students from restrooms matching their gender identity, even where such exclusion is "discrimination" under Section 1681.  Op. 32; *id.* at 33 (explaining that, "though we agree with SAGA that § 106.33 implements § 1681," the Court's holding was based on its conclusion that the distinct statutory carveout in § 1686 did not "unambiguously carve[] out only living facilities").

That conclusion is correct.  34 C.F.R. § 106.33, which, unlike § 1686, addresses "toilet, locker room, and shower facilities," is an implementing regulation of § 1681—which sets out Title IX's general prohibition against discrimination—not § 1686.  *See* Op. 32.  As the Court explained, "Section 106.33, entitled 'Comparable facilities,' requires that, if a recipient of federal funding provides separate toilet, locker room, and shower facilities on the basis of sex, the facilities must be comparable."  *Id.*  "In this way," the Court concluded, "§ 106.33

9

extends § 1681's protections against sex-based discrimination rather than expanding the scope of § 1686's carve out." *Id.*; *see also A.C.*, 75 F.4th 760 at 770.

Plaintiff agrees. To the extent that § 106.33 contemplates the general permissibility of separate boys' and girls' restrooms, it simply reflects the federal government's understanding that excluding a student from a restroom designated for another sex does not, as a general rule, cause that student sex-based harm. *Cf. Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (Title VII does not reach non-harmful "differences in the ways men and women routinely interact with" each other). In other words, these regulations recognize that § 1681's prohibition against sex-based "*discrimination*" (20 U.S.C. § 1681(a), emphasis added)—which reaches only "distinctions or differences in treatment that injure protected individuals," *see Bostock*, 590 U.S. at 681 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 59 (2006))—does not prohibit the maintenance, in general, of separate girls' and boys' restrooms in a manner that inflicts no sex-based harm. The regulations do not carve out *discriminatory* policies— including those that would exclude transgender students from using

10

restrooms that align with their gender identity—from Section 1681's ambit.

That conclusion also comports with the principle that regulations cannot contradict the statutes they purport to implement. Op. 32 (acknowledging Plaintiff's argument that "an implementing regulation cannot be read to authorize conduct prohibited by statute," and explaining that the Court does "not see a contradiction between Title IX and § 106.33"). Indeed, under *Loper Bright Enters. v. Raimondo*, a court cannot even defer to an agency's interpretation of the law when a statute is *ambiguous*. 603 U.S. 369, 371 (2024). Section 106.33 cannot be used to create a regulatory exception for statutorily-proscribed discrimination where nothing in the plain text of Section 1681 contemplates any carveout. Nor does *Pennhurst* change that result. Were it otherwise, an agency could use *Pennhurst* as a work-around to *Loper Bright*, promulgating, for instance, a regulation that authorizes clear sexual-orientation discrimination under Title IX so that states could cite that regulation as eroding any notice of the sweep of the text's anti-discrimination mandate. The Court rightly did not hold as much.

## III.  The Court Erred in Holding that § 1686 Authorizes Sex-Based Discrimination Beyond Living Facilities.

Recognizing that § 1681 and its associated regulations cannot support S.B. 1100, the Court relied instead on § 1686, which it characterized as a statutory "carve-out" to Section 1681's anti-discrimination rule.  Op. 32; *see also id.* at 31 n.11 (holding that "the statute in question appears to affirmatively authorize conduct the funding recipient has engaged in").  Section 1686 provides that educational institutions may maintain "separate living facilities for the different sexes."  20 U.S.C. § 1686.  Relying on *Pennhurst*, the Court identified two aspects of § 1686 it suggested were ambiguous.  It first explained that the reference to "sex" in the carveout—and Title IX generally—did not *unambiguously* mean something other than "sex assigned at birth."  See Op. 30.  It then turned to the *scope* of § 1686's carveout.  The Court held that that section does not "unambiguously carve[] out **only** living facilities from Title IX's general mandate and not more intimate spaces such as restrooms, changing rooms, and communal showers."  Op. 33 (emphasis in original).

The Court's holding that § 1686 is ambiguous as to its *scope* is simply not sustainable under the plain text of that provision.  Section

1686 provides, in its entirety, "[n]otwithstanding anything to the contrary contained in this chapter, nothing contained herein shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686. The text unambiguously applies only to "living facilities." And the Court identified nothing in § 1686's text to support its holding that the same provision carves out discrimination on the basis of sex assigned at birth in facilities that are *not* "living facilities." *See Iselin v. United States*, 270 U.S. 245 (1926) ("To supply omissions transcends the judicial function.").[4]

Nor did the Court hold that the term "living facilities" might be read to include any school restroom—or other "intimate" spaces.

---

[4] The doctrine of *expressio unius* is not necessary to conclude that Section 1686 means what it says—that is, that it creates no exception to § 1681 for discrimination in restrooms. *Cf.* Op. 33 n.15. The plain text of § 1686 *only* carves out "living facilities." Nor is it necessary to rely on *expressio unius* to create a negative inference, based on § 1686, that discrimination in other spaces must be prohibited under Title IX. As noted above, § 1681 creates that prohibition, and it includes nothing in its text to support the conclusion that disparate treatment on the basis of sex is permissible where it causes harm. In other words, § 1681 broadly prohibits sex-based discrimination; and § 1686—the "affirmative[] authoriz[ation]" at issue here (Op. 31 n.11)—is plainly limited to "living facilities."

13

Contemporaneous dictionaries defined "living," in its relevant sense, as "appropriate, designed, or adequate for living," and to "live" as "to occupy a home: DWELL, RESIDE." *Webster's Third New International Dictionary* 1323–24 (1968). The plain meaning of "living facilities," in turn, is facilities where people "liv[e]," such as student dormitories—not *any* facility deemed "intimate." *Cf.* Op. 33.[5] Indeed, the Court's statement that § 1686 does not "unambiguously carve[] out **only** living facilities from Title IX's general mandate and not more intimate spaces such as restrooms, changing rooms, and communal showers," acknowledges that "restrooms, changing rooms, and communal

_____

[5] Contemporaneous usage confirms that, in the decade in which Title IX was passed, as today, "living facilities" were essentially residential and distinguished from other spaces on that basis. *E.g., Man's House Vanishes As He Eats Breakfast*, N.Y. TIMES (Nov. 5, 1972), https://www.nytimes.com/1972/11/05/archives/mans-house-vanishes-as-he-eats-breakfast.html ("Max Hannon . . . said he was providing him with living facilities until he finds a new home."); Alan S. Oser, *About Real Estate*, N.Y. TIMES (Oct. 14, 1977), https://www.nytimes.com/1977/10/14/archives/about-real-estate-renovation-on-riverside-drive-cooperatives-in-an.html ("When the Jesuits came in 1943 they made renovations to use the property as one building with living facilities on one side and the chapel and study rooms on the other."); Samuel Weiss, *SUNY Plant Needs a Physical*, N.Y. TIMES (Nov. 11, 1979), https://www.nytimes.com/1979/11/11/archives/suny-plant-needs-a-physical.html ("The university . . . has increased its dormitory fee by $50 to help refurbish student living facilities.").

showers" are *not* "living facilities."  Op. 33 (emphasis in original).

The support the Court identified for its conclusion that § 1686 does not "unambiguously carve[] out *only* living facilities" was not in text, but in history.  The Court opined that "in 1972 the separation of these facilities on the basis of sex was so assumed that it did not merit special mention in the text of the statute."  Op. 33 n. 15.  But it is the "text of the statute"—not historical assumptions—that governs.  Even if Congress actually considered and assumed that excluding transgender students from restrooms on the basis of their sex assigned at birth would be lawful, §1686 does not say that.[6]  And historical expectations

---

[6] It is not apparent that all of Congress, in 1972, would have assumed that excluding transgender students from facilities that align with their gender identity was lawful when they could show doing so caused them harm—or even that Congress would have understood enough to consider the question.  Plaintiff agrees that Congress would *generally* have understood that separate boys' and girls' restrooms are permitted—just as Plaintiff agrees that Title IX indeed authorizes such general, non-harmful sex-separation.  But no historical expectations, or statutory carveouts, are necessary to achieve that result: Section 1681, as noted, does not bar non-harmful sex-separation, and separate facilities for the sexes does not ordinarily cause sex-based harm.  *See infra* at p. 10.  Section 1686 is unnecessary to preserve that arrangement through a carveout—and there is no reason to assume Congress intended § 1686 to do so.  Indeed, if a carveout like § 1686 were necessary to validate such restrooms under Title IX, then Title VII—whose operative language is similar but contains no analogous

about how the law would be applied (or here, to which facilities) do not change or override plain text. *Bostock*, for instance, rejected at length the argument that Congress could not possibly have expected a law passed in 1964 would protect gay and transgender people. 590 U.S. at 653 ("Only the written word is the law, and all persons are entitled to its benefit."). Relying on the statute's "expected applications" or "legislative intent" to curb its reach was an "impermissibl[e]" attempt "to displace the plain meaning of the law in favor of something lying beyond it." *Id.* at 675.

The same is true of policy considerations generally. A desire to change the text of a statute to better accomplish a belief about Congress's presumed policy objective "cannot override" plain statutory text. *Muldrow v. City of St. Louis*, 601 U.S. 346, 357–58 (2024) (explaining that even if the "worst predictions come true, that would be the result of the statute Congress drafted"). "The problem with this approach is the one that inheres in most incorrect interpretations of statutes: It asks us to add words to the law to produce what is thought

---

carveout—would logically prohibit all sex-separated restrooms in workplaces. 42 U.S.C. § 2000e–2(a).

to be a desirable result. That is Congress's province." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). The word that Congress used—"living" facilities—cannot be nullified.

*Pennhurst*'s notice requirement is no exception to these rules: it requires the existence of ambiguity in the statute's *text*. See *Pennhurst*, 451 U.S. at 17; *Arlington*, 548 U.S. at 304 ("In a Spending Clause case, the key is not what a majority of the Members of both Houses intended but what the States are clearly told regarding the conditions that go along with the acceptance of those funds."); *Sch. Dist. of City of Pontiac*, 584 F.3d at 294 (Sutton, J., concurring) ("The *Pennhurst* clear-statement rule turns on textual ambiguity, not ambiguity in the legislative history. . . . [I]f there is no such ambiguity, there is nothing for the legislative history to clarify."); *cf. United States v. Nordic Vill. Inc.*, 503 U.S. 30, 37 (1992) ("legislative history has no bearing on the ambiguity point" for purposes of a clear-statement rule). And "the fact that [a statute] has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity" in the text; "it simply demonstrates [the] breadth of a legislative command." *Bostock*, 590 U.S. at 674 (quoting *Sedima, S. P. R. L. v. Imrex Co.*, 473 U. S. 479, 499

(1985) (cleaned up)); *see also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 101 (2012) (unexpected applications reflect only Congress's "presumed point [to] produce general coverage—not to leave room for courts to recognize *ad hoc* exceptions").

To use historical expectations to create new exceptions under § 1686 that are not there is not only error; it is in tension with this Court's decision in *Grabowski.* That case paid no more heed than *Bostock* to background cultural expectations about what sorts of sex-based claims Title VII and Title IX might permit—even though *Grabowski* involved Spending Clause legislation.[7]  Other courts, in holding that Title IX indeed bars discrimination against transgender students in the context of sex-separated restrooms, agree.  *See Grimm*, 972 F.3d at 619 n.18; *A.C.*, 75 F.4th at 769; *cf. B.P.J. by Jackson v. W. Virginia State Bd. of Educ.*, 98 F.4th 542, 564 (4th Cir. 2024).

In short, the enactors of Title IX barred "discrimination" "on the

---

[7] Logically, there are also not different standards for ambiguity depending on whether statutory text addresses what it prohibits or what it does not prohibit, which are two sides of the same coin.  *Cf.* Op. 31 n.11.  But here, the distinction would not matter, because § 1686 simply does not carve out anything but sex-separated "living facilities."

basis of sex."  20 U.S.C. § 1681(a).  S.B. 1100 discriminates against

transgender students on the basis of sex, and the carveout in Section

1686 does not match the range of facilities regulated by S.B. 1100.

Congress may not have anticipated every scenario where § 1681 would

apply.  But to use historical expectations to create statutory carveouts

that do not exist would undermine the reach of Title IX and other

crucial anti-discrimination statutes for those who need them the most.

This case illustrates precisely that.  If § 1686 is *not* limited to "living

facilities," then it is not clear *what* it is limited to.  If historical

expectations can create carveouts from statutory silence, as the Court

effectively holds, *see* Op. 33 n.15, then there is no reason § 1686 must

stop at restrooms and changing facilities either.

## IV.    The Court's Holding is Overbroad at a Minimum.

Because S.B. 1100's applications do not apply to "living facilities,"

Plaintiff is likely to succeed in its facial challenge to Title IX.  But if this

Court concludes otherwise, it should at a minimum narrow the scope of

its Title IX holding.  Only S.B. 1100's application to "sleeping quarters,"

to the extent one viewed students as temporarily "living" in hotels for

school trips, for instance, even arguably has anything to do with

§ 1686's single focus on spaces where students live. And under the Court's understanding of Plaintiff's facial challenge, there is no reason to go any further. Op. 16. Even were the Court to conclude that additional applications of S.B. 1100 could arguably constitute "living facilities," it should not hold that restrooms fall within the scope of that term. *See id.* at 21.

A narrower holding would also resolve this appeal without creating a conflict between this Circuit and the Fourth and Seventh Circuits, which addressed injunctions encompassing only the use of bathrooms and, in the case of *A.C.*, stalls in locker rooms. *See Grimm*, 972 F.3d at 601; *A.C.*, 75 F.4th at 772. And it would provide § 1686 a limiting construction that would avoid its becoming—in the hands of countless public officials—a vast carveout that could be used to justify policies, or regulations, that do extraordinary harm to transgender students.

## CONCLUSION

Plaintiff asks the Court to reconsider—or at a minimum, narrow—its holding that Plaintiff is not likely to succeed in showing S.B. 1100 violates Title IX.

Dated:  April 10, 2025

Peter C. Renn
Kell Olson[†]
Tara L. Borelli[†]
Pelecanos[†]
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
800 S. Figueroa St., Suite 1260
Los Angeles, CA 90017
(213) 382-7600
[†]*Mailing address only*

Samuel L. Linnet
ALTURAS LAW GROUP, PLLC
101 E Bullion St., Unit 2H
Hailey, ID 83333
(208) 788-6688

Respectfully submitted,

/s/ J. Max Rosen
J. Max Rosen
max.rosen@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
(415) 512-4000


Katherine M. Forster
Nicholas R. Sidney
Paul Martin
MUNGER TOLLES & OLSON LLP
350 South Grand Ave., 50th Fl.
Los Angeles, CA 90071
(213) 683-9100

*Counsel for Plaintiff-Appellant Sexuality and Gender Alliance*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* [https://www.ca9.uscourts.gov/forms/form11instructions.pdf](https://www.ca9.uscourts.gov/forms/form11instructions.pdf)

**9th Cir. Case Number(s)** | 23-2807

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

◉    Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** | 4,175 | .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

○    In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ J. Max Rosen | **Date** | 4/10/2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                                 *Rev. 12/01/24*