Samuel L. Linnet (ISB No. 9788)
sam@alturaslawgroup.com
ALTURAS LAW GROUP, PLLC
111 N 1st Avenue, Suite 2I
PO Box 2975
Hailey, ID 83333
(208) 788-6688

Peter C. Renn*
prenn@lambdalegal.org
Kell L. Olson*†
kolson@lambdalegal.org
Tara L. Borelli*†
tborelli@lambdalegal.org
Pelecanos*†
pelecanos@lambdalegal.org
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
†*mailing address only*
(213) 382-7600 (T) | (855) 535-2236 (F)

Katherine M. Forster*
katherine.forster@mto.com
Paul E. Martin*
paul.martin@mto.com
Abigail K. Bessler*
abigail.bessler@mto.com
Elizabeth Anastasi*
elizabeth.anastasi@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Ave., 50th Fl.
Los Angeles, CA 90071-3426
(213) 683-9100 (T) | (213) 687-3702 (F)

J. Max Rosen*
max.rosen@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
(415) 512-4000 (T) | (415) 512-4077 (F)

*admitted *pro hac vice*

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| SEXUALITY AND GENDER ALLIANCE, <br><br> *Plaintiff,* <br><br> v. <br><br> DEBBIE CRITCHFIELD, et al., <br><br> *Defendants*. | Case No. 1:23-cv-00315-DCN <br><br> **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR INJUNCTION PENDING APPEAL** |

Plaintiff Sexuality and Gender Alliance ("SAGA") respectfully submits this memorandum in support of its Motion for Injunction Pending Appeal.

## INTRODUCTION

SAGA's transgender members are poised to be ousted from restrooms consistent with their gender identity—which school district policy has permitted them to use for the last nine years—unless an injunction pending appeal is granted. S.B. 1100 has never been in legal effect during any school year due to various injunctions granted over the course of litigation. Enforcement of S.B. 1100 now would upend the long-standing status quo at Boise High, which has had an inclusive policy in place since 2016.

On August 7, 2025, this Court issued an Order ("Order") denying Plaintiff's Motion for Preliminary Injunction. Plaintiff filed an appeal of the Order on August 8, and now requests that this Court issue an injunction of S.B. 1100—as applied to the use of restrooms at Boise High School by Plaintiff's student members—pending appeal under Rule 62(d), Fed. R. Civ. P. Plaintiff has also sought relief from the Ninth Circuit, and has asked that court to grant at least temporary administrative relief by August 12, 2025, when school starts at Boise High, or as soon thereafter as practicable, to maintain the status quo until it can decide the motion for an injunction pending appeal.[1]

Although this Court, in denying Plaintiff's Motion for Preliminary Injunction, declined to grant the relief Plaintiff requests during the pendency of the lawsuit, Plaintiff's current request is

---

[1] Rule 8, Fed. R. App. P., does not require that Plaintiffs move for a stay before this Court prior to seeking that relief from the Ninth Circuit in this case. *See* Fed. R. App. P. 8(a)(2)(A) (no need to do so where it "would be impracticable"). School starts at Boise High on August 12th, and the imminency of that date does not afford sufficient time for briefing and decision before the district court. Furthermore, while this Court previously included a 21-day stay in its prior denial of a preliminary injunction, there was no interim relief on which Plaintiff could rely here. Nevertheless, Plaintiffs have simultaneously filed this Motion before this Court.

more narrow. Here, Plaintiff asks the Court to maintain the status quo for a significantly shorter period of time: until the Ninth Circuit has had an opportunity to address the legal issues presented by Plaintiff's as-applied challenge to S.B. 1100. Plaintiff students need not suffer irreparable harm in the interim.

## STANDARD

The factors that guide the court's in deciding whether to issue an injunction pending appeal are: (1) whether the applicant has made a strong showing of likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent the requested relief; (3) whether an injunction will "substantially injure" other parties interested in the proceeding; and (4) "where the public interest lies." *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)). The third and fourth factors merge when the government opposes the injunction. *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021).

Plaintiff need not show that "it is more likely than not that they will win on the merits"; rather, it is enough to show that there is a "substantial case for relief on the merits." *Lair*, 697 F.3d at 1204 (internal quotations omitted). Many formulations of this standard are "largely interchangeable," including "reasonable probability," "fair prospect," and "serious legal questions . . . raised." *Id.* (internal quotations omitted). And Plaintiff need only show "a probability" of irreparable harm if an injunction pending appeal is not granted. *Id.* at 1214.

## ARGUMENT

This Court should maintain the pre-S.B. 1100 status quo during the pendency of Plaintiff's interlocutory appeal to the Ninth Circuit. At a minimum, Plaintiff has raised "serious questions" on the merits, as applied to Plaintiff and restrooms, and an injunction pending appeal is warranted because the balance of hardships—including transgender students' exposure to daily

discrimination and stigmatization while the Ninth Circuit considers the legal questions on appeal—tips sharply in Plaintiff's favor.

I. **Plaintiff is Likely to Succeed on Its As-Applied Equal Protection Claim on Appeal.**

Defendants cannot show that barring SAGA members from restrooms is substantially related to an important government interest. As this Court has confirmed, S.B. 1100 is subject to heightened scrutiny. Doc. 106 at 9; *Roe v. Critchfield*, 137 F.4th 912, 923 (9th Cir. 2025). Such discrimination is presumptively unconstitutional, and the government's heavy burden requires showing an "exceedingly persuasive justification" that is substantially related to the discriminatory means employed. *United States v. Virginia*, 518 U.S. 515, 533-34 (1996).

Applying S.B. 1100 to bar SAGA members from using restrooms consistent with their gender does not substantially further any interest in safety or privacy. Because this Court has already held that Defendants have not carried their burden at this junction to demonstrate that S.B. 1100 substantially furthers a safety interest, Doc. 106 at 13, Plaintiff addresses only the Court's privacy holding.

The Ninth Circuit previously recognized a cognizable interest in "(1) not exposing students to the unclothed bodies of students of the opposite sex; and (2) protecting students from having to expose their own unclothed bodies to students of the opposite sex." *Critchfield*, 137 F.4th at 925. The Court emphasized that different types of sex-designated facilities "do not present uniform risks of bodily exposure," *id.* at 924, and observed that "the privacy interest in avoiding bodily exposure is most strongly implicated in locker rooms and communal shower rooms that lack curtains or stalls." *Id.* at 925. It affirmed the denial of a facial preliminary injunction based on this range of applications. It did not, however, credit the notion that the government has a legitimate interest in preventing the "mere presence of transgender students in

3

facilities matching their gender identity." *Id.* at 923 n.6; *see also Parents for Priv. v. Barr*, 949 F.3d 1210, 1222-23 (9th Cir. 2020).

Here, SAGA only requested narrow preliminary relief from S.B. 1100 as applied to its transgender members' use of restrooms. In response, Defendants acknowledged that privacy stalls exist but claimed there could nonetheless be bodily exposure from small gaps in restroom stall doors. Doc. 90 at 13. Of course, such "gaps" do not remove the restroom's structural privacy, where stall doors block meaningful visual exposure during everyday usage, nor do they transform it into a space of forced bodily exposure. And intentionally peering through a small gap would be an invasion of privacy and is already prohibited. Doc. 15-8 at 11.

This Court held that S.B. 1100 nonetheless serves a general privacy interest that extends beyond whether a person is visible in a stall. Doc. 106 at 15-16. It relied on a privacy interest in communal restroom areas, positing that "[p]eople often use the common areas of a restroom (as well as a stall) to change items of clothing or undertake other personal hygiene duties." *Id.* This Court should grant an injunction pending appeal to prevent harm to Plaintiff students while the Ninth Circuit considers whether such a general privacy interest is sufficient under heightened scrutiny and whether S.B. 1100's application to restrooms is sufficiently tailored to meet that interest. This Court's conclusion contradicts the Ninth Circuit's previous observation, quoting the Seventh Circuit: "[c]ommon sense tells us that the communal restroom is a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall." *Critchfield*, 137 F.4th at 924 (quotes omitted). Particularly in light of "the injury and indignity inflicted" on the disfavored class, *Latta v. Otter*, 19 F. Supp. 3d 1054, 1077 (D. Idaho 2014), Plaintiff asks this Court to maintain Plaintiff students' ability to use

4

restrooms for their ordinary purposes during the pendency of the preliminary injunction appeal to the Ninth Circuit.

## II. Plaintiff Is Likely to Succeed on Its Title IX Claim on Appeal.

Although this Court need not reach the issue to resolve SAGA's motion, SAGA is also likely to succeed on its as-applied Title IX claim on appeal. As the majority of the Courts of Appeal have held, barring transgender students from using restrooms that correspond with their gender identity violates Title IX. *See A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 770 (7th Cir. 2023); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 619 (4th Cir. 2020).

### A. *Roe v. Critchfield* Did Not Decide This Narrow Question.

As an initial matter, this Court suggested that the Ninth Circuit, in *Critchfield*, already rejected the argument that S.B. 1100's application to restrooms is impermissible under Title IX. Plaintiff respectfully disagrees. The Ninth Circuit's holding amounted to a rejection of Plaintiff's facial challenge to S.B. 1100—it did not decide whether Plaintiff's constitutional or statutory challenges would succeed as applied to restrooms specifically.[2] And the *Critchfield* Court's Title IX analysis confirms as much. The Ninth Circuit agreed that S.B. 1100 is discrimination on the basis of sex, *see* 20 U.S.C. § 1681 (prohibiting such discrimination), but it observed that § 1686 of Title IX allows schools to separate "living facilities" based on "sex." 20 U.S.C. § 1686; *see Roe*, 137 F.4th at 929. Citing the Spending Clause's clear-notice requirement, the Ninth Circuit held that "sex" was not unambiguously broader than "biological sex"; and that "living facilities" was not "unambiguously limited to facilities such as

---

[2] This Court pointed to the Ninth Circuit's statement that Defendants did not have adequate notice "that Title IX prohibits the exclusion of transgender students from restrooms, locker rooms, shower facilities, and overnight lodging." 137 F.4th at 929. But that merely confirmed that the facial challenge—applied to *all* of these facilities—fails, as the rest of the decision made clear.

dormitories." *Id.* at 930. Because Section 1686 could encompass at least one facility covered by the facial challenge (such as overnight facilities), that was enough to reject Plaintiff's challenge. The Ninth Circuit pointedly did *not* decide whether "restrooms" are "living facilities."

The procedural history of the opinion confirms Plaintiff's narrow reading. The Ninth Circuit initially stated that § 1686's carve-out might extend not to "*only* living facilities," but could also encompass other "intimate spaces" such as "*restrooms*, changing rooms, and communal showers." *Roe v. Critchfield*, 131 F.4th 975, 993 (9th Cir. 2025) (second emphasis added). Plaintiff narrowly petitioned for panel rehearing to specifically argue that restrooms are not "living facilities" under the plain text of that term; that § 1686 does not reach any facilities other than "living facilities"; and that the Court had no need to suggest otherwise to deny the facial injunction. *Critchfield*, No. 23-2807, Dkt. 115. The panel thereafter amended its opinion to the operative version.[3]

### B. Applying S.B. 1100 to Restrooms in a Non-Residential Building Violates Title IX.

#### 1. As Applied to Restrooms, S.B. 1100 Discriminates on the Basis of Sex Under § 1681 of Title IX.

Section 1681 of Title IX provides that "[n]o person in the United States shall, on the basis of sex, be … subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. S.B. 1100 facially classifies students according to sex assigned at birth and denies transgender students access to restrooms consistent with their

---

[3] Footnote 15 of the Ninth Circuit opinion, cited by this Court, also does not answer the question here. There, the panel noted that sex-separated facilities were likely assumed in 1972 and "did not merit special mention." *Critchfield*, 137 F.4th at 930 n.15. But historical expectations, although potentially relevant to interpret ambiguous statutory text under *Pennhurst*, do not alter the meaning of clear text. The Ninth Circuit's actual textual analysis was thus paramount. And that analysis did not hold that restrooms are "living facilities."

gender identity on that basis. That is sex discrimination, as Circuit precedent confirms. *See Critchfield*, 137 F.4th at 923; *id.* at 929; *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023).

Respectfully, this determination does not turn on whether "sex" in Title IX extends beyond "biological sex." Even if "sex" means "sex assigned at birth," S.B. 1100 plainly discriminates against transgender students on that basis. There is no need to hold that "sex" reaches broader than this Court has defined it for Plaintiff to prevail in its challenge.

### 2. Section 106.33 Does Not Carve Non-Residential Restrooms Out of Section 1681's Anti-Discrimination Provision.

Because applying S.B. 1100 to restrooms is clearly discrimination on the basis of sex under § 1681, the question is whether a carve-out applies. 137 F.4th at 930. It does not.

Defendants argued—and this Court, in citing the regulation, appeared to agree—that 34 C.F.R. § 106.33, which concerns "separate toilet, locker room, and shower facilities," forecloses SAGA's Title IX claim, or at least weighs against SAGA's likelihood of success. 34. C.F.R. § 106.33 ("A recipient may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex."). But the Ninth Circuit's analysis did not turn on § 106.33 because the regulation does not create a carve-out for Section 1681. Section 106.33 implements Section 1681—not Section 1686. *See* 34 C.F.R. § 106.33 (specifying regulations issued under § 1681). As other circuits have held, Section 106.33 thus cannot be read to *limit* the scope of Section 1681 by inventing exceptions unavailable in the text. *See Grimm*, 972 F.3d at 618; *A.C.*, 75 F.4th at 770. As the Ninth Circuit affirmed, "Section 106.33, entitled 'Comparable facilities,' requires that, if a recipient of federal funding provides separate toilet, locker room, and shower facilities on the basis of sex, the facilities must be comparable." 137 F.4th at 930.

7

"In this way," the Court concluded, "§ 106.33 extends § 1681's protections against sex-based discrimination rather than expanding the scope of § 1686's carve out." *Id.* Indeed, any other conclusion would have transformed Section 106.33 into a regulation incompatible with its own implementing statute, creating an obvious problem under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 371 (2024) (courts must decide the meaning of authorizing statutes themselves, and not defer to agencies).

### 3. The § 1686 "Living Facilities" Carve-Out Does Not Apply to Restrooms, Even Under *Pennhurst.*

The only relevant question then is whether Title IX's carve-out for sex-separated "living facilities" under § 1686 includes school restrooms. It does not.

Contemporaneous dictionaries at the time § 1686 was enacted defined "living," in its relevant and obvious sense, as "appropriate, designed, or adequate for living." *Webster's Third New International Dictionary* 1323-24 (1968). To "live" was defined, in turn, as "to occupy a home: DWELL, RESIDE." *Id.* While overnight facilities regulated by S.B. 1100 are arguably living facilities, restrooms in a non-residential school building simply are not. "Living facilities" are spaces where students live, not where they briefly visit during the school day.

Although restrooms are not "living facilities," this Court nevertheless concluded that, under *Pennhurst*'s clear-notice rule, Title IX permits excluding transgender students from restrooms aligned with their gender identity. But *Pennhurst* provides no run-around for the text of Section 1686. *Pennhurst*'s clear-notice rule only applies to interpret *ambiguous* text. *See Pennhurst*, 451 U.S. at 17; *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 304 (2006); *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 294 (6th Cir. 2009) (Sutton, J., concurring).

No such ambiguity exists here. And "the fact that [a statute] has been applied in

8

situations not expressly anticipated by Congress does not demonstrate ambiguity" in the text; "it simply demonstrates [the] breadth of a legislative command." *Bostock*, 590 U.S. at 674 (quotes omitted); *see also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 101 (2012) (unexpected applications reflect only Congress's "presumed point [to] produce general coverage—not to leave room for courts to recognize *ad hoc* exceptions").

In sum, S.B. 1100's restroom exclusion violates Section 1681 of Title IX. Section 106.33, an implementing regulation of § 1681, does not negate that conclusion. And Section 1686, which allows sex-separation in "living facilities," cannot reasonably be extended to restrooms in non-residential buildings. Plaintiff is thus likely to succeed in its as-applied Title IX claim on appeal.

## III. The Remaining Factors Strongly Favor An Injunction Pending Appeal.

***Irreparable harm.*** First, because SAGA is likely to succeed on the merits, it also faces irreparable harm. The violation of rights secured under equal protection and Title IX is per se irreparable harm. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Doe v. Horne*, 683 F. Supp. 3d 950, 975 (D. Ariz. 2024).

Second, the exclusion of transgender students from restrooms consistent with their gender identity will harm SAGA members in multiple, compounding ways on a daily basis. That includes increased risk of depression, anxiety, suicidality, self-harm, bullying, harassment, stigmatization, impaired academic access and performance, and physical pain and discomfort.

S.B. 1100's provision of "alternative accommodation" does not cure these harms. For transgender students, the proffered alternative—for example, a single-user restroom in the nurse's office—exacerbates, rather than resolves, the harms they will suffer. Doc. 86-3 at 20. Telling such students to "go elsewhere" only reinforces the stigma and shame they experience.

9

And because such single-user facilities are not equal in accessibility and other respects, they also cause additional harms, such as missing out on class time, physical harms when students instead "hold it," and resulting distraction that compromises their education. *E.g.*, Doc. 86-6 at 3-4.

***Balance of harms and public interest***. The balance of hardships and public interest together favor an injunction. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (holding that the factors merge when the government is a party). As detailed above, Plaintiff's hardships are manifold. On the other side of the ledger, the State is not harmed by maintaining the status quo that has existed for nearly a decade at Boise High. And there is "no interest in enforcing an unconstitutional law." *Silvester v. Harris*, No. 11-CV-2137, 2014 WL 6611592, at *2 (E.D. Cal. Nov. 20, 2014).

## CONCLUSION

An injunction pending appeal should be granted to maintain the status quo.

DATED: August 11, 2025

Respectfully Submitted,

By: /s/ Peter C. Renn

Katherine M. Forster
J. Max Rosen
Paul Martin
Abigail K. Bessler
Elizabeth Anastasi
MUNGER TOLLES & OLSON LLP

Peter C. Renn
Kell L. Olson
Tara L. Borelli
Pelecanos
LAMBDA LEGAL DEFENSE & EDUCATION FUND

Samuel L. Linnet
ALTURAS LAW GROUP, PLLC

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of August, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Travis Barham
tbarham@alliancedefendingfreedom.org

James Craig
james.craig@ag.idaho.gov

David Myers
david.myers@ag.idaho.gov

Jonathan Scruggs
jscruggs@alliancedefendingfreedom.org

Natalie D. Thompson
nthompson@adflegal.org

Lincoln Davis Wilson
lwilson@adflegal.org

Gader Wren
gader.wren@ag.idaho.gov

/s/ Peter C. Renn
Peter C. Renn